BROWNE GEORGE ROSS LLP
Thomas P. O'Brien (State Bar No. 166369)
  tobrien@bgrfirm.com
Jennie Wang VonCannon (State Bar No. 233392)
  jvoncannon@bgrfirm.com
David J. Carroll (State Bar No. 291665)
  dcarroll@bgrfirm.com
Nathan F. Brown (State Bar No. 317300)
  nbrown@bgrfirm.com
801 S. Figueroa Street, Suite 2000
Los Angeles, California 90017
Telephone: (213) 725-9800
Facsimile: (213) 725-9808

Attorneys for Plaintiff
Francis J. Racioppi, Jr.

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS J. RACIOPPI, JR., an individual,<br><br>                Plaintiff,<br><br>      vs.<br><br>DMITRY BORISOVICH BOSOV, an individual; GARY I. SHINDER, also known as "Igor Shinder," an individual; GENIUS FUND I, INC., a Delaware Corporation; GENIUS FUND I, LLC, a Delaware Limited Liability Company; RESTRUCTURE TRUST LLC, a Limited Liability Company; ESSMW – EARTH SOLAR SYSTEM MILKY WAY, LLC, a Wyoming Limited Liability Company; GOLDHAWK INVESTMENTS LTD., a Cyprus Limited Company; ALLTECH GROUP, a Russian company; HELI | Case No.<br><br>**COMPLAINT FOR DAMAGES**<br><br>1. **Civil Conspiracy**<br>2. **Breach of Contract**<br>3. **Breach of Implied Covenant of Good Faith and Fair Dealing**<br>4. **Intentional Misrepresentation (Cal. Lab. Code § 970)**<br>5. **Wrongful Termination in Violation of Public Policy**<br>6. **Whistleblower Retaliation (Cal. Lab. Code § 1102.5)**<br><br>**DEMAND FOR JURY TRIAL** |

1482785.11

1  BIOTECH LLC, a California Limited
2  Liability Company; DR. KUSH
   WORLD COLLECTIVE LLC, a
3  Limited Liability Company; EAGLE
4  ROCK HERBAL COLLECTIVE LLC,
   a California Limited Liability
5  Company; GENIUS PRODUCTS LLC,
   a California Limited Liability
6  Company; FULL CIRCLE LABS LLC,
7  a California Limited Liability
   Company; NATURE'S HOLIDAY
8  LLC, a California Limited Liability
9  Company; VARIANT HEMP
   SOLUTIONS LLC, a California
10 Limited Liability Company; GENIUS
11 DELIVERY LLC, a California Limited
   Liability Company; PLANCK
12 PROPERTIES LLC, a California
13 Limited Liability Company;
   ARISTOTLE EQUIPMENT LLC, a
14 California Limited Liability Company;
15 GENIUS SALES LLC, a California
   Limited Liability Company; GENIUS
16 PRODUCTS T, INC., a California
17 Corporation; GENIUS PRODUCTS
   NT, INC., a California Corporation;
18 GENIUS PRODUCTS, INC., a
19 California Corporation; FULL CIRCLE
   INDUSTRIES; and DOES 1 through
20 50, inclusive,
21
22          Defendants.
23
24      Plaintiff Francis J. Racioppi, Jr., by and through his counsel of record, alleges
25 as follows:
26                    **JURISDICTION AND VENUE**
27      1.      This Court has original jurisdiction over this action under 28 U.S.C.
28 § 1332.  As alleged herein, Plaintiff is a citizen of the State of New York and his

1  citizenship is completely diverse from all Defendants in this action.  As further
2  alleged herein, the amount in controversy well exceeds $75,000.

3       2.     Venue is proper in the Central District of California because it is the
4  judicial district in which a substantial part of the events or omissions giving rise to
5  the claims in this action occurred.  28 U.S.C. § 1391(b)(2).

6                                       **INTRODUCTION**

7       3.     This lawsuit arises from a sordid tale of corporate mismanagement,
8  subterfuge, and fraud involving an amalgam of shell companies that self-identify as
9  part of the "Genius Fund Group"[1]—all of which were and are effectively controlled
10  by Defendants Dmitry Borisovich Bosov and Gary I. Shinder, also known as "Igor
11  Shinder."  After California legalized the recreational use of marijuana, Defendant
12  Bosov, a Russian oligarch who periodically came to the United States to oversee his
13  various business interests in the country, sought to capitalize on California's
14  burgeoning commercial cannabis industry.  Defendant Bosov therefore invested
15  over $160 million dollars in the Genius Fund Group through Defendant Alltech
16  Group and Defendant Goldhawk Investments Ltd., both foreign companies in which
17  Defendant Bosov holds a controlling interest.  Through a vast network of shell
18  companies, some of which are named as defendants in this lawsuit, Defendant
19  Bosov directed, funded, and controlled the Genius Fund Group's daily operations.

20       4.     During much of this time, the Genius Fund Group suffered from gross
21  mismanagement, including at the direction of Defendants Bosov and Shinder and
22  against the advice of Genius Fund Group executive staff, including Plaintiff.
23  Millions of dollars were spent on ostensible company investments with virtually
24  nonexistent oversight or accountability, and the company lacked any coherent
25  business plan to generate either short- or long-term profit.  Moreover, Defendant
26

---

27      [1] The various companies comprising the Genius Fund Group are at times
28  referred to herein singularly as "company" for ease of reference.

