BROWNE GEORGE ROSS LLP
Thomas P. O'Brien (State Bar No. 166369)
  tobrien@bgrfirm.com
Jennie Wang VonCannon (State Bar No. 233392)
  jvoncannon@bgrfirm.com
David J. Carroll (State Bar No. 291665)
  dcarroll@bgrfirm.com
Nathan F. Brown (State Bar No. 317300)
  nbrown@bgrfirm.com
801 S. Figueroa Street, Suite 2000
Los Angeles, California 90017
Telephone: (213) 725-9800
Facsimile: (213) 725-9808

Attorneys for Plaintiff
Francis J. Racioppi, Jr.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS J. RACIOPPI, JR., an individual,<br><br>            Plaintiff,<br><br>        vs.<br><br>DMITRY BORISOVICH BOSOV *et al.*,<br><br>            Defendants. | Case No. 2:20-cv-03797-FMO (JCx)<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF *EX PARTE* APPLICATION FOR RIGHT TO ATTACH ORDERS AND ISSUANCE OF WRITS OF ATTACHMENT OR, ALTERNATIVELY, TEMPORARY PROTECTIVE ORDER; DECLARATIONS OF FRANCIS J. RACIOPPI, JR., DAVID CARROLL, AND MICHAEL O'DOWD** |

# **TABLE OF CONTENTS**

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.  FACTUAL BACKGROUND ..................................................................... 2

    A.   Plaintiff's Background and Employment with The Genius Fund Group ................................................................................................. 2

    B.   GFG's Funding and Corporate Structure ........................................... 2

    C.   GFG Mismanagement, GFG Restructuring, and Plaintiff's Termination ........................................................................................ 4

    D.   GFG is Rapidly Liquidating Assets .................................................... 5

III. LEGAL STANDARD ................................................................................. 6

IV.  ARGUMENT .............................................................................................. 7

    A.   This Application Can and Should Be Granted Without Notice ............. 7

    B.   Plaintiff Is Entitled To Attach $3,745,613.68 of Defendants' Assets ................................................................................................. 9

        1.   Plaintiff's Claims Are Those Upon Which an Attachment May Be Issued ........................................................................ 10

            a.   Plaintiff's Key Claim is Based on an Express Contract ............................................................................ 10

            b.   The Attachment Amounts Are Fixed Or Readily Ascertainable ..................................................................... 10

            c.   Plaintiff's Claims Are Not Secured By Real Property ........................................................................... 11

            d.   Plaintiff's Claims Against Defendants Are Commercial ....................................................................... 11

        2.   Plaintiff's Claims Have Probable Validity ................................ 12

        3.   The Property Sought To Be Attached is Subject To Attachment ................................................................................ 12

        4.   The Application Complies With All Other Procedural Requirements ............................................................................ 13

    C.   All Defendant Are Vicariously Liable as Alter Egos ......................... 13

    D.   Alternatively, the Court Should Issue a Protective Order .................. 14

V.   CONCLUSION ......................................................................................... 17

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Burke v. Superior Court*,
   71 Cal. 2d 276 (1969) ...................................................................................... 6

*Chrysler Credit Corp. v. Waegerle*,
   29 Ca1. App. 3d 681 (1972) ............................................................................ 8

*Goldstein v. Barak Constr.*,
   164 Cal. App. 4th 845 (2008) .......................................................................... 7

*Grotheer v. Meyer Rosenberg, Inc.*,
   11 Cal. App. 2d 268 (1936) ........................................................................... 13

*Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*,
   614 F. Supp. 2d 1056 (C.D. Cal. 2009) (Chapman, J.) ............................ 7, 13

*J.C. Peacock, Inc. v. Hasko*,
   196 Cal. App. 2d 363 (1961) ........................................................................... 6

*Johnson v. Alexander*,
   63 Cal. App. 3d 806 (1976) ............................................................................. 8

*Kemp Bros. Constr., Inc. v. Titan Elec. Corp.*,
   146 Cal. App. 4th 1474 (2007) ....................................................................... 6

*Loeb & Loeb v. Beverly Glen Music, Inc.*,
   166 Cal. App. 3d 1110 (1985) ......................................................................... 7

*Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*,
   112 F. Supp. 2d 1178 (C.D. Cal. 2000) (Chapman, J.) .............................. 7, 9

*Toho-Towa Co. v. Morgan Creek Prods., Inc.*,
   217 Cal. App. 4th 1096 (2013) ..................................................................... 13

*Tran v. Farmers Grp., Inc.*,
   104 Cal. App. 4th 1202 (2002) ..................................................................... 13

*Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*,
   99 Cal. App. 4th 228 (2002) ......................................................................... 14

# TABLE OF AUTHORITIES
### (Continued)

**Page(s)**

*W. Steel & Ship Repair, Inc. v. RMI, Inc.*,
176 Ca1. App. 3d 1108, 1114-15 (1986) ............................................................. 8

