1  BROWNE GEORGE ROSS LLP
2  Thomas P. O'Brien (State Bar No. 166369)
      tobrien@bgrfirm.com
3  Jennie Wang VonCannon (State Bar No. 233392)
      jvoncannon@bgrfirm.com
4  David J. Carroll (State Bar No. 291665)
      dcarroll@bgrfirm.com
5  Nathan F. Brown (State Bar No. 317300)
      nbrown@bgrfirm.com
6
7  801 S. Figueroa Street, Suite 2000
   Los Angeles, California 90017
8  Telephone: (213) 725-9800
   Facsimile: (213) 725-9808
9

10 Attorneys for Plaintiff
11 Francis J. Racioppi, Jr.

12                  UNITED STATES DISTRICT COURT

13                 CENTRAL DISTRICT OF CALIFORNIA

14

15

16 | FRANCIS J. RACIOPPI, JR.,          | Case No. 2:20-cv-03797-FMO (JCx)

17 |              Plaintiff,             | **DECLARATION OF FRANCIS J.**
                                          **RACIOPPI, JR.**
18 |       vs.                          |

19 |                                     |

20 | DMITRY BORISOVICH BOSOV *et*        |
   | *al.*,                             |
21 |                                     |

22 |              Defendants.            |

23

24

25

26

27

28

1529420.8

                                          Case No. 2:20-cv-03797-FMO (JCx)
              DECLARATION OF FRANCIS J. RACIOPPI, JR.

## DECLARATION OF FRANCIS J. RACIOPPI, JR.

I, Francis J. Racioppi, Jr., declare as follows:

1.      I am the plaintiff in this action.  I am over eighteen years old.  The facts stated in this declaration are based on my personal knowledge, except as otherwise noted.  I make this declaration in support of the concurrently-filed *ex parte* application for a right to attach order and writ of attachment or, in the alternative, a temporary protective order.

**I.      My Background and Experience**

2.      I attended undergraduate college at Boston University, where I was awarded an athletic scholarship for my membership on the school's Division 1 men's rowing team.  I graduated with honors with degrees in Journalism and Political Science.

3.      Upon graduation, I was commissioned in the United States Army as an Infantry Officer, earning the title of Distinguished Honor Graduate from the Army's elite Ranger school and later serving as a Green Beret in the Army Special Forces.  I was also named the Honor Graduate of the Special Forces Qualification Course.  I was deployed to Iraq three times in support of both Operation Iraqi Freedom and Operation New Dawn, first as an Infantry Platoon Leader and then twice as a mountaineering Special Forces Detachment Commander.

4.      In 2013, I deployed to Djibouti, Africa in support of Operation Enduring Freedom, where I coordinated Special Operations to combat al-Shabab, an international terrorist organization, throughout East Africa.  In 2014, I planned and coordinated the Special Forces response to Boko Haram in West Africa, and oversaw the operations of local special forces teams countering the Lord's Resistance Army in Central Africa and the Islamic State of Iraq and the Levant (aka ISIL or ISIS) in North Africa.  I was subsequently chosen to serve as the advisor and aide to Major General James Linder, Commander of Special Operations Command, Africa.

5.      While serving in the Army, I was awarded three Bronze Star Medals, the Defense Meritorious Service Medal, the Joint Service Commendation Medal, the Army Commendation Medal with Valor, two Army Commendation Medals, three Meritorious Unit Commendations, the Global War on Terrorism Expeditionary Medal, the Global War on Terrorism Service Medal, the Army Service Ribbon, two Overseas Service Ribbons, and the National Defense Service Ribbon.  In January 2016, after almost thirteen years in the Army, I was honorably discharged and I returned to civilian life.

6.      I applied and was accepted to attend New York University's Stern School of Business, where I earned a Master of Business Administration degree in 2017.  In December 2018, I was recognized by the Federal Bureau of Investigation ("FBI") and the Department of Homeland Security for innovation in the development of programs to prevent Insider Threat and Workplace Violence, as well as for leadership in the corporate security industry.  I have been certified as an ASIS Certified Protection Professional, which is the highest level of civilian security industry accreditation.  I have also been certified as a Lean Six Sigma Black Belt.  I continue to maintain a "Secret" security clearance with the FBI and contribute to both the FBI's Domestic Security Advisory Council and the Department of State's Overseas Security Advisory Council.  I am also the Treasurer of the United War Veterans Council, which is the sponsor and organizer of the New York City Veterans Day Parade and the largest annual Veterans event in the nation.

