BROWNE GEORGE ROSS LLP
Thomas P. O'Brien (State Bar No. 166369)
  tobrien@bgrfirm.com
Jennie Wang VonCannon (State Bar No. 233392)
  jvoncannon@bgrfirm.com
David J. Carroll (State Bar No. 291665)
  dcarroll@bgrfirm.com
Matthew O. Kussman (State Bar No. 313669)
  mkussman@bgrfirm.com
801 S. Figueroa Street, Suite 2000
Los Angeles, California 90017
Telephone: (213) 725-9800
Facsimile: (213) 725-9808

Attorneys for Plaintiff
Francis J. Racioppi, Jr.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS J. RACIOPPI, JR.,<br><br>Plaintiff,<br><br>vs.<br><br>DMITRY BORISOVICH BOSOV *et al.*,<br><br>Defendants. | Case No. 2:20-cv-03797-FMO (JCx)<br><br>**PLAINTIFF'S SUPPLEMENTAL BRIEF RE: ARBITRATION AGREEMENT; SUPPLEMENTAL DECLARATION OF FRANCIS J. RACIOPPI, JR.**<br><br>Judge:   Hon. Jacqueline Chooljian<br><br>Trial Date:  None Set |

Plaintiff Francis J. Racioppi, Jr. submits this supplemental brief in response to the Court's April 30, 2020 Minute Order.  ECF No. 12.

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

On April 30, 2020, in connection with Plaintiff Francis J. Racioppi, Jr.'s pending *ex parte* application for, *inter alia*, a writ of attachment, ECF No. 10, this Court ordered Plaintiff to submit a supplemental brief that: "(1) addresses whether or not an[] . . . arbitration agreement to which Plaintiff is a party exists; (2) if so, attaches a copy thereof; and (3) addresses any impact the existence of such agreement has on the Court's resolution of Plaintiff's *Ex Parte* Application (*e.g.*, whether, if it calls for arbitration of Plaintiff's breach of contract claim, this bears on the Court's ability to issue a writ of attachment predicated on such claim)." ECF No. 12.

Plaintiff signed an arbitration agreement at the beginning of his employment with the Genius Fund Group ("GFG") when he was hired as its Chief Security Officer, a copy of which is attached to the supplemental declaration of Francis J. Racioppi, Jr. ("Racioppi Supp. Decl.") as **Exhibit 34**. When he became Chief Executive Officer and signed his employment contract in March 2020, the company did not provide Plaintiff with another arbitration agreement to sign. Racioppi Supp. Decl. ¶ 2.

The existence of an arbitration agreement does not affect this Court's ability to issue a writ of attachment for two independent reasons. First, both state and federal law make clear that a court may grant provisional relief—including attachment—even where the underlying claim is subject to arbitration. Second, even if the arbitration agreement applied and was enforceable here (neither of which Plaintiff is conceding at this nascent stage of the case), the mere existence of an arbitration agreement does not require arbitration; a party to the agreement must first move to compel arbitration. That has not occurred. The Court therefore can and should issue the requested provisional relief irrespective of the arbitration agreement—particularly as the meaningful determination of the issues raised in

Plaintiff's suit depends on the existence of assets to satisfy the judgment.

## II. ARGUMENT

### A. Attachment is Available for Claims Subject to Arbitration

Both state and federal law permit court-ordered provisional relief for claims subject to arbitration. Such relief is particularly important where, as here, the Defendants are rapidly liquidating their assets in order to render themselves judgment-proof. The Court therefore can and should issue the emergency provisional relief Plaintiff requires irrespective of the arbitration agreement that he signed (the terms of which have not been invoked).

State law generally governs the issuance of provisional relief that is "intended to secure satisfaction of the judgment," including attachment. Fed. R. Civ. P. 64(a), (b). California Code of Civil Procedure 1281.8 specifically provides a procedure for seeking prejudgment attachment for a claim subject to arbitration. Cal. Code Civ. Proc. § 1281.8(a)(1). In particular:

> [a] party to an arbitration agreement may file in the court in the county in which an arbitration proceeding is pending, or if an arbitration proceeding has not commenced, in any proper court, an application for a provisional remedy in connection with an arbitrable controversy, but only upon the ground that the award to which the applicant may be entitled may be rendered ineffectual without provisional relief. The application shall be accompanied by a complaint or by copies of the demand for arbitration and any response thereto. If accompanied by a complaint, the application shall also be accompanied by a statement stating whether the party is or is not reserving the party's right to arbitration.