1  Bosov charged substantial personal expenditures to the Genius Fund Group that had
2  no business purpose whatsoever.

3       5.     Plaintiff, a decorated United States Army Special Forces combat
4  veteran and graduate of the New York University ("NYU") Stern School of
5  Business, was originally hired by the Genius Fund Group as its Chief Security
6  Officer ("CSO") in April 2019.  Plaintiff was swiftly promoted within the
7  organization, becoming Chief Operating Officer ("COO") in October 2019.  As
8  COO, Plaintiff uncovered the aforementioned mismanagement and brought it to the
9  attention of other Genius Fund Group officers and directors, as well as Defendant
10  Bosov himself.  Plaintiff's concerns were largely ignored and, on occasion, resulted
11  in those other officers and managers simply circumventing Plaintiff's oversight.
12  With the company generating little to no revenue, the company's cash flow soon
13  diminished to virtually zero.

14       6.     In or around February 2020, after Plaintiff made clear to Defendant
15  Bosov the gravity of the company's dire financial situation, Defendant Bosov
16  directed Plaintiff to implement a reorganization plan and appointed Defendant
17  Shinder to oversee that reorganization.  Plaintiff, who for several months had been
18  informally working as the company's "co-Chief Executive Officer," was officially
19  hired as the company's sole Chief Executive Officer ("CEO") on March 5, 2020.
20  Despite this, Defendant Shinder—who, in a few short weeks, had anointed himself
21  the Genius Fund Group's President and Chairman of the Board of Directors—
22  immediately began wholly ignoring and circumventing Plaintiff on virtually every
23  management-level decision.  This made it impossible for Plaintiff to carry out his
24  duties as CEO.  On March 26, 2020, Plaintiff confronted Defendant Shinder and the
25  other company directors regarding his being sidelined and the dire status of the
26  company.  It was then that Plaintiff was told—for the first time—that the Board of
27  Directors, of which Defendant Shinder was now in charge, had issued a directive
28  several days before terminating all company employees and management (including

1  Plaintiff) effective that day (*i.e.*, March 26).  The purported reason for the

2  terminations was the substantial business interruptions caused by the ongoing

3  COVID-19 outbreak, belied by the fact that cannabis businesses were deemed

4  "essential" by the State of California and the city of Los Angeles such that they

5  could remain open and the company set records for daily and weekly revenues in

6  March 2020.

7         7.     Plaintiff's employment contract made clear that he would serve as the

8  Genius Fund Group's CEO through December 31, 2021.  Because the company

9  terminated Plaintiff's employment without cause before that time, Plaintiff is

10  entitled to immediate payment of the remaining sums in his contract—including, but

11  not limited to, his $300,000 signing bonus, his $700,000 per annum base pay,

12  approximately $30,000 in moving expenses, and his guaranteed bonuses of no less

13  than $350,000 per year.  Furthermore, for the reasons alleged herein, Plaintiff is

14  entitled to punitive damages and attorneys' fees.

15                                          **PARTIES**

16         8.     Plaintiff was and is a citizen of the State of New York.  Plaintiff was

17  employed by the Genius Fund Group as its CSO between April and October 2019,

18  its COO between October 2019 and March 2020, and its CEO between March 5 and

19  March 27, 2020, when he was terminated without cause.

20         9.     Defendant Bosov was and is a citizen of the Russian Federation.  At all

21  relevant times, Defendant Bosov was one of the true and equitable owners of all

22  companies comprising the Genius Fund Group, including (but not limited to)

23  Defendants Genius Fund I, Inc., Genius Fund I, LLC, and Restructure Trust, LLC.

24  Defendant Bosov further had a majority and controlling interest in Defendants

25  Goldhawk Investments Ltd. and Alltech Group.  Defendant Bosov ignored all

26  corporate formalities concerning the Genius Fund Group; he commingled funds and

27  assets with all other corporate defendants named in this lawsuit; he concealed and

28  misrepresented the true and equitable owners of the Genius Fund Group; he had

effective authority to make and direct all business decisions concerning the Genius Fund Group; and he created the Genius Fund Group simply as a mechanism through which it could avoid any type of civil liability for the Genius Fund Group's conduct. In other words, Defendant Bosov effectively owned and controlled the Genius Fund Group, and was the Genius Fund Group's alter ego.  Defendant Bosov also formed a conspiracy with all other defendants named in this lawsuit, and all wrongful acts performed as alleged in this complaint were done in furtherance of the common design of that conspiracy.

10.     Defendant Shinder was and is a citizen of the State of New Jersey.  At all relevant times, Defendant Shinder was one of the true and equitable owners of all companies comprising the Genius Fund Group, including (but not limited to) Defendants Genius Fund I, Inc., Genius Fund I, LLC, Restructure Trust, LLC, and ESSMW – Earth Solar System Milky Way, LLC.  Defendant Shinder ignored all corporate formalities concerning the Genius Fund Group; he commingled funds and assets with all other corporate defendants named in this lawsuit; he concealed and misrepresented the true and equitable owners of the Genius Fund Group; he had effective authority to make and direct all business decisions concerning the Genius Fund Group; and he created the Genius Fund Group simply as a mechanism through which it could avoid any type of civil liability for the Genius Fund Group's conduct. In other words, Defendant Shinder effectively owned and controlled the Genius Fund Group, and was the Genius Fund Group's alter ego.  Defendant Shinder also formed a conspiracy with all other defendants named in this lawsuit, and all wrongful acts performed as alleged in this complaint were done in furtherance of the common design of that conspiracy.