**Statutes**

Cal. Code Civ. Proc. § 482.110 .................................................................... 7, 11

Cal. Code Civ. Proc. § 483.010(a)-(c) ..................................................... 7, 10, 11

Cal. Code Civ. Proc. § 484.090(a)(1)–(4) ........................................................ 7

Cal. Code Civ. Proc. §§ 484.090(a)(2), 484.050 ............................................ 12

Cal. Code Civ. Proc. § 485.010(b)(1), (b)(5) ................................................... 8

Cal. Code Civ. Proc. § 486.010(x) ................................................................. 15

Cal. Code Civ. Proc. § 487.010 ..................................................................... 12

Cal. Lab. Code § 218.5(a) ............................................................................. 11

California Code of Civil Procedure sections 481.010 *et seq.* ............................. 7

WARN Act ....................................................................................................... 9

**Other Authorities**

Fed. R. Civ. P. 64(a) ....................................................................................... 6

Fed. R. Civ. P. 64(b) ....................................................................................... 6

*Russian Oligarch Dmitry Bosov Buys $30 Million Beverly Hills Mansion*, YAHOO! ENTERTAINMENT (Jan. 3, 2020),
https://www.yahoo.com/entertainment/russian-oligarch-dmitry-bosov-buys-000421767.html ............................................................. 16

## MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Plaintiff Francis J. Racioppi, Jr. brings this action against his former employer, an amalgam of individuals and shell companies collectively known as the Genius Fund Group ("GFG"), which is now rapidly liquidating and fraudulently conveying its assets in order to stymie its myriad creditors—including Plaintiff. Plaintiff was employed by GFG until March 27, 2020, at which time he was terminated without cause.  GFG has since failed to pay Plaintiff the outstanding sums owed to him under his employment contract—more than $2 million—thus necessitating this lawsuit.

As detailed below and in Plaintiff's accompanying declaration, GFG failed to generate any substantial revenue during virtually its entire existence and has survived only through periodic cash infusions from certain well-funded foreign Defendants.  When those Defendants finally realized the enormity of GFG's outstanding debts and financial mismanagement, they began rapidly transferring GFG's ownership and assets to shell companies in order to evade their creditors. After Plaintiff's counsel sent Defendants a demand letter for the outstanding sums owed under Plaintiff's contract, Defendants began rapidly liquidating all GFG assets through "fire sales"—often for pennies on the dollar.  Indeed, one of the few remaining persons affiliated with GFG specifically told a former employee that they were liquidating all assets for the very purpose of making GFG judgment proof.

Soon, these assets and/or the proceeds of those fraudulent conveyances will become completely untraceable, and Plaintiff will be unable to recover the severance that he is owed by Defendants.  Moreover, because Defendants have shown a clear willingness to fraudulently convey their assets, providing them with notice of this application will only incentivize them to accelerate that transfer—thus rendering further prosecution of the lawsuit fruitless.  Plaintiff therefore seeks, on an *ex parte* basis, a right to attach order and a writ of attachment or, alternatively, a

1  temporary protective order enjoining Defendants from transferring these assets.

2  **II.    FACTUAL BACKGROUND**

3          **A.    Plaintiff's Background and Employment with The Genius Fund**

4                  **Group**

5          After serving his country for almost thirteen years, on four different

6  continents and in some of the most elite units in the United States Army, Plaintiff

7  returned to civilian life in the United States with the intent to fulfill the American

8  dream by transitioning his military skills into success in the business arena.

9  Declaration of Francis J. Racioppi in Support of *Ex Parte* Application for Right to

10 Attach Orders and Issuance of Writs of Attachment or, Alternatively, Temporary

11 Protective Order ("Racioppi Decl.") ¶¶ 3-5.

12         Shortly after graduating with a Master of Business Administration from New

13 York University's Stern School of Business, Plaintiff was hired by GFG as its Chief

14 Security Officer. *Id.* ¶¶ 6-7.  GFG was and is involved in the cultivation,

15 processing, and sale of commercial cannabis and hemp in California.  *Id.* ¶ 7.  In

16 October 2019, Plaintiff was promoted to GFG's Chief Operating Officer ("COO").

17 *Id.*  In approximately mid-December 2019, Plaintiff began serving informally as

18 GFG's "co-Chief Executive Officer."  *Id.*  On March 5, 2020, Plaintiff was officially

19 hired as GFG's Chief Executive Officer ("CEO").  *Id.*

20         **B.    GFG's Funding and Corporate Structure**

21         GFG was originally formed in or around the fall of 2018, when two

22 individuals—Gabriel Borden and Ari Stiegler—convinced Defendant Dmitry Bosov

23 to invest in the business.  *Id.* ¶ 17.  Defendant Bosov is among the wealthiest

24 businessmen in the Russian Federation, and he owns a controlling stake in

25 Defendants Alltech Group and Goldhawk Investments Ltd.  *Id.* ¶ 21.  Defendant

26 Bosov invested a total of approximately $165 million in GFG through Defendants

27 Alltech Group and Goldhawk Investments Ltd.  *Id.* ¶ 22.  Although those

28 investments were nominally denominated as loans to GFG, those loans were never

1   recalled or repaid.  *Id.* ¶ 22.  In addition, far from being a passive investor,

2   Defendant Bosov exerted complete control over all aspects of GFG's business and

3   was the self-described "ultimate beneficial owner" of GFG and its related entities.