## II.     The Genius Fund Group

### A.     My Employment with The Genius Fund Group

7.      The Genius Fund Group ("GFG") was and is involved in the cultivation, processing, and sale of commercial cannabis and hemp products in California.  In April 2019, GFG hired me as its Chief Security Officer.  In October 2019, I was promoted to GFG's Chief Operating Officer ("COO").  In approximately mid-December 2019, I began serving informally as GFG's "co-Chief

1  Executive Officer."  On March 5, 2020, I was officially hired as GFG's Chief

2  Executive Officer ("CEO").

3      8.    As GFG's COO and CEO, I oversaw all administrative operations and

4  day-to-day functions of the business.  I painstakingly reviewed and analyzed all of

5  GFG's financial information, including all company debts, liabilities, expenditures,

6  revenue, and sources of income, from GFG's inception.  Between October 2019 and

7  my termination from GFG, I communicated directly with Defendant Dmitry Bosov

8  regarding GFG on a daily basis, and I have personal knowledge of the exact manner

9  in which Defendant Bosov funded GFG's operations.  I also directly communicated

10  with Defendant Gary I. Shinder regarding GFG's operations and financial position

11  from approximately December 2019 until my termination.

12      9.    On March 5, 2020, I was offered and accepted the position of CEO.  In

13  my written employment agreement, my compensation for my position included (but

14  was not limited to):

15          a.    A $300,000 signing bonus;

16          b.    Reimbursement of up to $30,000 in relocation expenses from

17              New York to California, and the security deposit and first

18              month's rent for a new home in California ($12,463 incurred to

19              date);

20          c.    Guaranteed base salary of $700,000 per annum through

21              December 31, 2021;

22          d.    Guaranteed annual bonus of no less than 50 percent of base

23              salary through December 31, 2021;

24          e.    Participation in the Genius Profit Participation Plan; and

25          f.    Participation in GFG's employee benefits programs, including

26              medical, dental, and vision benefits.

27      10.    Attached as **Exhibit 1** is a true and correct copy of my employment

28  agreement.

11.     My employment agreement also provides as follows:

a.     "If your employment is terminated for any reason prior to December 31, 2020, other than **For Cause** (as defined below), Genius shall pay you severance pay (**'Severance Pay'**) equal to a) your guaranteed minimum $700,000 Base Salary prorated for the period commencing on your termination date through December 31, 2021 plus b) any and all accrued sick and vacation days."

b.     "'Cause' shall mean a determination in good faith by the Genius Directors that you (i) have been grossly negligent or engaged in willfully fraudulent or dishonest acts materially injurious to Genius; (ii) have materially breached Genius' policies and procedures and have failed to cure such breach within 30 days after receipt of Genius' notice of breach; or (iii) without due cause fail within 30 days after receipt of notice to follow any lawful order given by or under direction of Genius' Directors."

12.     No part of my compensation or severance under the employment agreement was secured by any real property or any other type of property.

**B.     GFG's Corporate Structure**

13.     There are three "groups" of defendants named in this lawsuit: (1) those individuals and entities comprising GFG; (2) those individuals and entities controlled by Defendant Gary I. Shinder; and (3) those individuals and entities controlled by Defendant Dmitry Bosov.  As described further below, Defendants Shinder and Bosov, and their related entities, effectively controlled and still control all GFG entities.

14.     GFG consists of an amalgam of corporate entities, all of which are commonly controlled and none of which have any independent financing, accounting, or formal corporate separation whatsoever.  Virtually all of these

corporate entities were formed merely as a mechanism for the true and equitable owners of GFG to escape liability for company debts.

15.     The two prime GFG entities are Defendant Genius Fund I, Inc. and Genius Fund I, LLC, which controlled all GFG sub-entities.  At one time, there were over *sixty* different sub-entities that comprised GFG.  The sub-entities named in this lawsuit include Defendants Heli Biotech LLC, Dr. Kush World Collective LLC, Eagle Rock Herbal Collective LLC, Genius Products LLC, Full Circle Labs LLC, Nature's Holiday LLC, Variant Hemp Solutions LLC, Genius Delivery LLC, Planck Properties LLC, Aristotle Equipment LLC, Genius Sales LLC, Genius Products T Inc., Genius Products NT Inc., and Full Circle Industries.  There are also numerous other sub-entities comprising GFG, including (but not limited to) Genius Retail 1 LLC, Genius Retail 2 LLC, Genius Retail 3 LLC, Genius Retail 4 LLC, Genius Retail 5 LLC, Genius Retail 6 LLC, Genius Retail 7 LLC, Genius Retail 8 LLC, Genius Retail 9 LLC, Genius Retail 10 LLC, Genius Retail 11 LLC, Genius Retail 12 LLC, Spotlight Operations LLC, Genius Security Group Inc., Genius Security Group LLC, Genius Sales NT LLC, Genius Sales T LLC, Genius Retail 1 Inc., Genius Retail 2 Inc., Genius Retail Inc., Genius Retail Member Inc., Purest Biotech, and others.