*Id.* § 1281.8(b).[1]

Although the California Legislature "did not specify what constitutes 'ineffectual relief' under section 1281.8," California courts have held that the inquiry is akin to the "great or irreparable injury" inquiry applicable to all *ex parte* right to attach applications. *Cal. Retail Portfolio Fund GMBH & Co. KG v. Hopkins*

---

[1] Plaintiff has not commenced an arbitration proceeding for the claims at issue in this lawsuit. Racioppi Supp. Decl. ¶ 3. Plaintiff does not seek to arbitrate the claims asserted in this action, but will do so if arbitration is ordered by the Court.

*Real Estate Grp.*, 193 Cal. App. 4th 849, 858 (2011) (citing Cal. Code Civ. Proc. § 485.010).  Therefore, "ineffectual" relief includes situations where the defendant is "insolven[t] or [unable] to otherwise pay money damages," *Cal. Retail Portfolio Fund*, 193 Cal. App. 4th at 857, as well as where there exists a "danger that the property sought to be attached would be concealed, substantially impaired in value, or otherwise made unavailable to levy if issuance of the order were delayed," Cal. Code Civ. Proc. § 485.010(b)(1).

     As described at length in Plaintiff's *ex parte* application, all of these bases for attaching Defendants' property apply here.  Memo. of Points and Authorities at 9, ECF No. 10-1.  Defendants have been in dire financial straits for months, Racioppi Decl. ¶¶ 26–30, ECF No. 10-3; they have been either unable or unwilling to pay their debts as they become due, *id.* ¶ 46; and they recently closed all GFG operations allegedly due to financial distress, *id.* ¶¶ 39–40, Ex. 27.  Plaintiff has also learned that, after undersigned counsel issued a demand for payment and threatened to file suit, Defendants began rapidly liquidating their assets for the very purpose of rendering themselves judgment-proof in any legal proceedings—and almost certainly with this particular lawsuit in mind.  *See* Memo. of Points and Authorities at 5–6, 9, ECF No. 10-1; O'Dowd Decl. ¶¶ 4–5, ECF No. 10-4; Racioppi Decl. ¶ 47.  Moreover, GFG's entire corporate structure—consisting of dozens of commonly-controlled and commingled business entities—is by design the perfect mechanism with which to further hide and fraudulently convey assets.  Preventing the near-certain dissipation of Defendants' assets pending arbitration is precisely the function that section 1281.8 serves, and this Court should not hesitate to employ that power in this case.  *See, e.g.*, *Loeb & Loeb v. Beverly Glen Music, Inc.*, 166 Cal. App. 3d 1110, 1118 (1985) ("The usual and main purpose of an attachment is to secure and insure the payment of any judgment that may be recovered in the successful prosecution of an action in order that the ends of successful litigation are not fruitlessly pursued or frustrated.  We find no justification for denying respondent

access to this protection during the delay in judicial proceedings necessitated by the Mandatory Fee Arbitration.  The trial court properly heard the motion for right to attach order, despite the pendency of arbitration and the stay of judicial proceedings of the claim for attorney fees." (citations omitted)).

      Federal courts have similarly recognized that court-ordered provisional relief is appropriate in circumstances such as these.  The district court's "authority 'to issue equitable relief in aid of arbitration' is well established; [indeed,] such 'judicial interim relief may be necessary to preserve the meaningfulness of the arbitral process.'"  *Barnes v. Jewels*, No. 14-cv-4098, 2016 WL 7238832, at *2 (C.D. Cal. Mar. 3, 2016) (Wilner, J.) (quoting *Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc.*, 609 F.3d 975, 980 (9th Cir. 2010)).  The Ninth Circuit has held that a district court may issue provisional writs even *after* it has ordered a claim to be arbitrated.  *PMS Distrib. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639, 642 (9th Cir. 1988) ("The fact that a dispute is arbitrable and that the court so orders under Section 4 of the Arbitration Act does not strip it of authority to grant a writ of possession pending the outcome of the arbitration so long as the criteria for such a writ are met." (citation omitted)).