11.     Defendant Genius Fund I, Inc. is a Delaware corporation with its principal place of business in Los Angeles, California.  Defendant Genius Fund I, Inc. ignored all corporate formalities and had no corporate governance policies in place; it commingled funds and assets with all other defendants named in this

lawsuit; it concealed and misrepresented the true and equitable owners of the company; it lacked any true independent authority to make business decisions impacting the company; and it existed simply as a mechanism through which the true and equitable owners of the company could avoid any type of civil liability for their conduct. Defendant Genius Fund I, Inc. was and is the alter ego of all other defendants named in this lawsuit. Defendant Genius Fund I, Inc. also formed a conspiracy with all other defendants named in this lawsuit, and all wrongful acts performed as alleged in this complaint were done in furtherance of the common design of that conspiracy.

12.    Defendant Genius Fund I, LLC is a Delaware limited liability company with its principal place of business in Los Angeles, California. Defendant Genius Fund I, LLC ignored all corporate formalities and had no corporate governance policies in place; it commingled funds and assets with all other corporate defendants named in this lawsuit named in this lawsuit; it concealed and misrepresented the true and equitable owners of the company; it lacked any true independent authority to make business decisions impacting the company; and it existed simply as a mechanism through which the true and equitable owners of the company could avoid any type of civil liability for their conduct. Defendant Genius Fund I, LLC was and is the alter ego of all other defendants named in this lawsuit. Defendant Genius Fund I, LLC also formed a conspiracy with all other defendants named in this lawsuit, and all wrongful acts performed as alleged in this complaint were done in furtherance of the common design of that conspiracy.

13.    Upon information and belief, Defendant Restructure Trust, LLC is a limited liability company that is registered in a state other than the State of New York with its principal place of business in Los Angeles, California. Upon information and belief, Defendant Restructure Trust, LLC ignored all corporate formalities; it commingled funds and assets with all other corporate defendants named in this lawsuit; it concealed and misrepresented the true and equitable owners

of the company; it lacked any true independent authority to make business decisions impacting the company; and it existed simply as a mechanism through which the true and equitable owners of the company could avoid any type of civil liability for their conduct.  Defendant Restructure Trust, LLC was and is the alter ego of all other defendants named in this lawsuit.  Defendant Restructure Trust, LLC also formed a conspiracy with all other defendants named in this lawsuit, and all wrongful acts performed as alleged in this complaint were done in furtherance of the common design of that conspiracy.

14.     Defendant ESSMW – Earth Solar System Milky Way, LLC, is a Wyoming limited liability company with its principal place of business located in either Wyoming or New Jersey.  Upon information and belief, Defendant ESSMW – Earth Solar System Milky Way, LLC ignored all corporate formalities; it commingled funds and assets with all other corporate defendants named in this lawsuit; it concealed and misrepresented the true and equitable owners of the company; it lacked any true independent authority to make business decisions impacting the company; and it existed simply as a mechanism through which the true and equitable owners of the company could avoid any type of civil liability for their conduct.  Defendant ESSMW – Earth Solar System Milky Way, LLC was and is the alter ego of all other defendants named in this lawsuit, and was effectively owned and controlled by Defendant Shinder (among others).  Defendant ESSMW – Earth Solar System Milky Way, LLC also formed a conspiracy with all other defendants named in this lawsuit, and all wrongful acts performed as alleged in this complaint were done in furtherance of the common design of that conspiracy.

15.     Defendant Goldhawk Investments Ltd. is a Cyprus limited company with its principal place of business located within the Russian Federation.  At all relevant times, Defendant Goldhawk Investments Ltd. was one of the true and equitable owners of all companies comprising the Genius Fund Group, including (but not limited to) Defendants Genius Fund I, Inc., Genius Fund I, LLC, and

Restructure Trust, LLC.  Defendant Goldhawk Investments Ltd. ignored all corporate formalities concerning the Genius Fund Group; it commingled funds and assets with all other corporate defendants named in this lawsuit; it concealed and misrepresented the true and equitable owners of the Genius Fund Group; it had effective authority to make and direct all business decisions concerning the Genius Fund Group; and it created the Genius Fund Group simply as a mechanism through which it could avoid any type of civil liability for the Genius Fund Group's conduct. In other words, Defendant Goldhawk Investments Ltd. effectively owned and controlled the Genius Fund Group, and was the Genius Fund Group's alter ego. Defendant Goldhawk Investments Ltd. also formed a conspiracy with all other defendants named in this lawsuit, and all wrongful acts performed as alleged in this complaint were done in furtherance of the common design of that conspiracy.

16.     Defendant Alltech Group is a Russian investment company with its principal place of business located within the Russian Federation.  At all relevant times, Defendant Alltech Group was one of the true and equitable owners of all companies comprising the Genius Fund Group, including (but not limited to) Defendants Genius Fund I, Inc., Genius Fund I, LLC, Restructure Trust, LLC, and Goldhawk Investments Ltd.  Defendant Alltech Group ignored all corporate formalities concerning the Genius Fund Group; it commingled funds and assets with all other corporate defendants named in this lawsuit; it concealed and misrepresented the true and equitable owners of the Genius Fund Group; it had effective authority to make and direct all business decisions concerning the Genius Fund Group; and it created the Genius Fund Group simply as a mechanism through which it could avoid any type of civil liability for the Genius Fund Group's conduct. In other words, Defendant Alltech Group effectively owned and controlled the Genius Fund Group, and was the Genius Fund Group's alter ego.  Defendant Alltech Group also formed a conspiracy with all other defendants named in this lawsuit, and

all wrongful acts performed as alleged in this complaint were done in furtherance of the common design of that conspiracy.