4   *Id.* ¶¶ 23, 34-35, Exs. 19-20.  Defendant Bosov also substantially commingled his

5   personal funds and GFG's company funds.  *Id.* ¶ 24.

6          GFG consists of an amalgam of corporate entities, all of which are commonly

7   controlled and none of which have any independent financing, accounting, or formal

8   corporate separation whatsoever.  *Id.* ¶ 14.  The two prime GFG entities are

9   Defendants Genius Fund I, Inc. and Genius Fund I, LLC, which controlled all GFG

10  sub-entities.  *Id.* ¶¶ 15-16.  At one time, there were over ***sixty*** different sub-entities

11  that comprised GFG.  *Id.* ¶ 15.  All GFG entities wholly and completely

12  commingled funds with one another, and all of them failed to maintain any

13  legitimate separate accounting.  *Id.* ¶ 19.  All funds and investments paid to GFG

14  were sent to a Bank of America account in the name of Spotlight Operations LLC.

15  *Id.*  These funds would be used to either directly pay the debts of the various GFG

16  entities, or otherwise distributed among the GFG entities for them to pay their own

17  immediately-due debts.  *Id.*  All of the GFG entities were undercapitalized, insofar

18  as they rarely had liquid assets on hand that exceeded their immediately-due debts.

19  *Id.*  On numerous occasions, when one particular GFG entity would have

20  insufficient funds to cover its debts, funds would simply be transferred to it from a

21  different GFG entity without any type of accounting, loan documentation, or

22  otherwise.  *Id.*  Similarly, when Spotlight Operations LLC at one point had

23  insufficient funds to cover payroll, funds would simply be siphoned from the

24  various GFG entities into Spotlight Operation's Bank of America account.  *Id.*

25         The GFG entities also failed to follow corporate formalities.  *Id.* ¶ 19.  They

26  failed to hold regular member, director, and/or shareholder meetings, and the few

27  meetings that were nominally designated as such were unstructured and rarely had

28  accurate minutes kept.  *Id.*  None of the companies maintained separate staffing or

1  payroll.  *Id.*  Ownership of GFG assets were thinly distributed among the GFG

2  entities for the purpose of minimizing GFG's liability and exposure.  *Id.*  In short,

3  these entities simply existed as a mechanism to frustrate creditors and escape

4  liability.

5      **C.    GFG Mismanagement, GFG Restructuring, and Plaintiff's**

6          **Termination**

7          After Plaintiff's promotion to COO, he discovered that GFG had been and

8  was being substantially mismanaged by other executives and that GFG was in a dire

9  financial position, and he attempted to bring this to the attention of other GFG

10 executives and directors.  *Id*. ¶¶ 8, 26-27.  In December 2019 and February 2020,

11 Plaintiff informed Defendant Bosov of GFG's financial mismanagement, and he

12 presented Defendant Bosov with a plan to turn the company profitable with a

13 minimal additional cash infusion.  *Id*. ¶¶ 29-30.  Defendant Bosov accepted

14 Plaintiff's plan, requested that he implement the plan, and appointed Defendant

15 Shinder to oversee this implementation.  *Id.*

16         On March 5, 2020, Plaintiff was promoted to GFG's CEO.  *Id*. ¶¶ 9-10, Ex. 1.

17 Under the terms of his written employment agreement, GFG agreed to pay Plaintiff:

18 (1) a $300,000 signing bonus, relocation expenses from New York to California,

19 and the security deposit and first month's rent for a new home in California;

20 (2) guaranteed base salary of $700,000 per annum through December 31, 2021; and

21 (3) guaranteed annual bonus of no less than 50 percent of his base salary through

22 December 31, 2021.  *Id.*  Plaintiff's employment agreement further guaranteed that,

23 should he be terminated for any reason other than for cause, he would be entitled to

24 (at minimum) his guaranteed base salary through December 31, 2021.  *Id.* ¶ 11.