16.     As demonstrated below and in the attached exhibits, each of the GFG entities named as a defendant have a common ownership and executive leadership, and are registered at one of three or four physical addresses that are (or have been) associated with GFG, as follows:

a.   **<u>Genius Fund I, Inc.</u>**

*June 2019 Statement of Information* (**Exhibit 2**)

CEO: Ari Stiegler

Chief Financial Officer ("CFO"): Ari Stiegler

Secretary: Gabriel Borden

Address: 6960 S. Centinela Avenue, Culver City, CA 90230

*April 2020 Statement of Information* (**Exhibit 3**)

CEO: Gary I. Shinder

CFO: Gary I. Shinder

Secretary: Gary I. Shinder

Address: 255 W. Foothill Boulevard, Suite 205, Upland, CA 91786

b.   **<u>Genius Fund I, LLC</u>**.  Ari Stiegler and Gabriel Borden are the members of Genius Fund I, LLC.

c.   **<u>Heli Biotech LLC</u>**

*September 2019 Statement of Information* (**Exhibit 4**)

Sole Member: Genius Fund I, Inc.

Address: 6960 S. Centinela Avenue, Culver City, CA 90230

CEO: Ari Stiegler

d.   **<u>Doctor Kush World Collective LLC</u>**.  This company was a commercial cannabis company that was previously unaffiliated with GFG.  GFG subsequently purchased this company, although it is not clear whether the documents finalizing the sale of this entity (and its assets) to GFG were completed.

e.   **<u>Eagle Rock Herbal Collective LLC</u>**

*February 2020 Statement of Information* (**Exhibit 5**)

Sole Member: Genius Retail Member, Inc.

Address: 6960 S. Centinela Avenue, Culver City, CA 90230

1

    **f.**  <u>**Genius Products LLC**</u>

2

      *April 2019 Statement of Information* (**Exhibit 6**)

3

       Sole Member: Genius Fund I, Inc.

4

       Address: 1113 Electric Avenue, #4, Venice, CA 90291

5

    **g.**  <u>**Full Circle Labs LLC**</u>

6

      *June 2019 Statement of Information* (**Exhibit 7**)

7

       Sole Member: Genius Fund I, Inc.

8

       Mailing Address: 6960 S. Centinela Avenue, Culver City, CA

9

       90230

10

      *April 2020 Statement of Information* (**Exhibit 8**)

11

       Sole Member: Genius Fund I, Inc.

12

       Mailing Address: 255 West Foothill Boulevard, Suite 205,

13

       Upland, CA 91786

14

       CEO: Gary I. Shinder

15

    **h.**  <u>**Nature's Holiday LLC**</u>

16

      *April 2019 Statement of Information* (**Exhibit 9**)

17

       Sole Member: Genius Fund I, Inc.

18

    **i.**  <u>**Variant Hemp Solutions LLC**</u>

19

      *December 2019 Statement of Information* (**Exhibit 10**)

20

       Sole Member: Genius Fund I, LLC

21

       Address: 6960 S. Centinela Avenue, Culver City, CA 90230

22

    **j.**  <u>**Genius Delivery LLC**</u>

23

      *May 2019 Statement of Information* (**Exhibit 11**)

24

       Sole Member: Genius Fund I, Inc.

25

       Address: 6960 S. Centinela Avenue, Culver City, CA 90230

26

      *April 2020 Statement of Information* (**Exhibit 12**)

27

       Sole Member: Genius Fund I, Inc.