      Similarly, even where the arbitration agreement empowers the arbitrator to award provisional relief, the Ninth Circuit has held that "a district court may issue interim injunctive relief on arbitrable claims if interim relief is necessary to preserve the status quo and the meaningfulness of the arbitration process."  *Toyo Tire*, 609 F.3d at 981.  The *Toyo Tire* court reasoned that without the availability of immediate court-ordered interim relief, the delay associated with "select[ing] the arbitrator[]," "constitut[ing] the arbitral panel," and "securing [the] panel's ruling on interim relief could defeat any ultimate award," insofar as the conduct sought to be enjoined would likely have already occurred during that period of delay.  *See id.* at 980–81.  It was also on this basis that the court distinguished its holding in *Simula, Inc. v. Autoliv, Inc.*, 175 F.3d 716, 725 (9th Cir. 1999), which did not involve the need for

urgent "interim relief to maintain the status quo while the parties are waiting for the arbitration panel to be formed and for the arbitration panel to consider whether to grant interim relief." *Toyo Tire*, 609 F.3d at 979.

Here, the need for Court-ordered provisional relief is at its apex. Defendants have failed to pay their debts and are rapidly liquidating assets for the purpose of evading creditors and rendering themselves judgment proof. The arbitration agreement, even if enforceable, does not specifically empower the arbitrator to issue writs of attachment—assuming that issuing enforceable writs is a power that an arbitrator even *could* possess. Nor, in any event, is there any pending arbitration proceeding in which Plaintiff could quickly and effectively seek such relief. As *Toyo Tire* observed, it would take weeks or even months to select the arbitrator and place this issue before him or her, during which time Defendants would almost certainly continue (and even accelerate) their disposal of assets. And even then, it is an open question whether Defendants, who appear bent on simply skipping out on their debts, would abide by an arbitrator's order granting interim relief which is not backed by the prospect of contempt for non-compliance.

In short, whether or not Plaintiff's claims are ultimately arbitrable, immediate provisional relief is necessary to prevent further prosecution of this suit becoming meaningless. Only this Court can deliver such relief, and Plaintiff respectfully requests that this Court exercise its discretion to do so.

**B.    The Existence of the Arbitration Agreement Does Not Automatically Subject Plaintiff's Claims to Arbitration**

Although the enforceability and applicability of the arbitration agreement are issues that may arise at a later stage in the proceedings, it is important to emphasize that no party has actually invoked the arbitration agreement at this time. A party must actually invoke an arbitration agreement for it to have any effect. *See Beauperthuy v. 24 Hour Fitness USA, Inc.*, 2006 WL 3422198, at *4 (N.D. Cal. Nov. 28, 2006) ("[T]he court cannot, *sua sponte*, order parties to arbitration."); *see*

*also Mercury Ins. Grp. v. Superior Court*, 19 Cal. 4th 332, 346 (1998) ("A trial court is not obligated to force [the parties] to contractual arbitration *sua sponte*. Indeed, from all that appears, it is not authorized to do so."). Unless and until a party to the arbitration agreement seeks to compel arbitration,[2] the mere existence of that agreement does not—and cannot—deprive the Court of its authority to adjudicate this matter.

### III.  CONCLUSION

Both state and federal law are clear that the existence of an arbitration agreement does not constrain this Court from issuing the provisional relief that Plaintiff has requested. Plaintiff therefore requests that the Court issue a right to attach order and prejudgment writ of attachment or, alternatively, a temporary protective order.

DATED:  May 1, 2020                    Respectfully submitted,

BROWNE GEORGE ROSS LLP
  Thomas P. O'Brien
  Jennie Wang VonCannon
  David J. Carroll
  Matthew O. Kussman


By:    /s/ Thomas P. O'Brien
            Thomas P. O'Brien
Attorneys for Plaintiff Francis J. Racioppi, Jr.

---

[2] Should Defendants appear and move to compel arbitration, Plaintiff will of course vigorously dispute the enforceability and applicability of the arbitration agreement.

# SUPPLEMENTAL DECLARATION OF FRANCIS J. RACIOPPI, JR.

I, Francis J. Racioppi, Jr., declare as follows:

1. I am the plaintiff in this action. I am over eighteen years old. The facts stated in this declaration are based on my personal knowledge, except as otherwise noted. I make this supplemental declaration in support of my *ex parte* application for a right to attach order and writ of attachment or, in the alternative, a temporary protective order.

2. In April 2019, when I was hired by the Genius Fund Group ("GFG") as its Chief Security Officer, I executed an arbitration agreement, a true and correct copy of which is attached hereto as **Exhibit 34**. When I was promoted to Chief Executive Officer in March 2020, I was not provided with another arbitration agreement to sign.

3. I have not commenced an arbitration proceeding for the claims at issue in this lawsuit.

I declare under penalty of perjury that the foregoing is true and correct. Executed on May 1, 2020, at North Kingston, Rhode Island.

_____
Francis J. Racioppi, Jr.