17.    Defendants Heli Biotech LLC, Eagle Rock Herbal Collective LLC, Genius Products LLC, Full Circle Labs LLC, Nature's Holiday LLC, Variant Hemp Solutions LLC, Genius Delivery LLC, Planck Properties LLC, Aristotle Equipment LLC, and Genius Sales LLC, are all California limited liability companies with their principal places of business in California.  Each of these Defendants ignored all corporate formalities and had no corporate governance policies in place; they commingled funds and assets with each other and with all other corporate defendants named in this lawsuit; they concealed and misrepresented the true and equitable owners of the company; they lacked any true independent authority to make business decisions impacting the company; and they existed simply as a mechanism through which the true and equitable owners of the company could avoid any type of civil liability for their conduct.  Each of these Defendants were and are the alter ego of all other defendants named in this lawsuit.  Each of these Defendants also formed a conspiracy with all other defendants named in this lawsuit, and all wrongful acts performed as alleged in this complaint were done in furtherance of the common design of that conspiracy.

18.    Defendants Genius Products T, Inc., Genius Product NT, Inc., and Genius Products, Inc. are California corporations with their principal places of business in California.  Each of these Defendants ignored all corporate formalities and had no corporate governance policies in place; they commingled funds and assets with each other and with all other corporate defendants named in this lawsuit; they concealed and misrepresented the true and equitable owners of the company; they lacked any true independent authority to make business decisions impacting the company; and they existed simply as a mechanism through which the true and equitable owners of the company could avoid any type of civil liability for their conduct.  Each of these Defendants were and are the alter ego of all other defendants

named in this lawsuit.  Each of these Defendants also formed a conspiracy with all other defendants named in this lawsuit, and all wrongful acts performed as alleged in this complaint were done in furtherance of the common design of that conspiracy.

19.     Upon information and belief, Defendants Dr. Kush World Collective LLC and Full Circle Industries have their principal places of business in California and are not registered in the State of New York.  Each of these Defendants ignored all corporate formalities and had no corporate governance policies in place; they commingled funds and assets with each other and with all other corporate defendants named in this lawsuit; they concealed and misrepresented the true and equitable owners of the company; they lacked any true independent authority to make business decisions impacting the company; and they existed simply as a mechanism through which the true and equitable owners of the company could avoid any type of civil liability for their conduct.  Each of these Defendants were and are the alter ego of all other defendants named in this lawsuit.  Each of these Defendants also formed a conspiracy with all other defendants named in this lawsuit, and all wrongful acts performed as alleged in this complaint were done in furtherance of the common design of that conspiracy.

20.     At all relevant times, DOES 1 through 50 were and are individuals and/or companies that were alter egos of all other defendants identified in this action.  The identities and particular capacities of DOES 1 through 50 are presently unknown to Plaintiff.  Plaintiff therefore sues these defendants by fictitious names. Plaintiff is informed and believes and therefore alleges that DOES 1 through 50 were responsible in some manner for the occurrences herein alleged, and that Plaintiff's injuries as herein alleged were proximately caused by said defendants. Plaintiff will amend the Complaint to substitute the true names and capacities of DOES 1 through 50 when ascertained.

## FACTUAL ALLEGATIONS

**Plaintiff's Background**

21.     It is no exaggeration to say that Plaintiff is an American military hero well respected for his service in the military and since entering civilian life.  He began his career at Boston University, which awarded Plaintiff an athletic scholarship for his four-year membership on its Division 1 men's rowing team.  Plaintiff graduated with honors with degrees in Journalism and Political Science.

22.     Upon graduation, Plaintiff was commissioned in the United States Army as an Infantry Officer, earning the title of Distinguished Honor Graduate from the Army's elite Ranger school and later serving as a Green Beret in the Army Special Forces where he was again named the Honor Graduate of the Special Forces Qualification Course.  Plaintiff was deployed to Iraq three times in support of both Operation Iraqi Freedom and Operation New Dawn, first as an Infantry Platoon Leader and then twice as a mountaineering Special Forces Detachment Commander.

23.     In 2013, Plaintiff deployed to Djibouti, Africa in support of Operation Enduring Freedom, where he coordinated Special Operations to combat al-Shabab, an international terrorist organization, throughout East Africa.  In 2014, Plaintiff continued his fight against other terrorist organizations by planning and coordinating the Special Forces response to Boko Haram in West Africa, and overseeing the operations of local special forces teams countering the Lord's Resistance Army in Central Africa and the Islamic State of Iraq and the Levant (aka ISIL or ISIS) in North Africa.  Plaintiff was subsequently hand-selected to serve as the advisor and aide to the Major General who was the Commander of Special Operations Command, Africa.

24.     While serving in the Army, Plaintiff earned three Bronze Star Medals, the Defense Meritorious Service Medal, the Joint Service Commendation Medal, the Army Commendation Medal with Valor, two Army Commendation Medals, three Meritorious Unit Commendations, the Global War on Terrorism Expeditionary

Medal, the Global War on Terrorism Service Medal, the Army Service Ribbon, two Overseas Service Ribbons, and the National Defense Service Ribbon.  In January 2016, after almost thirteen years in the Army, Plaintiff was honorably discharged and returned to civilian life.