25         Initially, Defendant Shinder was supportive of Plaintiff's reorganization plan

26 and in having Plaintiff lead the execution of that plan.  *Id.* ¶ 32.  However, this

27 support was short lived, as within a matter of days after signing Plaintiff's written

28 employment agreement, Defendant Shinder began undercutting Plaintiff and

1  instituting his own reorganization plan, wherein he would amass all control of GFG

2  and its related entities so that he could liquidate its assets. *Id*. ¶¶ 32-34. This

3  included transferring ownership of all GFG entities to himself and Defendant

4  ESSMW – Earth Solar System Milky Way LLC, a Wyoming limited liability

5  company of which Defendant Shinder is the sole member. *Id.* ¶¶ 34-37, Exs. 19-26.

6        On March 23, 2020, Defendant Shinder, as the self-appointed President and

7  Chairman of GFG's Board of Directors, issued a directive terminating the

8  employment of all GFG employees and management, including Plaintiff, effective

9  March 27, 2020. *Id*. ¶ 36, 38, Exs. 23-24. Plaintiff was informed that the reason for

10  his termination was the myriad business restrictions and regulations put in place as a

11  result of the global COVID-19 pandemic. *Id.* This explanation was contrived and

12  belied by the fact that the COVID-19 pandemic actually caused a *boom* in the

13  commercial cannabis industry in California, *id.* ¶ 38; but in any event, it was clear

14  that his termination was not for cause.

15      **D.**    **GFG is Rapidly Liquidating Assets**

16        On April 2, 2020, Plaintiff's counsel sent a letter to Defendant Shinder and

17  GFG's then-Chief Legal Officer Michelle Lynd demanding payment of the

18  remaining sums due on Plaintiff's employment contract within 14 days. Declaration

19  of David Carroll in Support of *Ex Parte* Application for Right to Attach Orders and

20  Issuance of Writs of Attachment or, Alternatively, Temporary Protective Order

21  ("Carroll Decl.") ¶ 20, Ex. 28. On April 17, 2020, having received no response to

22  the foregoing letter, Plaintiff's counsel sent a further letter to Defendant Shinder,

23  Ms. Lynd, and Defendant Bosov. *Id.* ¶ 21, Ex. 29. This second letter included a

24  copy of the complaint and made clear that the complaint would be filed by April 24,

25  2020, if the matter was not resolved to Plaintiff's satisfaction. *Id.*

26        No response to this letter was received either. However, during the week of

27  April 20, 2020, Plaintiff learned through several former GFG employees that

28  Defendant Shinder was rapidly liquidating all GFG assets for the purpose of evading

creditors and rendering GFG entities judgment proof. Racioppi Decl. ¶ 46. This included hiring at least eight individuals—Chris Finelli, Liam Palmieri, Ari Stiegler, Gabriel Borden, Daniel Righi, Michael Andrews, Charles Sharpe, and August Wagener—on a commission basis to sell GFG's remaining hemp, real estate, business entities, vehicles, and other equipment. *Id.* Moreover, one individual associated with GFG even explicitly confirmed to a former GFG employee that the company was liquidating assets and thus it would not matter if that employee sued GFG. Declaration of Michael O'Dowd in Support of *Ex Parte* Application for Right to Attach Orders and Issuance of Writs of Attachment or, Alternatively, Temporary Protective Order ¶¶ 4-5.

Regardless of the ultimate destination of the proceeds, the precipitous attempts to sell off all assets appears to be an attempt to render GFG and its affiliates judgment proof in the event of litigation brought by Plaintiff and/or any other of GFG's creditors. Racioppi Decl. ¶ 46.

## III.  LEGAL STANDARD

In every federal civil action, "every remedy is available that, under the law of the state where the court is located, provides for seizing a person or property to secure satisfaction of the potential judgment." Fed. R. Civ. P. 64(a). This expressly includes attachment as one of the remedies available. Fed. R. Civ. P. 64(b).

In California, attachment is considered "an ancillary or provisional remedy to aid in the collection of a money demand by seizure of property in advance of trial and judgment." *Kemp Bros. Constr., Inc. v. Titan Elec. Corp.*, 146 Cal. App. 4th 1474, 1476 (2007) (citations and internal quotation marks omitted). Attachment is considered a "harsh remedy" because an alleged debtor loses control of his property before the claim against him is adjudicated, so provisions relating to this remedy are strictly construed. *J.C. Peacock, Inc. v. Hasko*, 196 Cal. App. 2d 363, 365 (1961). Nonetheless, attachment is "regularly" issued when requirements of code sections specifying contents of affidavit and nature of undertaking are complied with. *Burke*

*v. Superior Court*, 71 Cal. 2d 276, 279 n.3 (1969).