28

1           Address: 255 West Foothill Boulevard, Suite 205, Upland,

2           CA 91786

3           CEO: Gary I. Shinder

4     **k.**     **Planck Properties LLC**

5         *April 2019 Statement of Information* (**Exhibit 13**)

6           Sole Member: Genius Fund I, Inc.

7           Address: 1113 Electric Avenue, #4, Venice, CA 90291

8     **l.**     **Aristotle Equipment LLC**

9         *April 2019 Statement of Information* (**Exhibit 14**)

10           Sole Member: Genius Sales LLC

11           Address: 1113 Electric Avenue, #4, Venice, CA 90291

12         *April 2020 Statement of Information* (**Exhibit 15**)

13           Sole Member: Genius Sales LLC

14           Address: 255 West Foothill Boulevard, Suite 205, Upland,

15           CA 91786

16           CEO: Gary I. Shinder

17     **m.**     **Genius Sales LLC**

18         *April 2019 Statement of Information* (**Exhibit 16**)

19           Sole Member: Genius Fund I, Inc.

20           Address: 1113 Electric Avenue, #4, Venice, CA 90291

21     **n.**     **Genius Products T, Inc.**

22         *March 2020 Statement of Information* (**Exhibit 17**)

23           CEO: Ari Stiegler

24           CFO: Ari Stiegler

25           Director: Ari Stiegler

26           Address: 6960 S. Centinela Avenue, Culver City, CA 90230

27     **o.**     **Genius Product NT, Inc.**

28         *March 2020 Statement of Information* (**Exhibit 18**)

DECLARATION OF FRANCIS J. RACIOPPI, JR.

CEO: Ari Stiegler

CFO: Ari Stiegler

Director: Ari Stiegler

Address: 6960 S. Centinela Avenue, Culver City, CA 90230

**p.**   **Full Circle Industries**.  GFG's sales team used this brand name in conducting business; however, I am unaware whether this company was ever officially registered with the Secretary of State.

17.   As CEO and COO, I had personal knowledge of all aspects of these GFG entities, including the structure, accounting, funding, financing, organization, and management of all entities that fell under the GFG umbrella.  All of the foregoing entities were commonly controlled by Genius Fund I, Inc. and/or Genius Fund I LLC, which in turn were effectively owned and controlled by Defendants Bosov, Alltech Group, and Goldhawk Investments, Ltd.  As explained further below, in or around March 2020, Defendants Shinder, Restructure Trust LLC, and ESSMW – Earth Solar System Milky Way LLC also became the true and equitable owners of GFG.

18.   All GFG entities wholly and completely commingled funds with one another, and all of them failed to maintain any legitimate separate accounting.  As explained below, all funds and investments paid to GFG were sent to a Bank of America account in the name of Spotlight Operations LLC.  These funds would be used to either directly pay the debts of the various GFG entities, or otherwise distributed among the GFG entities for them to pay their own immediately-due debts.  All of the GFG entities were undercapitalized, insofar as they rarely had liquid assets on hand that exceeded their immediately-due debts.  On numerous occasions, when one particular GFG entity would have insufficient funds to cover its debts, funds would simply be transferred to it from a different GFG entity without any type of accounting, loan documentation, or otherwise.  Similarly, when

Spotlight Operations LLC at one point had insufficient funds to cover payroll, funds would simply be siphoned from the various GFG entities into Spotlight Operation's Bank of America account.

19.     The GFG entities also failed to follow corporate formalities.  They failed to hold regular member, director, and/or shareholder meetings, and the few meetings that were nominally designated as such were unstructured and rarely had accurate minutes kept.  None of the companies maintained separate staffing or payroll.  Ownership of GFG assets were thinly distributed among the GFG entities for the purpose of limiting GFG's liability and exposure.  In short, these entities simply existed as a mechanism to frustrate creditors and escape liability.

## C.     Defendant Bosov's Control of GFG

20.     GFG was originally formed in or around Fall 2018, when two individuals—Gabriel Borden and Ari Stiegler—convinced Defendant Bosov to invest in the cannabis business.