25.     Plaintiff was immediately accepted to NYU's Stern School of Business, one of the top business schools in the country, where he earned his Masters of Business Administration degree in 2017.  In December 2018, Plaintiff was recognized by the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security for innovation in the development of programs to prevent Insider Threat and Workplace Violence, as well as leadership in the corporate security industry.  In addition, Plaintiff has achieved the highest level of civilian security industry accreditation as an ASIS Certified Protection Professional; earned the highest level of production and process efficiency as a certified Lean Six Sigma Black Belt; maintains a Secret security clearance held by the FBI; contributes to the FBI's Domestic Security Advisory Council and the Department of State's Overseas Security Advisory Council; and is the Treasurer of the United War Veterans Council (the sponsor and organizer of the New York City Veterans Day Parade and the largest annual Veterans event in the nation).

**Defendant Bosov and the Genius Fund Group**

26.     In 2016, California voters passed Proposition 64, which legalized recreational marijuana use in the state.  In June 2017, the California Legislature passed the Medicinal and Adult-Use Cannabis Regulation and Safety Act, which set up a framework for commercial cannabis regulation in the state.  However, the use, possession, and sale of cannabis has been and remains a federal crime.  The United States Drug Enforcement Administration classifies marijuana as a Schedule I controlled substance, which is defined as a drug with no currently accepted medical use and a high potential for abuse.  The cultivation and sale of marijuana is a federal felony offense that carries a potential criminal sentence of life imprisonment.

27.     In Fall 2018, two entrepreneurs—Gabriel Borden and Ari Steigler—sought to capitalize on California's newfound commercial cannabis industry.  To that end, Mr. Borden and Mr. Steigler convinced Defendant Bosov, through Defendants Alltech Group and Goldhawk Investments Ltd., to invest in the company that would later become known as the Genius Fund Group.

28.     Defendant Bosov, a Russian oligarch, is among the wealthiest businessmen in Russia; according to *Forbes*, Defendant Bosov's estimated net worth is approximately $1.1 billion.  Upon information and belief, Defendant Bosov owns a controlling interest in several multi-national companies, including Sibanthracite Group, Defendant Alltech Group, and Defendant Goldhawk Investments Ltd.  Defendant Bosov used Defendants Alltech Group and Goldhawk Investments Ltd. as one of many means by which to hide his involvement in a business that was violating and continues to violate Title 21 of the United States Code.

29.     Upon information and belief, Defendant Bosov has been a target of multiple United States government investigations and has been interviewed at least three times by the State Department and the FBI.  This includes a multi-hour interview with federal agents in Rome, Italy, in Fall 2019.  In April 2019, the United States government rescinded the visas of both Defendant Bosov and his wife and has since refused to either issue either of them new visas or otherwise grant them entry into the United States.

30.     Far from being a passive investor in the Genius Fund Group, Defendant Bosov insisted on exerting complete control over all aspects of the Genius Fund Group's cannabis business.  Between Fall 2018 until approximately May 2019, Defendant Bosov lived in the United States and ran the company's day-to-day operations.  During that time, Defendant Bosov also bought a $30-million residential property for himself in Beverly Hills, California, through a limited liability company.  Even after Defendant Bosov departed the United States due to

the federal government's denial and/or revocation of his visa, he continued to invest in the company and exert full control over all major company decisions.  Indeed, Defendant Bosov was a signatory to multiple commercial state cannabis licenses that were issued to the Genius Fund Group to process and sell commercial cannabis in California.

31.  During much of this time, the Genius Fund Group was grossly mismanaged.  Prior to Plaintiff's involvement with the company's finances, the Genius Fund Group at no time had a viable business plan; to the contrary, many senior management and executives eschewed the need to make any profit at all, arguing that the company simply needed to show that it could generate bare minimum revenue in order to entice an unwitting buyer.  Defendant Bosov enabled this mismanagement by repeatedly dumping millions of dollars into the company without requiring any type of accountability from company management or executives as to how the money was being spent.

32.  On top of this, the Genius Fund Group spent money with reckless abandon.  By way of example, one company executive insisted on purchasing desks, computers, and monitors for over fifty potential employees whom the company had not hired and had no immediate plans to hire.  Other company executives spent grossly excessive amounts of company funds on both business and non-business items, including luxury vehicles such as Teslas and Escalades, and daily lunches that would regularly cost in excess of $1,500.  Moreover, the company insisted that every single one of the ten company departments have its own fully-staffed marketing department, even though there was clearly no business justification for such a substantial expenditure.  The company also purchased multiple commercial properties at a grossly inflated value, yet did absolutely nothing to furnish the properties or convert them into useable, profitable spaces.  Several company executives also insisted on utterly excessive travel accommodations, such as purchasing same-day business class one-way tickets without any business need for

such wasteful spending.  By Fall 2019, in light of the company's out-of-control spending and inability to generate any revenue, the company could not even make payroll without repeated cash infusions from Defendants Bosov, Alltech Group, and Goldhawk Investments Ltd.

33.    Defendant Bosov also extensively commingled his personal funds and the Genius Fund Group's company funds.  For example, all costs associated with the maintenance of Defendant Bosov's multi-million-dollar Beverly Hills mansion were charged to the Genius Fund Group's company credit card.  In addition, many personal items that Defendant Bosov insisted on purchasing—such as surfboards, dozens of voice recorders, and a Gita robot—were purchased by the Genius Fund Group and shipped or couriered to Defendant Bosov in either Russia or Italy.

**Plaintiff's Employment with the Genius Fund Group**

34.    In April 2019, the Genius Fund Group hired Plaintiff as its CSO. Plaintiff quickly promoted to COO in October 2019.  In that position, Plaintiff oversaw the day-to-day administrative and operational functions of the Genius Fund Group.