California Code of Civil Procedure sections 481.010 *et seq.* govern the procedures and grounds for obtaining right to attach orders and prejudgment writs of attachment. *Hamilton Beach Brands, Inc. v. Metric & Inch Tools, Inc.*, 614 F. Supp. 2d 1056, 1060 (C.D. Cal. 2009) (Chapman, J.). The burden is on the moving party to establish the grounds for an attachment order. *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App. 3d 1110, 1116 (1985). A court "shall issue a right to attach order" where the plaintiff shows:

> (1) The claim upon which the attachment is based is one upon which an attachment may be issued.
>
> (2) The plaintiff has established the probable validity of the claim upon which the attachment is based.
>
> (3) The attachment is not sought for a purpose other than the recovery on the claim upon which the attachment is based.
>
> (4) The amount to be secured by the attachment is greater than zero.

Cal. Code Civ. Proc. § 484.090(a)(1)–(4).

"Generally, an order of attachment may be issued only in an action for a claim of money which is based upon an express or implied contract where the total amount of such claim is a fixed or 'readily ascertainable' amount not less than $500.00." *Pos-A-Traction, Inc. v. Kelly-Springfield Tire Co.*, 112 F. Supp. 2d 1178, 1181-82 (C.D. Cal. 2000) (Chapman, J.); Cal. Code Civ. Proc. § 483.010(a). "A prejudgment attachment may secure the amount of the claimed indebtedness, as well as estimated costs and allowable attorney's fees." *Pos-A-Traction, Inc.*, 112 F. Supp. 2d at 1182; *Goldstein v. Barak Constr.*, 164 Cal. App. 4th 845, 852 (2008); Cal. Code Civ. Proc. § 482.110.

## IV.   ARGUMENT

### A.   This Application Can and Should Be Granted Without Notice

Plaintiff has not given notice of this application because the depth and sophistication of Defendants' ongoing fraud makes clear that, if they are given

*EX PARTE* APPLICATION FOR ATTACHMENT ORDERS OR TEMPORARY PROTECTIVE ORDER

notice, they will simply accelerate their already-ongoing liquidation and transfer of their assets.  Defendants' previous actions make this danger clear.  In particular, Defendants are currently in the process of liquidating as many GFG assets as possible, often for pennies on the dollar, immediately after learning that Plaintiff was threatening to file suit.

While *ex parte* attachments are not favored, they are permitted—and necessary—where the circumstances raise a threat that assets will be further dissipated if notice is given.  *See* Cal. Code Civ. Proc. § 485.010(b)(1), (b)(5).  For example, *W. Steel & Ship Repair, Inc. v. RMI, Inc.*, 176 Cal. App. 3d 1108, 1114-15 (1986), recognizes that an attachment can properly issue without notice if there is a danger assets will be concealed if notice is given.  One indicator of such danger is a defendant's "past dishonesty."  *Id*. at 1114.  Similarly, in *Chrysler Credit Corp. v. Waegerle*, 29 Cal. App. 3d 681 (1972), the Court of Appeal affirmed a contempt judgment for violation of a temporary protective order preventing the sale or disposition of twenty-nine automobiles, which had been issued without notice.  It found no infirmity in issuing the temporary protective order without notice, which it (and defendants) compared to an attachment.  *Id*. at 686-87.  And in *Johnson v. Alexander*, 63 Cal. App. 3d 806, 814 (1976), the California Court of Appeal affirmed the trial court's refusal to dissolve an attachment it had issued without notice and agreed with the trial court that the circumstances presented "a substantial danger that the defendants would transfer, other than in the ordinary course of business, remove or conceal the property sought to be attached."  *Id*.

Here, Plaintiff has not given notice of this application to Defendants because the Defendants' previous and ongoing attempts to liquidate of all related assets for pennies on the dollar—immediately after being notified of Plaintiff's intent to file suit—makes it clear that, if they are given any notice of this application, it is all but guaranteed that they will redouble their efforts to transfer, hide or secret away the remaining funds or assets under the jurisdiction of this Court.  Defendants' previous

actions make this danger clear:

- Defendants are currently liquidating assets immediately after learning that Plaintiff has and intends to assert a multi-million dollar claim against them;

- Defendants Bosov and Shinder have made clear their intent to liquidate all assets owned by the GFG;

- Defendant Bosov transferred ownership and control of virtually all GFG assets and properties to Defendants Shinder and ESSMW – Earth Solar System Milky Way, LLC to enable them to dispose of all assets;

- Defendants fired all employees and management of the GFG with no warning, and has since sent them back-dated and fraudulent WARN Act notices;

- Mere days after Plaintiff contacted Defendant Shinder to request his outstanding compensation under his written compensation agreement, Defendant Shinder changed the address of record of multiple GFG entities;

- Defendants have rehired several former GFG sales staff to sell off GFG assets at pennies on the dollar; and

- Defendants have consistently utilized a series of shell corporations to act as alter egos in an attempt to cloud the funding origin and corporate structure of the GFG.