21.     Defendant Bosov is among the wealthiest businessmen in Russia; according to *Forbes*, Defendant Bosov's estimated net worth is approximately $1.1 billion.[1]  Upon information and belief, Defendant Bosov owns and controls several multi-million dollar companies, including:

- Sibanthracite Group.  According to an interview with Sibanthracite's CEO in April 2019, Bosov appears to be the "principal shareholder[]" of Sibanthracite.  The CEO also confirmed that "the last word" on all

---

[1] Upon information and belief, Defendant Bosov has been a target of multiple federal investigations and has been interviewed at least three times by the State Department and the FBI.  This includes a multi-hour interview with federal agents in Rome, Italy, in Fall 2019.  In April 2019, the federal government rescinded the visas of both Defendant Bosov and his wife and has since refused to either issue either of them new visas or otherwise grant them entry into the United States.  I was involved in subsequent discussions with multiple individuals, including Defendant Bosov, as to how to renew Defendant Bosov's visa.

company decisions "remain[s] with [Bosov]"[2];

- <u>Defendant Alltech Group</u>.  Defendant Bosov founded and owns an 86 percent interest in Defendant Alltech Group.[3]  Defendant Bosov is the President of Defendant Alltech Group[4];

- <u>Defendant Goldhawk Investments Ltd</u>.  Defendant Bosov owns an 86.57 percent interest in Defendant Goldhawk Investments Ltd.  Attached as **Exhibits 19 and 20** are true and correct copies of documents signed by Defendant Bosov identifying his ownership interest in Defendant Goldhawk Investments Ltd.

22.    Defendant Bosov invested a total of approximately $165 million in GFG.  Defendant Bosov's investments in GFG were all made through Defendants Alltech Group and Goldhawk Investments Ltd.  These investments were official denominated as loans; however, despite GFG's dire financial position, as expressly relayed to Defendant Bosov, none of those loans were recalled or repaid.

23.    Far from being a passive investor in GFG, Defendant Bosov insisted on exerting complete control over all aspects of GFG's business.  Between Fall 2018 until approximately May 2019, Defendant Bosov lived in the United States and ran the company's day-to-day operations.[5]  Even after Defendant Bosov departed the United States, he continued to invest in GFG and exert full control over all major company decisions.  Indeed, Defendant Bosov was a signatory to multiple

---

[2] *Interview of Sibathracite CEO*, SIBANTHRACITE GROUP (Apr. 26, 2019), *available at* https://www.sibanthracite.ru/media/2019/04/26/interview-sibanthracite-ceo/.

[3] *Id.*

[4] *Alltech Group – Company Profile – Bloomberg Markets*, BLOOMBERG (last visited Apr. 27, 2020), *available at* https://tinyurl.com/y8vwdcbz.

[5] During that time, Defendant Bosov also bought a $30-million residential property for himself in Beverly Hills, California, through a limited liability company.

1  commercial state cannabis licenses that were issued to GFG to process and sell

2  commercial cannabis in California.

3      24.    Defendant Bosov extensively commingled his personal funds and

4  GFG's company funds.  For example, all costs associated with the maintenance of

5  Defendant Bosov's multi-million-dollar Beverly Hills mansion were charged to

6  GFG's company credit card.  In addition, many personal items that Defendant

7  Bosov insisted on purchasing—such as surfboards, dozens of voice recorders, and a

8  Gita robot—were purchased by GFG and shipped or couriered to Defendant Bosov

9  in either Russia or Italy.

10     25.    In multiple corporate documents, Defendant Bosov identified himself

11 as "the ultimate beneficial owner of Genius Fund I LLC of California, the USA

12 (through my indirect ownership of 86.57% in Goldhawk Investments Limited of

13 Limassol, Cyprus, which in its turn owns 80% of the membership interest in Genius

14 Fund I LLC), as well as Genius Fund I Inc. of California, the USA and all its

15 subsidiaries and affiliated companies ('Genius Fund Group')."  Attached as

16 **Exhibits 19 and 20** are true and correct copies of these documents.

17     **D.    Mismanagement by GFG Executives**

18     26.    During much of its existence, GFG was grossly mismanaged.  Prior to

19 my involvement with the company's finances,[6] GFG had no viable business plan; to

20 the contrary, several senior executives eschewed the need to make any profit at all,

21 arguing that the company simply needed to show that it could generate bare

22 minimum revenue in order to entice an unwitting buyer and/or maintain current

23 investor interest.  Moreover, Defendant Bosov repeatedly invested millions of

24 _____

25     [6] My involvement in company finances began in October 2019.  However, I
   had no ultimate decision-making authority within GFG until January 2020.

26 Between January 2020 and February 2020, my decision-making authority was split
   with Ari Stiegler.  Only after March 5, 2020, when I officially became CEO, did I

27 even nominally have ultimate decision-making authority—which, as explained

28 below, was quickly undermined by Defendant Shinder.

dollars into the company without requiring any type of accountability from company management or executives as to how the money was being spent.