35.    After Plaintiff became the company's COO, the gross mismanagement under which the company had long suffered became apparent to Plaintiff.  In a vain attempt to turn the business away from the brink of implosion, Plaintiff sounded the alarm and brought this mismanagement to the attention of other Genius Fund Group executives and directors.  Rather than seek to rectify the situation, company executives not only ignored his concerns, they would also later undermine him and circumvent his oversight entirely.  For example, one particular Genius Fund Group executive secretly manipulated the company's bookkeeping records and revenue records to reflect substantially lower expenditures and greater revenue than the company was actually generating.  In another example, Defendant Bosov insisted that a Genius Fund Group employee transport a sample of its commercial cannabis product to him in Italy.  Plaintiff vehemently objected to any such transportation on

the basis that international transportation of a controlled substance was a serious criminal offense in both Italy and the United States.  Despite this, Plaintiff later learned that a different Genius Fund Group executive organized the requested transport behind Plaintiff's back.

36.    In December 2019 and January 2020, company management participated in two multi-day oversight meetings with Defendants Bosov and Shinder, who was a longtime friend and advisor to Defendant Bosov.  During this time, Plaintiff made clear to Defendant Bosov that the company had no viable path to profitability without a complete overhaul of its operations.  Plaintiff presented Defendant Bosov with a plan to turn the company profitable with a minimal additional cash infusion, which Defendant Bosov appeared to accept and requested that Plaintiff implement.  Defendant Bosov then appointed Defendant Shinder to oversee the company overhaul.

37.    On March 5, 2020, Plaintiff was offered and accepted the position of CEO.  Plaintiff's written employment agreement specified that the compensation for his position as CEO included (but was not limited to):

a.    A $300,000 signing bonus;

b.    Relocation expenses from New York to California, and the security deposit and first month's rent for a new home in California;

c.    Guaranteed base salary of $700,000 per annum through December 31, 2021;

d.    Guaranteed annual bonus of no less than 50 percent of base salary through December 31, 2021;

e.    Participation in the Genius Profit Participation Plan; and

f.    Participation in the Genius Fund Group's employee benefits programs, including medical, dental, and vision benefits.

38.     Plaintiff's overhaul plan showed immediate results.  The company immediately began generating profit—and, in fact, generated more profit in a matter of weeks than during the company's *entire* existence.  It was clear that Plaintiff's leadership and direction was critical to bring the company out of turmoil.

39.     Plaintiff's promotion to CEO was vocally supported by Defendant Shinder, who at least publicly praised Plaintiff's business acumen and reorganization plan, and who made clear that he wanted Plaintiff to lead the reorganization efforts.  Almost immediately after Plaintiff's promotion to CEO, however, Defendants Shinder and Bosov's real plan to sideline Plaintiff and hijack the business became apparent.  Defendant Shinder ignored virtually all communications from Plaintiff, making it impossible for Plaintiff to perform his duties as CEO.  Instead, behind Plaintiff's back, Defendant Shinder began carrying out a wholly different "reorganization" from what Plaintiff had presented to Defendant Bosov and what Defendant Bosov had approved.  Defendant Shinder began making virtually every executive-level decision without consulting Plaintiff, and implemented those decisions by circumventing Plaintiff and giving instructions directly to Plaintiff's subordinates.  At the same time, Defendant Shinder engaged in a substantial corporate restructuring of the various shell companies comprising the Genius Fund Group in order to give himself complete power and a controlling stake in all of those companies.  This included Defendant Bosov transferring ownership and control of virtually all Genius Fund Group companies to Defendants Shinder and ESSMW – Earth Solar System Milky Way, LLC, of which Defendant Shinder is the sole member.  Upon information and belief, Defendant Bosov approved of, directed, and participated in Defendant Shinder's swift and stealth takeover of the Genius Fund Group.

40.     Unbeknownst to Plaintiff, on March 23, 2020, Defendant Shinder, as the recently self-appointed President and Chairman of Genius Fund Group's Board of Directors, issued a directive that all employees and management of the Genius

Fund Group would be terminated effective March 26, 2020, without exception.  The purported reason for the terminations was the economic impact of the global COVID-19 pandemic on the Genius Fund Group's business—even though both California and Los Angeles deemed cannabis an "essential business" that could maintain full operation during the crisis.  As Plaintiff was part of Genius Fund Group's management, Defendant Shinder's directive terminated Plaintiff's employment as CEO.  Defendant Shinder confirmed to other company employees, directors, and officers that Plaintiff had been terminated.

41.     On March 26, 2020, Plaintiff was informed of his impending termination and the pretextual reason for his and all the others' terminations. Plaintiff told Defendant Shinder and others that the Genius Fund Group's mass terminations did not comply with their sixty-day notification obligations pursuant to California Labor Code sections 1400 *et seq.* (the "WARN Act").  California's governor issued an Executive Order on March 17, 2020, exempting certain employers from their WARN Act obligations provided that any mass terminations were due to "COVID-19-related 'business circumstances that were not reasonably foreseeable as of the time that notice would have been required.'"  Cal. Exec. Order N-31-20 (Mar. 17, 2020).  Of course, the March 26, 2020 mass terminations at the Genius Fund were not in fact due to COVID-19-related business circumstances but rather preexisting and reasonably foreseeable business conditions that Plaintiff had been trying to rectify for months to no avail due to Defendants' actions as alleged herein.

42.     Plaintiff was terminated other than for cause prior to the conclusion of his employment agreement.  Plaintiff is therefore entitled to immediate payment of the sums identified under his contract.

43.     Defendants' conduct was malicious, oppressive, despicable, and fraudulent, thereby entitling Plaintiff to punitive damages where available by law.