**B.      Plaintiff Is Entitled To Attach $3,745,613.68 of Defendants' Assets**

As demonstrated herein, Plaintiff meets each of the four requirements for issuance of a right to attach order and writ of attachment.  The total amount owed to Plaintiff under his written employment agreement is $2,245,613.68, consisting of a $300,000 signing bonus, a pro-rated portion of his $700,000 per annum base pay through December 2021, reimbursement for his relocation expenses, and his guaranteed bonuses of no less than $350,000 per year.  Racioppi Decl. ¶¶ 9-10.  In addition to his compensatory damages under the written employment agreement, Plaintiff is entitled to an additional $1,500,000 to cover his estimated costs and attorneys' fees in bringing this lawsuit.  *Pos-A-Traction, Inc.*, 112 F. Supp. 2d at 1182.  As such, Plaintiff should be allowed to secure $3,745,613.68 in assets from Defendants.

## 1. Plaintiff's Claims Are Those Upon Which an Attachment May Be Issued

A claim is one on which an attachment may be issued if it: (1) seeks money based on a contract; (2) seeks a fixed or readily ascertainable amount; (3) is not secured by real property; and (4) is a commercial claim if the defendant is a natural person. Cal. Code Civ. Proc. § 483.010(a)-(c).

### a. Plaintiff's Key Claim is Based on an Express Contract

The key claim that Plaintiff asserts is based on a written contract: Plaintiff's written employment agreement with GFG. Complaint ¶¶ 48-52, ECF No. 1. As explained above, Plaintiff entered into a written employment agreement with GFG to be its CEO through at least December 31, 20201. Racioppi Decl. ¶¶ 9-10, Ex. 1. However, on March 27, 2020, Plaintiff was terminated without cause and GFG has not paid Plaintiff the severance that he is owed under the contract. Defendants therefore breached Plaintiff's employment contract, thereby causing Plaintiff harm.

### b. The Attachment Amounts Are Fixed Or Readily Ascertainable

An attachment must be based on a claim for damages that is fixed or readily ascertainable. Cal. Code Civ. Proc. § 483.10(a). As explained in *Lewis v. Steifel*, "an attachment will lie . . . where the basis of the computation of damages appears to be reasonable and definite. The fact that the damages are unliquidated is not determinative . . . . [M]erely because the amount is uncertain consisting of damages to be proven at the trial, is no reason why an attachment may not issue where, as here, such damages are easily ascertainable according to fixed standards supplied by the contract or the law acting upon it." 98 Cal. App. 2d 648, 650 (1950). Plaintiff's claims for damages meet this requirement.

Plaintiff, pursuant to the written employment agreement, was owed a $300,000 signing bonus, a $700,000 per annum base pay for at least two years, and guaranteed bonuses of no less than $350,000 per year. Racioppi Decl. ¶¶ 9-10, Ex.

1. Plaintiff was also guaranteed reimbursement of his family's reasonable relocation expenses, of which he incurred $12,463.00 in expenses to date. *Id.* Since his termination, Defendants have not paid Plaintiff any of the amounts he was due under the written employment agreement. Therefore, the $2,245,613.68 owed to Plaintiff under the written employment agreement is fixed and ascertainable.

Plaintiff is further entitled to attach property needed to secure any recovery of fees and costs. Cal. Code Civ. Proc. § 482.110. Because this is an action for the nonpayment of wages, attorney's fees are recoverable in this action. *See* Cal. Lab. Code § 218.5(a) ("In any action brought for the nonpayment of wages . . . the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action."). Plaintiff conservatively estimates that he will incur approximately $50,000 in costs and $1.45 million in attorney's fees from litigation of this matter through trial.

### c.    Plaintiff's Claims Are Not Secured By Real Property

An attachment cannot issue on a claim secured by real property. Cal. Code Civ. Proc. § 483.10(b). Plaintiff's claims against the Defendants were never secured by real property or any other property. Racioppi Decl. ¶ 12.

### d.    Plaintiff's Claims Against Defendants Are Commercial

Generally, an attachment cannot issue against a natural person unless he or she is engaged in a trade, business or profession. Cal. Code Civ. Proc. § 483.010(c). However, California courts can also issue an attachment for the recovery of money against a *nonresident* individual in any action. *Id.* § 492.010. Here, all Defendants except two are not natural persons. Moreover, their liability in any event arises from their roles as the true and equitable owners of all GFG entities. Racioppi Decl. ¶¶ 12, 20-22, 32. Further, neither individual defendant is a resident of California, as Defendant Bosov is a resident of the Russian Federation and Defendant Shinder is a resident of New Jersey. As a result, this requirement is also satisfied.

### 2.      Plaintiff's Claims Have Probable Validity

In order to obtain an attachment, Plaintiff need only demonstrate the "probable validity" of his claim.  Cal. Code Civ. Proc. §§ 484.090(a)(2), 484.050. Probable validity is shown "where it is more likely than not that the [applicant] will obtain a judgment against the defendant on the claim." *Id*. § 481.190.