27.     Furthermore, GFG spent money recklessly.  By way of example, one company executive insisted on purchasing desks, computers, and monitors for over fifty potential employees whom the company had not hired and had no immediate plans to hire.  Other company executives spent grossly excessive amounts of company funds on both business and non-business items, including luxury vehicles such as Teslas and Escalades, and daily lunches that would regularly cost in excess of $1,500.  Moreover, the company insisted that every single one of the ten company departments have its own fully-staffed marketing department, even though there was clearly no business justification for such a substantial expenditure.  The company also purchased multiple commercial properties at a grossly inflated value, yet was unable to convert them into useable, profitable spaces for years.  Several company executives also insisted on utterly excessive travel accommodations, such as purchasing same-day business class one-way tickets without any business need for such wasteful spending.

28.     Throughout my tenure with GFG, the company almost completely ignored all corporate formalities, and assets were extensively commingled between the various GFG entities.

29.     After I became the COO, the gross mismanagement under which the company had long suffered became apparent to me.  I attempted to bring this mismanagement to the attention of other GFG executives and directors; however, almost all of them ignored my concerns and simply tried to circumvent my oversight.  For example, one particular GFG executive secretly manipulated the company's bookkeeping records and revenue records to reflect substantially lower expenditures and greater revenue than the company was actually generating.

30.     In December 2019 and January 2020, GFG management (including myself) participated in two multi-day oversight meetings with Defendants Bosov

and Shinder, who was a friend and advisor to Defendant Bosov.  During these meetings, I made clear to Defendant Bosov that GFG was utterly unprofitable and had no viable path to profitability without a complete overhaul of its operations and personnel.  I presented Defendant Bosov with a plan to turn the company profitable with a minimal additional cash infusion, which Defendant Bosov appeared to accept and requested that I implement.  Defendant Shinder was present at these oversight meetings, and Defendant Bosov subsequently appointed Defendant Shinder to help oversee the company overhaul.

31.     In approximately February 2020, I began to implement the company overhaul of GFG that was approved by Defendant Bosov.  That overhaul plan showed immediate results; the company immediately began generating revenue— and, in fact, generated more revenue in a matter of weeks than during the company's *entire* existence.

### E.     GFG's Stealth Restructuring and My Abrupt Termination

32.     Defendant Shinder vocally supported both the company overhaul plan that I had presented to Defendant Bosov and my official promotion to CEO, and he had made clear that he wanted me to lead GFG's reorganization efforts.  Almost immediately after my promotion to CEO, however, Defendant Shinder did an about-face.  Defendant Shinder began ignoring virtually all communications from me, including all communications about company business.  Defendant Shinder began making virtually every executive-level decision without consulting me, and implemented those decisions by circumventing me and giving instructions directly to my subordinates.  Defendant Shinder's refusal to communicate with me made it impossible for me to perform my duties as CEO.

33.     I subsequently learned that Defendants Bosov and Shinder had begun carrying out a wholly different "reorganization" from what I had originally presented to Defendant Bosov and what Defendant Bosov had approved.  As

1   discussed below, their "reorganization" was simply an attempt to liquidate the
2   company's assets and hide them from GFG's myriad creditors.

3       34.     On February 24, 2020, Defendant Bosov issued an executive order,
4   wherein he identified himself as "the ultimate beneficial owner of Genius Fund I
5   LLC of California, the USA (through my indirect ownership of 86.57% in
6   Goldhawk Investments Limited of Limassol, Cyprus, which in its turn owns 80% of
7   the membership interest in Genius Fund I LLC), as well as Genius Fund I Inc. of
8   California, the USA and all its subsidiaries and affiliated companies ('Genius Fund
9   Group')."  In that order, Defendant Bosov stated that "as of today Mr. Gary I
10  Shinder and Hon. Judge Eugine R Sullivan both shall be issued any and all requisite
11  power of attorneys and furnished by any other legal documents of Genius Fund
12  Group as may be necessary to implement and reinforce all the necessary Fund's
13  restructuring procedures and legal matters which its authorities by me to the all
14  applicable laws."  Attached hereto as **Exhibit 19** is a true and correct copy of this
15  document, which Defendant Bosov sent to me directly.