44.     On April 23, 2020, Plaintiff filed a complaint and an amended complaint with, and received a Right to Sue Notice from, the Department of Fair Employment and Housing.  That complaint identified the facts and circumstances underlying this action.  Plaintiff therefore exhausted his administrative remedies to the extent he was required to do so.

**FIRST CAUSE OF ACTION**

**(Civil Conspiracy)**

**<u>Against All Defendants</u>**

45.     Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth at length.

46.     Defendants each formed a conspiracy with all other Defendants in this action to commit the unlawful torts and other conduct alleged herein.  Moreover, each of Defendants' acts as alleged in this lawsuit were performed in furtherance of the common design of this conspiracy.  The formation and operation of this conspiracy resulted in damage to Plaintiff, including (but not limited to) Plaintiff's unlawful termination from the Genius Fund Group.

47.     Defendants' conduct was malicious, oppressive, despicable, and fraudulent.

**SECOND CAUSE OF ACTION**

**(Breach of Contract)**

**<u>Against All Defendants</u>**

48.     Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth at length.

49.     Plaintiff entered in a written contract with Defendants whereby Plaintiff would be employed as the Genius Fund Group's CEO through December 31, 2021. Plaintiff's compensation for this position included, but was not limited to:

a.     A $300,000 signing bonus;

  b.  Relocation expenses, and the security deposit and first month's rent for a new home;

  c.  Guaranteed base salary of $700,000 per annum through December 31, 2021;

  d.  Guaranteed annual bonus of no less than 50 percent of his base salary through December 31, 2021;

  e.  Participation in the Genius Profit Participation Plan; and

  f.  Participation in the Genius Fund's employee benefits programs, including medical, dental, and vision benefits.

50. Plaintiff's employment agreement further specified that, in the event he was terminated prior to December 31, 2020, for any reason other than for cause, Plaintiff would receive—at a minimum—severance pay equal to his guaranteed base salary through December 31, 2021.

51. Plaintiff was expressly and/or constructively terminated from his position as CEO of the Genius Fund Group.  Plaintiff's termination was not for cause, and not one based on willful breach of duty, habitual neglect of duty, or continued incapacity to perform his duty.  But for the conduct of Defendants, Plaintiff remained able and willing to carry out the terms of his employment agreement.  Moreover, the Genius Fund Group has not paid Plaintiff the entire sums owed to him under the terms of his employment contract.

52. Defendants therefore breached the terms of his employment contract, and that breach was a substantial factor in causing Plaintiff's damages.

## THIRD CAUSE OF ACTION

### (Breach of Implied Covenant of Good Faith and Fair Dealing)

### <u>Against All Defendants</u>

53. Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth at length.

54.    Plaintiff entered in a written contract with Defendants whereby Plaintiff would be employed as the Genius Fund Group's CEO through December 31, 2021. Plaintiff's compensation for this position included, but was not limited to:

      a.    A $300,000 signing bonus;

      b.    Relocation expenses, and the security deposit and first month's rent for a new home;

      c.    Guaranteed base salary of $700,000 per annum through December 31, 2021;

      d.    Guaranteed annual bonus of no less than 50 percent of his base salary through December 31, 2021;

      e.    Participation in the Genius Profit Participation Plan; and

      f.    Participation in the Genius Fund's employee benefits programs, including medical, dental, and vision benefits.

55.    Plaintiff's employment agreement further specified that, in the event he was terminated prior to December 31, 2020, for any reason other than for cause, Plaintiff would receive at minimum severance pay equal to his guaranteed base salary through December 31, 2021.

56.    Plaintiff was expressly and/or constructively terminated from his position as CEO of the Genius Fund Group.  Plaintiff's termination was not for cause, and not one based on willful breach of duty, habitual neglect of duty, or continued incapacity to perform his duty.  But for the conduct of Defendants, Plaintiff remained able and willing to carry out the terms of his employment agreement.

57.    Defendants did not act fairly and in good faith in carrying out the terms of Plaintiff's employment agreement.  Defendants' unfair and bad faith conduct included, among other things, expressly and/or constructively terminating Plaintiff's employment for the purpose of avoiding paying sums owed to Plaintiff under the employment agreement; to avoid exposure and liability for the company fraud and

malfeasance that Plaintiff recognized and identified during his employment with the company as further described in this complaint; and to avoid liability for potential WARN Act violations by failing to give company employees sufficient notice of an impending mass termination, which Plaintiff had raised immediately prior to his termination.

58.     Because the Genius Fund's March 26, 2020 mass terminations were not in fact due to COVID-19-related business circumstances but rather preexisting and reasonably foreseeable business conditions that Plaintiff had been trying to rectify for months to no avail due to Defendants' actions as alleged herein, Defendants were required to give sixty days' notice of terminations per the WARN Act. Defendants proceeded with terminating Plaintiff despite his informing them of their WARN Act obligations.

59.     Plaintiff was harmed as a result of Defendants' conduct.

**FOURTH CAUSE OF ACTION**

**(Intentional Misrepresentation—Cal. Lab. Code § 970)**

**<u>Against All Defendants</u>**

60.     Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth at length.

61.     Plaintiff entered in a written contract with Defendants whereby Plaintiff would be employed as the Genius Fund Group's CEO through December 31, 2021. Plaintiff's compensation for this position included, but was not limited to:

     a.     A $300,000 signing bonus;

     b.     Relocation expenses, and the security deposit and first month's rent for a new home;

     c.     Guaranteed base salary of $700,000 per annum through December 31, 2021;

     d.     Guaranteed annual bonus of no less than 50 percent of his base salary through December 31, 2021;

e.     Participation in the Genius Profit Participation Plan; and

f.     Participation in the Genius Fund's employee benefits programs, including medical, dental, and vision benefits.