The written employment agreement clearly states that GFG would pay Plaintiff his signing bonus, his pro-rata salary through 2021, his reimbursement for moving expenses, and two bonuses so long as he was not terminated with cause. Racioppi Decl. ¶¶ 9-10, Ex. 1.  To date, none of the Defendants have ever provided Plaintiff with any information that would indicate that his termination was for cause; indeed, the only reason ever provided was the suspect explanation that the COVID-19 crisis purportedly suddenly rendered further operation of GFG impossible. *Id*. ¶¶ 35-38.  This is not a cause that would warrant Plaintiff's termination without just compensation.  Defendants' clear breach of the written employment agreement shows that Plaintiff's claim has probable validity.

### 3.      The Property Sought To Be Attached is Subject To Attachment

Any property of a defendant that is not a natural person is subject to attachment.  Cal. Code Civ. Proc. § 487.010.  Where a defendant is a natural person, the following property, among others, can be attached:  interests in real property except leasehold estates with unexpired terms of less than one year; property arising out of the conduct the defendant's trade, business, or profession; minerals to be extracted; negotiable documents of title; instruments; money on the premises where business is conducted by the defendant; money located elsewhere; and deposit accounts.  *Id*.  Here, only Defendants Bosov and Shinder are natural persons, but their interests in property, proceeds of their business, money and accounts are nonetheless subject to attachment.  Plaintiff is aware of no claim that any of the property sought to be attached is exempt from attachment.  Racioppi Decl. ¶ 40.

### 4. The Application Complies With All Other Procedural Requirements

Plaintiff seeks attachment solely to further his recovery efforts against the Defendants and has posted the required undertaking. *Id.* ¶ 43. In his application, the amount Plaintiff seeks is greater than zero.

### C. All Defendant Are Vicariously Liable as Alter Egos

"Under the alter ego doctrine . . . where a corporation is used by an individual or individuals, or by another corporation, to perpetrate fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, a court may disregard the corporate entity and treat the corporation's acts as if they were done by the persons actually controlling the corporation." *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1106 (2013). "California law allows writs of attachment to issue against an entity or individual who is not a party to a contract if that entity or individual is the alter ego of the party whose property is subject to attachment." *Hamilton Beach Brands, Inc.*, 614 F. Supp. 2d at 1082 (citing *Paul v. Palm Springs Homes Inc.*, 192 Cal. App. 2d 858, 863 (1961)). Further, attachment may be a proper pretrial remedy against alter egos that are not even party to the underlying contract. *See Grotheer v. Meyer Rosenberg, Inc.*, 11 Cal. App. 2d 268, 273 (1936) (attachments proper against alter ego corporations not parties to the contracts; "equity will strip off the mask . . . when it is but a mask").

Like individual shareholders, courts will generally allow for the piercing of the corporate veil between corporations if: "(1) such a unity of interest and ownership that the separate corporate personalities are merged, so that one corporation is a mere adjunct of another or the two companies form a single enterprise; and (2) an inequitable result if the acts in question are treated as those of one corporation alone." *Tran v. Farmers Grp., Inc.*, 104 Cal. App. 4th 1202, 1219 (2002). In making these determinations, "courts consider numerous factors, including inadequate capitalization, commingling of funds and other assets of the

two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, use of one as a mere conduit for the affairs of the other, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers." *Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc.*, 99 Cal. App. 4th 228, 245 (2002).

Here, the evidence demonstrates that all Defendants are alter egos of one another, and that they all used ostensible corporate separations to shield themselves from the liability they had amassed. Specifically, it is clear that:

- Defendant Bosov effectively controls Defendants Alltech Group and Goldhawk Investments Ltd., and used those companies to make a personal investment in the GFG;

- Defendant Bosov personally directed and controlled all GFG operations, and he commingled his personal funds with GFG corporate funds;

- None of the GFG entities maintained any true separate existence; they failed to observe corporate formalities, they commingled funds with one another, they concealed and misrepresented their true and equitable owners, they had no separate staff or payroll, and they had no separate financial accounting. In short, the myriad GFG entities existed simply as a mechanism to avoid liability; and

- Defendant Shinder undertook a stealth and fraudulent reorganization of GFG for the purpose of evading the myriad creditors that GFG had amassed, including transferring ownership of all GFG entities to himself and a shell company that he owned, and conducting a fire-sale of assets.

All defendants are clearly the alter egos of each other. The Court should not permit their ostensibly separate existence to enable them to continue perpetrating fraud, and should therefore permit Plaintiff to attach property owned by all Defendants.

### D.     Alternatively, the Court Should Issue a Protective Order

A plaintiff can also apply for a temporary protective order ("TPO") at the time it applies for an attachment, if "it appears from facts shown by affidavit that great or irreparable injury would result to the plaintiff if issuance of the order were

delayed until the matter could be heard on notice." Cal. Code Civ. Proc. § 486.010(x). Great or irreparable injury can be shown if there is a danger that the property to be attached may be concealed, substantially impaired in value, or made unavailable to the levy of an attachment. *Id*. § 485.010(b)(1).