16      35.     On March 14, 2020, Defendant Bosov issued an "Executive Order
17  Finale."  Defendant Bosov again confirmed that he was "the ultimate beneficial
18  owner of Genius Fund I LLC of California, the USA (through my indirect
19  ownership of 86.57% in Goldhawk Investments Limited of Limassol, Cyprus, which
20  in its turn owns 80% of the membership interest in Genius Fund I LLC), as well as
21  Genius Fund I Inc. of California, the USA and all its subsidiaries and affiliated
22  companies ('Genius Fund Group')."  Defendant Bosov stated that "as of today Mr.
23  Gary I Shinder is received the full ownership and full control of Genius Fund Group
24  in order to implement and reinforce all the necessary Fund's restructuring
25  procedures and legal matters according by the all applicable laws."  Attached hereto
26  as **Exhibit 20** is a true and correct copy of this document, which Defendant Bosov
27  sent to me directly.

28

36.     On March 23, 2020, GFG's Board of Directors issued the following Executive Orders, true and correct copies of which are attached as the following exhibits:

- Executive Order No. 021-059 / 111-07-23: Transferring "management role of previous Genius Management to ESSMW LLC" (**Exhibit 21**);

- Executive Order No. 021-059 / 111-07-21: Transferring "control, ownership and management to the new owner we form the New GF Board of Directors."  The new GFG Board of Directors included Defendant Shinder, who also identifies himself as "GF President" (**Exhibit 22**);

- Executive Order No. 021-059 / 111-07-22: Prohibiting "any GF disposition of assets," banning payment of any kind "without wirrten approval of Mr. Gary I. Shinder," and "[l]aying off 100% GF personnel starting March 27th, 2020" (**Exhibit 23**);

- Executive Order No. 021-059 / 111-07-20: Laying off "[a]ll existing staff, including employees and management," as of March 27, 2020 "completely and with no exception" (**Exhibit 24**); and

- Executive Order No. 021-059 / 111-07-19: Prohibiting "any payments from any counterparts of Genius Fund or any entities belonged to Genius Fund Holding prohibited without written approval of Mr. Gary I. Shinder" (**Exhibit 25**).

37.     Defendant Shinder further attempted to reconstitute the ownership and organizational structure of the GFG entities in order to give himself complete power and a controlling stake in all of those companies.  This included Defendant Bosov transferring ownership and control of virtually all GFG entities to Defendants Shinder and ESSMW – Earth Solar System Milky Way, LLC, of which Defendant Shinder is the sole member.  Attached hereto as **Exhibit 26** is a true and correct copy of Defendant ESSMW – Earth Solar System Milky Way, LLC's Articles of Incorporation.  Defendant Bosov approved of, directed, and participated in Defendant Shinder's takeover of GFG.

38.     Unbeknownst to me, on March 23, 2020, Defendant Shinder, as the recently self-appointed President and Chairman of GFG's Board of Directors, issued a directive that all employees and management of GFG would be terminated effective March 27, 2020, without exception.  The purported reason for the terminations was the economic impact of the global COVID-19 pandemic on the GFG's business—even though both California and Los Angeles deemed cannabis an "essential business" that could maintain full operation during the crisis.  As I was part of GFG's management, Defendant Shinder's directive terminated my employment as CEO.  Defendant Shinder expressly confirmed to other company employees, directors, and officers that I had been terminated.

39.     On March 26, 2020, I was informed of my impending termination and the pretextual reason for my and all the others' terminations.  I told Defendant Shinder and others that GFG's mass terminations did not comply with their sixty-day notification obligations pursuant to California Labor Code sections 1400 *et seq.* (the "WARN Act").  California's governor issued an Executive Order on March 17, 2020, exempting certain employers from their WARN Act obligations provided that any mass terminations were due to "COVID-19-related 'business circumstances that were not reasonably foreseeable as of the time that notice would have been required.'"  Cal. Exec. Order N-31-20 (Mar. 17, 2020).  Of course, the March 27, 2020 mass terminations at GFG were not in fact due to COVID-19-related business circumstances but rather preexisting and reasonably foreseeable business conditions that I had been trying to rectify for months to no avail due to Defendants' actions.

40.     On April 7, 2020, I was informed by a then-current GFG employee that he had received a notice terminating all 174 GFG employees.  According to the notice, GFG would not provide any severance packages to the laid-off employees and falsely informed them that GFG was not subject to the WARN Act because the layoffs were not reasonably foreseeable.  Attached as **Exhibit 27** is a true and correct copy of this notice.

41.     Since my termination, I have not received my severance from any GFG-related entities.

42.     Over the past two weeks, Defendant Shinder has filed statements of information with the California Secretary of State for numerous GFG entities, wherein he identifies himself as sole company officer and has changed the address of those entities to a common address in Upland, California.