62.    Defendants knew that, by accepting this offer of employment, Plaintiff would be required to relocate himself and his family from the State of New York to the State of California.  Defendants knowingly and intentionally induced Plaintiff to so relocate through an ostensible promise of legitimate employment in California under the terms of the aforementioned contract, including (but not limited to) the guaranteed signing bonus and payment of relocation expenses.  Plaintiff reasonably and justifiably relied on these representations in entering into the employment contract and actually relocating himself to the State of California to work for the Genius Fund Group.  Unbeknownst to Plaintiff, Defendants never had any intention of employing Plaintiff in accordance with the terms of his employment contract.

63.    Plaintiff actually relocated to California prior to his unlawful termination from the Genius Fund Group, as alleged herein.  After Plaintiff was terminated, Plaintiff was again forced to relocate out of state.  Defendants misrepresentations therefore damaged Plaintiff.

**FIFTH CAUSE OF ACTION**

**(Wrongful Termination in Violation of Public Policy)**

**<u>Against All Defendants</u>**

64.    Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth at length.

65.    Plaintiff entered in a written contract with Defendants whereby Plaintiff would be employed as the Genius Fund Group's CEO through December 31, 2021.  Plaintiff's compensation for this position included, but was not limited to:

a.     A $300,000 signing bonus;

b.     Relocation expenses, and the security deposit and first month's rent for a new home;

c.   Guaranteed base salary of $700,000 per annum through December 31, 2021;

d.   Guaranteed annual bonus of no less than 50 percent of his base salary through December 31, 2021;

e.   Participation in the Genius Profit Participation Plan; and

f.   Participation in the Genius Fund's employee benefits programs, including medical, dental, and vision benefits.

66.   Plaintiff's employment agreement further specified that, in the event he was terminated prior to December 31, 2020, for any reason other than for cause, Plaintiff would receive—at a minimum—severance pay equal to his guaranteed base salary through December 31, 2021.

67.   Plaintiff was expressly and/or constructively terminated from his position as CEO of the Genius Fund Group.  Plaintiff's termination was not for cause, and not one based on willful breach of duty, habitual neglect of duty, or continued incapacity to perform his duty.  But for the conduct of Defendants, Plaintiff remained able and willing to carry out the terms of his employment agreement.

68.   Defendants expressly and/or constructively terminated Plaintiff's employment for reasons that contravene well-established public policy in California. In particular, Defendants terminated Plaintiff for the purposes of: (1) avoiding paying sums owed to Plaintiff under the employment contract, including (but not limited to) the relocation expenses and signing bonus (in violation of California Labor Code sections 201, 216, and 970); (2) for reporting ongoing corporate fraud and malfeasance that affected the investments of investors and potential investors, as well as the public at large through the company's involvement in the commercial supply chain of cannabis products in California; and (3) avoiding liability for potential WARN Act violations by failing to give company employees sufficient

COMPLAINT FOR DAMAGES

notice of an impending mass termination, which Plaintiff raised to company management prior to his termination.

69.     Because the Genius Fund's March 26, 2020 mass terminations were not in fact due to COVID-19-related business circumstances but rather preexisting and reasonably foreseeable business conditions that Plaintiff had been trying to rectify for months to no avail due to Defendants' actions as alleged herein, Defendants were required to give sixty days' notice of terminations per the WARN Act. Defendants proceeded with terminating Plaintiff despite his informing them of their WARN Act obligations.

70.     Plaintiff was harmed as a result of Defendants' conduct.

**SIXTH CAUSE OF ACTION**

**(Whistleblower Retaliation—Cal. Lab. Code § 1102.5)**

**<u>Against All Defendants</u>**

71.     Plaintiff re-alleges and incorporates the allegations set forth in the preceding paragraphs as though fully set forth at length.

72.     Plaintiff informed Defendant Shinder and other persons, executives, and directors of the Genius Fund Group, including his superiors, about the fact that the mass terminations contemplated by the company, including the manner in which the company intended to effect the terminations, did not comply with the WARN Act.  Although the company purported to terminate employees due to the business interruptions caused by COVID-19, this was simply pretext.  In reality, due to years of company mismanagement and fraud, Defendants simply wished to escape liability for the debts and liabilities it had previously incurred by shutting down the company and restructuring and redistributing the company's assets as alleged herein.

73.     Defendants terminated Plaintiff's employment because Plaintiff had disclosed to his superiors, and Defendants believed that he may later further disclose to a government or law enforcement agency, the fact that Defendants intentionally

evaded WARN Act requirements.  As a proximate result of Defendants' conduct, Plaintiff was damaged as further alleged herein.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief against Defendants as follows:

1. For an award of compensatory damages according to proof at trial;

2. For an award of punitive damages according to proof at trial;

3. For prejudgment and post-judgment interest on any award of damages;

4. For all costs of suit;

5. For an award of reasonable attorney fees; and

6. For any other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands a jury trial on all issues so triable.

DATED:  April 24, 2020                    Respectfully submitted,

BROWNE GEORGE ROSS LLP
   Thomas P. O'Brien
   Jennie Wang VonCannon
   David J. Carroll
   Nathan F. Brown


By:     /s/ Thomas P. O'Brien
                Thomas P. O'Brien
Attorneys for Plaintiff Francis J. Racioppi, Jr.

-26-

COMPLAINT FOR DAMAGES