Here, given the Defendants' ongoing attempts to rapidly liquidate all property held by the GFG, Plaintiff will be left to chase shell company after shell company, or lose any opportunity to seek any recompense should the Defendants return all of the proceeds of the GFG's assets to Russia. Racioppi Decl. ¶ 43. This ongoing conduct suggests that, absent a TPO, Defendants will further dissipate these assets and Plaintiff will be left with nothing. Plaintiff therefore requests a TPO prohibiting the following persons from transferring the amounts, or disposing of the assets, set forth below, until the Court decides the instant application.

- Dmitry Borisovich Bosov – $3,745,613.68
- Gary I. Shinder – $3,745,613.68
- Genius Fund I, Inc. – $3,745,613.68
- Genius Fund I, LLC – $3,745,613.68
- Restructure Trust LLC – $3,745,613.68
- ESSMW – Earth Solar System Milky Way, LLC – $3,745,613.68
- Goldhawk Investments Ltd. – $3,745,613.68
- Alltech Group – $3,745,613.68
- Heli Biotech LLC – $3,745,613.68
- Dr. Kush World Collective LLC – $3,745,613.68
- Eagle Rock Herbal Collective LLC – $3,745,613.68
- Genius Products LLC – $3,745,613.68
- Full Circle Labs LLC – $3,745,613.68
- Nature's Holiday LLC – $3,745,613.68
- Variant Hemp Solutions LLC – $3,745,613.68
- Genius Delivery LLC – $3,745,613.68

*EX PARTE* APPLICATION FOR ATTACHMENT ORDERS OR TEMPORARY PROTECTIVE ORDER

- Planck Properties LLC – $3,745,613.68

- Aristotle Equipment LLC – $3,745,613.68

- Genius Sales LLC – $3,745,613.68

- Genius Products T, Inc. – $3,745,613.68

- Genius Products NT, Inc. – $3,745,613.68

- Genius Products, Inc. – $3,745,613.68

- Full Circle Industries – $3,745,613.68

- Residential property in Beverly Hills, California more fully described in Exhibit 29 (owned by LWBH Holdings LLC, which is an alter ego of Defendant Bosov)[1]

- 0 Bolsa Road, Hollister, CA 95023 (owned by Planck Properties LLC)[2]

- 9924/9928 Rancho Road, Adelanto, CA 92301 (owned by Planck Properties LLC)[3]

- 7569 Melrose Avenue Los Angeles, CA 90046 (owned by Planck Properties LLC)[4]

Plaintiff further requests that the order prohibit any person acting in concert with the foregoing persons or entities—including Chris Finelli, Liam Palmieri, Ari Stiegler, Gabriel Borden, Daniel Righi, Michael Andrews, Charles Sharpe, and August Wagener—from assisting them from selling or transferring these assets.  *See*

---

[1] *See* Carroll Decl. ¶ 21, Ex. 29 (grant deed of property), ¶ 22, Ex. 30 (showing that LWBH Holdings LLC was created during the month that the property was sold to Bosov); Racioppi Decl. ¶ 44 (demonstrating that Bosov was the ultimate beneficial owner of this property); *Russian Oligarch Dmitry Bosov Buys $30 Million Beverly Hills Mansion*, YAHOO! ENTERTAINMENT (Jan. 3, 2020), https://www.yahoo.com/entertainment/russian-oligarch-dmitry-bosov-buys-000421767.html (reporting that Dmitry Bosov purchased a home in Beverly Hills "for $30 million in an all-cash deal," and that Bosov purchased the property "shielded behind an LLC").

[2] *See* Carroll Decl. ¶ 23, Ex. 31 (grant deed of property).

[3] *Id.* ¶ 24, Ex. 32 (grant deed of property).

[4] *Id.* ¶ 25, Ex. 33 (grant deed of property).

1  Racioppi Decl. ¶ 46.

2  **V.      CONCLUSION**

3         Based on the foregoing, the Court should issue a Right to Attach Order and

4  Writ of Attachment against Defendants.  In the alternative, the Court should issue a

5  Temporary Protective Order pending a hearing on the Right to Attach Order and

6  Writ of Attachment.

7

8  DATED:  April 28, 2020              BROWNE GEORGE ROSS LLP

9                                              Thomas P. O'Brien
                                               Jennie Wang VonCannon
10                                             David J. Carroll
                                               Nathan F. Brown
11

12

13                                      By:        /s/ Thomas P. O'Brien

14                                                Thomas P. O'Brien
                                          Attorneys for Plaintiff Francis J. Racioppi, Jr.
15

16

17

18

19

20

21

22

23

24

25

26

27

28