## III.    Defendants' Assets

43.     At the time of my termination, GFG owned the following assets.  This is not a full accounting of all assets owned by GFG.  I am not aware of any existing attachments on these properties or any reason why these properties would be exempt from attachment.

| Asset | Type | Owner |
|-------|------|-------|
| 9924/9928 Rancho Road, Adelanto, CA 92301 | Real Estate | Planck Properties LLC |
| 7569 Melrose Avenue, Los Angeles, CA 90046 | Real Estate | Planck Properties LLC |
| 0 Bolsa Road, Hollister, CA 95023 | Agricultural Land | Planck Properties LLC |
| Cannabis License #1 | License | Doctor Kush World Collective Inc. |
| Cannabis License #2 | License | Eagle Rock LLC |
| Day One | CBD carbonated water | Genius Products LLC |
| Extraction equipment - Adelanto | Industrial equipment | Heli Biotech LLC |
| Extraction equipment - Vernon | Industrial equipment | Full Circle Lab LLC |
| Industrial Hemp (approximately 1.7 million pounds) | Hemp flower & biomass | Nature's Holiday LLC / Variant Hemp Solutions LLC |
| Delivery Vans x 10 | Vehicle | Genius Delivery LLC |

| Asset | Type | Owner |
|-------|------|-------|
| Cargo Van | Vehicle | Aristotle Equipment LLC |
| Escalade 1 | Vehicle | Aristotle Equipment LLC |
| Escalade 2 | Vehicle | Aristotle Equipment LLC |
| Toyota Tacoma x 2 | Vehicle | Aristotle Equipment LLC |
| Ford F-350 | Vehicle | Aristotle Equipment LLC |
| Mercedes Benz Sprinter Van | Vehicle | Aristotle Equipment LLC |
| Hyundai SUV | Vehicle | Aristotle Equipment LLC |
| Tesla Model X | Vehicle | Aristotle Equipment LLC |
| Tesla Model S | Vehicle | Aristotle Equipment LLC |
| Office Equipment | Office equipment | Various GFG entities |

44.     I am aware that Defendant Bosov is the ultimate beneficial owner of the residential property located in Beverly Hills, California, as referenced in **Exhibit 29**.  I am aware that Defendant Bosov purchased the property in cash in October 2019.  I had full access to the home; I personally oversaw GFG employees maintaining the home; and I personally oversaw construction at the home.  I was aware that Defendant Bosov's relatives would occasionally visit and stay at the home, and it was my responsibility to prepare the home for their arrival and visit.

**IV.    GFG is Evading Creditors and Liquidating Assets**

45.     GFG has numerous creditors and is in the process of liquidating assets in order to evade those creditors and make it "judgment-proof" from any future lawsuits that may be brought against it.

46.     One such creditor is Woolf Farming and Processing ("Woolf Farming").  GFG entered into a lease agreement with Woolf Farming and Processing in October 2019.  Almost immediately, GFG defaulted on its payments under that agreement.  GFG and Woolf Farming subsequently reached a settlement, whereby GFG would pay Woolf Farming $1.5 million in three installment

1  payments.  After making the first such payment in February 2020, GFG failed to

2  make the second such payment in March 2020 or any subsequent payments.[7]

3      47.    I have been informed that Defendant Shinder is rapidly liquidating all

4  GFG assets for the purpose of evading creditors and rendering GFG entities

5  judgment-proof.  I have spoken with several former GFG employees who have

6  informed me that Chris Finelli, Liam Palmieri, Ari Stiegler, Gabriel Borden, Daniel

7  Righi, Michael Andrews, Charles Sharpe, and August Wagener were hired by

8  Defendant Shinder on a commission-basis to liquidate all GFG assets as quickly as

9  possible.  I have also spoken with Chris Finelli, who corroborated some of this

10  information, and another individual who stated that he has personally observed the

11  foregoing individuals attempting to sell GFG assets.  I am therefore seeking

12  attachment in this case solely for the purpose of securing these assets before they

13  disappear from the jurisdiction of the court.

14

15      I declare under penalty of perjury that the foregoing is true and correct.

16  Executed on April 28, 2020, at North Kingston, Rhode Island.

17

18

19  _____
         Francis J. Racioppi, Jr.

20

21

22

23

24

25

26

27

28    [7] I am not aware of any attachment orders regarding this settlement.