David G. Golubchik (SBN 185520)
Kurt Ramlo (SBN 166856)
LEVENE, NEALE, BENDER,
    YOO & BRILL L.L.P.
10250 Constellation Boulevard, Suite 1700
Los Angeles, California 90067
Telephone: (310) 229-1234
Facsimile: (310) 229-1244
Email: DBG@LNBYB.com; KR@LNBYB.com

Attorneys for Defendants Gary I. Shinder; Genius
Fund I, Inc.; Genius Fund I, LLC; ESSMW – Earth
Solar System Milky Way, LLC; Heli Biotech LLC;
Dr. Kush World Collective LLC; Eagle Rock
Herbal Collective LLC; Genius Products LLC;
Full Circle Labs LLC; Nature's Holiday LLC;
Variant Hemp Solutions LLC; Genius Delivery
LLC; Planck Properties LLC; Aristotle Equipment
LLC; Genius Sales LLC; Genius Products T, Inc.;
Genius Products NT, Inc.; and Genius Products,
Inc.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS J. RACIOPPI, JR., an individual,<br><br>         Plaintiff,<br><br>vs.<br><br>DMITRY BORISOVICH BOSOV, et al.,<br><br>         Defendants. | Case No. 2:20-cv-03797<br><br>**Preliminary Opposition to Ex Parte Application for Right to Attach Order, Order for Issuance of Writ of Attachment, and Temporary Protective Order (DE 10)**<br><br>[No Hearing Set] |

The defendants listed above ("**Defendants**") make this preliminary opposition to Plaintiff's *Ex Parte Application for Right to Attach Order, Order for Issuance of Writ of Attachment, and Temporary Protective Order* (DE 10, filed April 28, 2020, the "**Application**"), as follows:

## INTRODUCTION

Plaintiff contends that on March 23, 2020 the Genius Fund Group terminated his employment effective March 27, breaching his 18-day-old employment agreement and giving rise to $2.24 million in damages. Genius Fund Group, however, did not terminate Plaintiff. Defendant Shinder twice told Plaintiff that he was not terminated. Subsequent communications by Genius Fund Group identified Plaintiff as staying with the company. Plaintiff continued to participate in the management of the company for six days after his alleged termination date, until April 2. That was the day that Plaintiff stopped, and his lawyers began, communicating directly with the company. These facts by themselves show that Plaintiff voluntarily left the company and thus cannot "establish[] the probable validity of" his breach-of-contract, the claim upon which is alleged right to attachment is based. The Application should be denied on the merits.

Further, Plaintiff seeks to attach the assets of Defendants who were not parties to his employment contract. Plaintiff's agreement is with Genius Fund I Inc. and its affiliates. The Application fails to explain what is meant by "affiliate" and which defendants (other than Genius Fund I Inc.) are affiliates. Additionally, the Application states that the company's purchase of Defendant Dr. Kush World Collective LLC may not be complete, thus rendering it not an affiliate. Most importantly, the Application fails to explain how Defendant Shinder, or his personal LLC, ESSMW – Earth Solar System Milky Way, LLC ("ESSMW"), might be an affiliate or how Genius Fund I Inc. has the authority to bind Shinder or ESSMW to a contract. Finally, the Application contains insufficient facts to demonstrate that the non-party Defendants are alter egos of a contract party. The

Application should be denied on this ground as to any defendant other than Genius Fund I Inc.

Finally, Plaintiff fails to demonstrate great or irreparable injury justifying consideration of the Application without notice to Defendants or conducting a hearing. Defendants are restructuring their businesses (just as Plaintiff advised) and are not liquidating or concealing their assets or evading their creditors. Nor does the Application establish that any Defendant is insolvent. Additionally, the Application fails to include the necessary Rule 65(b)(1)(B) attorney certification, explaining why notice is unnecessary. The Application should be denied on this ground or, at most, by scheduling opposition and reply deadlines and a hearing on regular notice.

## FACTS

### A.    Plaintiff resigned or voluntary left the company.

Plaintiff was the Chief Security Officer of Spotlight Operations LLC, an affiliate within the Genius Fund Group. His written employment agreement includes an arbitration agreement. (Shinder Decl. ¶ 4, Ex. 40 (*Employment Offer Letter*); Racioppi Suppl. Decl. ¶ 2 (DE 14 at 8), Ex. 34 (DE 14-1) (*Mutual Agreement to Arbitrate Employment-Related Disputes*).) Plaintiff alleges that he was promoted to Chief Operating Officer in October 2019. (Racioppi ¶ 7 (DE 10-3).) Earlier this year, Genius Fund I Inc. "and its affiliates" (the "**Company**" or "**Genius Fund Group**") offered Plaintiff their Chief Executive Officer position, conditioned on his agreement to execute the Company's arbitration agreement. (Racioppi ¶ 10, Ex. 1 (DE 10-6).) Plaintiff contends that Defendants did not present him with the arbitration agreement that he agreed to sign. (Racioppi Suppl. ¶ 2.)

Plaintiff also contends that the prior management of Defendants and other entities within the Company "were formed merely as a mechanism for the true and equitable owners of GFG to escape liability for company debtors." (Racioppi

¶¶ 14, 19.)  This is, of course, by design, a built-in feature of American business.
Corporations, limited liability companies, and limited liability partnerships by
design allow investors as a general matter to limit their downside risk of ownership
to the amount of their investment.  In other words, buying a single share of Apple
stock does not make the holder liable for the roughly $200 billion in debt on
Apple's balance sheet.

Plaintiff further complains that Defendant Dmitry Bosov was "far from
being a passive investor in" the Company and "approved of, directed, and
participated in Defendant Shinder's takeover of GFG."  (Racioppi ¶¶ 23, 37.)
Defendant Shinder, of course, was Plaintiff's boss in his capacity as Chairperson of
the Board of Directors (and President) of Genius Fund I Inc., as well as manager of
Genius Management, LLC, which is the manager of Genius Fund I, LLC.
(Racioppi Ex. 23 (DE 10-10, at 6); Shinder ¶ 6.)  These complaints go to the heart
of Plaintiff's claim.  He didn't like that his bosses told him what to do.  That is
what this case is really about.  Plaintiff disliked it when Shinder was appointed an
executive Chair of the Board to oversee personnel such as Plaintiff who, in
Plaintiff's view, "undermined" his "decision-making authority".  (Racioppi ¶¶ 26
& n.6, 32-35.)  An employee's frustration that he was not given greater freedom to
operate a company as he wished does not constitute breach of an employment
contract.  To the contrary, Plaintiff's employment agreement provided that "you
shall serve as Genius' CEO . . . (**subject to Genius governing documents and
internal controls**) . . . ."  (Racioppi Ex. 1, at 1, 2d ¶ (emphasis added).)  Every
American CEO reports to a board of directors.

Plaintiff contends that on March 23, Defendants terminated his employment
effective March 27.  (Racioppi ¶ 38 (DE 10-3).)  The Company, however, had
determined not to lay off Plaintiff because he was supposed to be part of the
restructuring group and involved in the reorganization.  (Shinder ¶¶ 7-8.)  The
Company's subsequent communications to employees listed Plaintiff as someone

authorized to request outgoing employees to continue working through their termination date and someone who could authorize an outgoing employee to retain certain categories of Company property.  (O'Dowd Decl. ¶ 3 (DE 10-4), Ex. 28 (DE 10-12) (letter copied without date showing, but allegedly dated March 5, 2020 and received by mail on April 26, 2020).)  The clear message was that the lay-offs did not include Plaintiff since Plaintiff was to be part of the restructuring process.

Plaintiff, however, chose to interpret some unspecified document, which his declaration also fails to indicate was sent or directed to him, as "Defendant Shinder's directive terminat[ing his] employment as CEO." (Racioppi ¶ 38.) Plaintiff continues that on some unspecified date Defendant Shinder confirmed his termination.  (Racioppi ¶ 38[1].)  Defendant Shinder, however, told Plaintiff on March 26 and again on March 27 that he was not terminated, would not be terminated, and would continue working on the reorganization.  (Shinder ¶ 9.)

Plaintiff's subsequent conduct confirmed that Defendants did not terminate Plaintiff.  Company records show that Plaintiff continued to participate in the management of Genius Fund Group until at least April 2, one week after "someone" allegedly told him that his employment was ending effective March 27. (Shinder ¶¶ 10-16, Exs. 42-48.)  At no time during that week did Plaintiff indicate that he understood himself to be terminated or terminated as of some future date. (Shinder ¶¶ 17-18).

For reasons unknown to the Company, Plaintiff stopped responding to Company communications after April 2.  (Shinder ¶ 19.)  His attorneys, however, began communicating with the Company on the same day, April 2, with two separate letters:  a monetary demand and a litigation hold request.  (Shinder Exs. 49-50.)  The facts demonstrate that Plaintiff resigned (although the Company

---

[1] Racioppi in the next paragraph declares in passive voice that "someone" informed him of his "impending termination and the pretextual reason . . . ." (Racioppi ¶ 39.)

1   received no resignation letter or email) or otherwise decided to leave the Company
2   voluntarily.  (Shinder ¶ 20.)

3   **B.    Plaintiff fails to show great or irreparable injury would result if notice**
4          **and a hearing were provided.**

5          Plaintiff first appears to try to allege insolvency.  He contends that
6   Defendants have "numerous creditors," but he commingles them among
7   Defendants and others and does not specify a single creditor, save one and does not
8   disclose which Defendant owes that creditor.  Further, that creditor had a disputed
9   claim, which was settled.  Most importantly, Plaintiff provides no information
10  about the amount of undisputed or disputed debt at each Defendants.  Even more
11  deficiently, Plaintiff provides no information on the value of each Defendant's
12  assets.  The Application fails to show insolvency of any Defendant.  (Racioppi
13  ¶¶ 43, 45-46; Shinder ¶ 21.)

14         Finally, Plaintiff provides inadmissible hearsay in an attempt to allege that
15  Defendants are "rapidly liquidating all GHG assets for the purpose of evading
16  creditors and rendering GFG entities judgment-proof." (Racioppi ¶ 47.)  First, the
17  allegations are conclusory and no details are provided.  Second, as noted above, the
18  vague allegation of "evading creditors" appears to be based solely on a description
19  of the inherent structure of business entities whose owners are not liable for the
20  debts of the investment entities.  Finally, Defendants are lawfully reorganizing
21  their businesses with the assistance of professionals, including the undersigned,
22  who specialize in advising companies on out-of-court reorganizations and
23  restructurings.  (Shinder ¶ 22.)

## ARGUMENT

25         Attachment is a harsh remedy because it seizes property from a defendant
26  before any adjudication of the underlying claims.  Courts, therefore, strictly
27  construe the requirements for attachment **against the applicant**.  *Blastgrac, N.A. v.*
28  *Concreate Solutions & Supply*, 678 F. Supp. 2d 1001, 1004 (C.D. Cal. 2010).

**A.      The Application fails to establish the probable validity of Plaintiff's claim.**

   ***a.      Plaintiff resigned or otherwise voluntarily left his employment.***

Plaintiff failed to establish the probable validity of his employment contract claim.  A writ of attachment may be issued only where the plaintiff has established the probable valid of the claim on which attachment is based.  Where a defendant has appear to contest the application, court "must consider the relative merits of the positions of the respective parties and make a determination of the probable outcome of the litigation."  *Id.* at 1005; Cal. Civ. Proc. Code § 484.090(a)(2).

The evidence submitted with this preliminary opposition demonstrates that Plaintiff voluntary left the Company, perhaps because he was frustrated that he was not given more leeway in how he performed his duties.  The motive, however, is irrelevant.  The fact remains that he chose to leave the Company and the Company did not tell him to leave in breach of any employment agreement.  The Application fails on this point alone and on this basis should be denied on the merits.

   ***b.      The Application fails to establish a probable claim against each Defendant as an "affiliate" party to the employment contract or an alter ego of an affiliate party.***

Plaintiff must establish the probability validity of his claim against each Defendant.  His alleged contract[2] is with "Genius Fund I Inc. and its affiliates."  He fails to demonstrate that each Defendant is an affiliate of Genius Fund I Inc.  The

---

[2]  Plaintiff contends that he entered into a contract with the Company, notwithstanding that a condition of the contract was that he enter into the Company's arbitration agreement and he instead contends that he did not enter into the arbitration agreement.  The Company intended to execute an arbitration agreement but due to COVID-19 has yet to complete its search for the new arbitration agreement.  (Shinder ¶ 5.)  This issue need not be resolved as part of ruling on the Application, but Defendants reserve all rights and intend to seek arbitration of all disputes with Plaintiff and to seek a stay of this proceeding pending the conclusion of the arbitration.

1   Application fails to address the meaning of "affiliate" in the contract.  It fails to

2   specify how each Defendant is an "affiliate" within the scope of that meaning.

3        Moreover, it fails to explain how Dr. Kush World Collective LLC is liable

4   for Plaintiff's alleged claim.  Plaintiff's declaration states that to his knowledge the

5   Company never completed its purchase of that entity.  (Racioppi Decl. ¶ 16(d).)

6   The Application fails to explain how Defendant Shinder or ESSMW that is not part

7   of the Genius group of companies might be an affiliate or more important, how

8   Genius Fund I Inc. had the authority to bind Shinder or ESSMW to a contract.

9        The Application thus relies solely on its alter ego theory.  The Application,

10  however, fails to satisfy the evidentiary standard on the key issues.  First, the

11  alleged inadequate capitalization only matters at the start of a business.  To hold

12  otherwise would be to make shareholders, members, and limited partners liable for

13  the debts of their corporations, limited liability companies, and limited liability

14  partnerships.  Businesses often commingle funds, in centralized accounting,

15  payable, and payroll systems.  Businesses are often owned by the same person,

16  entity, or group thereof.  Businesses often operate out of the same offices and

17  either employ the same persons or use their services and reimburse the employing

18  affiliate for those services.  Businesses often have identical sets of officers and

19  directors.  The key issue is showing that there was a misuse of the corporate form

20  that would cause an inequitable result if the separateness of the entities were

21  allowed to stand.  *See Virtualmagic Asia, Inc. v. Fil-Cartoons, Inc*. 99 Cal. App.

22  4th 228, 244-45, 121 Cal. Rptr. 2d 1, 13 (2002).

23       The Application contends that Dmitry Bosov controlled two other

24  defendants and used those companies to invest in the Company.  (App. at 14:10-

25  11.)  Even if true, what is wrong with that?

26       Bosov directed and controlled operations of the Company (App. at 14:12-

27  13.)  Even if true, what is wrong with an owner directing and controlling the

28  businesses that he owns and controls?

The entities within the Company failed to observe corporate formalities, commingled funds, concealed and misrepresented their true and equitable owners, shared staff, and had centralized accounting. First, the Application contains no facts requiring owners to disclose their ownership and no facts demonstrating that any owner misrepresented ownership to the detriment of anyone else. Plaintiff alleges that the Company was poorly run before he arrived, but fails to demonstrate that anyone was harmed by the alleged sloppiness or that he truly understood the facts. For example, nothing in Plaintiff's declaration reveals whether any funds or property transferred to Bosov was duly listed in the books and records as a shareholder loan, equity distribution, or other appropriate book entry. This is a fundamental shortcoming of the Application, as it relies on conclusory allegations and conclusory facts from a person who failed to show that he had personal knowledge of all the pertinent facts.

Finally, the Application alleges that Shinder undertook a stealth and fraudulent reorganization to evade myriad creditors, including by transferring ownership to himself. (App. at 14:17-19.) First, "[E]ven if the unity of interest and ownership element is shown, alter ego will not be applied absent evidence that an injustice would result from the recognition of separate corporate identities, and **difficulty in enforcing a judgment or collecting a debt does not satisfy this standard**." *Virtualmagic Asia, Inc.* 99 Cal. App. 4th at 245, 121 Cal. Rptr. 2d at 13. Second, the declaration fails to support these allegations. Nowhere in Plaintiff's declaration is there any list of a myriad of creditors, or testimony that any of those creditors are creditors of Shinder. There is just one creditor mentioned, and it purportedly got the first of three settlement payments. The declaration contains no evidence that Shinder failed to disclose information to a creditor to whom he or the Company had a duty to disclose.

The Application should be denied on this ground as to any defendant other than Genius Fund I Inc.

**B.**     **The Application fails to satisfy the standards for obtaining ex parte relief.**

Local Civil Rule 7-19 requires that before any matter seeking a temporary restraining order (or similar relief, such as a temporary protective order or attachment lien) may be heard without notice, the moving party must satisfy the requirements of Rule 65(b) of the Federal Rules of Civil Procedures.  L.R. 7-19.2.[3] Rule 65(b) requires that if written and oral notice are not given, the moving party must provide specific facts in an affidavit or verified complaint that "clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and . . . the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required."[4]  The Application contains no such attorney certification.

---

[3] ***L.R. 7-19 Ex Parte Application.*** An application for an ex parte order shall be accompanied by a memorandum containing, if known, the name, address, telephone number and e-mail address of counsel for the opposing party, the reasons for the seeking of an ex parte order, and points and authorities in support thereof. An applicant also shall lodge the proposed ex parte order.

   ***L.R. 7-19.1 Notice of Application.***  It shall be the duty of the attorney so applying (a) to make reasonable, good faith efforts orally to advise counsel for all other parties, if known, of the date and substance of the proposed ex parte application and (b) to advise the Court in writing and under oath of efforts to contact other counsel and whether any other counsel, after such advice, opposes the application.

   ***L.R. 7-19.2 Waiver of Notice.***  If the judge to whom the application is made finds that the interest of justice requires that the ex parte application be heard without notice (which in the instance of a TRO means that the requisite showing under F.R.Civ.P. 65(b) has been made), the judge may waive the notice requirement of L.R. 7-19.1.

[4]  (1) Issuing Without Notice.  The court may issue a temporary restraining order without written or oral notice to the adverse party or its attorney only if:

   (A) specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and

   (B) the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required.

1       Nor does the Application provide specific facts clearly showing "immediate and irreparable injury, loss, or damage."  To the contrary, the Application demonstrates that the Defendants are reorganizing their businesses and nothing specific in the Application indicates that any Defendant is dishonest, concealing assets, or insolvent.

The Application should be denied on this ground or, alternatively, scheduled for opposition and reply deadlines and hearing on regular notice.

## CONCLUSION

The Application should be denied for failure to demonstrate the probably validity of Plaintiff's breach-of-contract claim, for failure to demonstrate that each Defendant is a party to the contract or an alter ego of such a party, and for failure to demonstrate how Genius Fund I Inc. had the power to bind Defendant Shinder to a contract.  Alternatively, the Application should be denied for failure to demonstrate that great or irreparable injury would result if the Application were heard on regular notice.

Dated: May 5, 2020

LEVENE, NEALE, BENDER, YOO
  & BRILL L.L.P.


By:   */s/ Kurt Ramlo*
    DAVID G. GOLUBCHIK
    KURT RAMLO
Attorneys for Defendants Gary I. Shinder; Genius Fund I, Inc.; Genius Fund I, LLC; ESSMW – Earth Solar System Milky Way, LLC; Heli Biotech LLC; Dr. Kush World Collective LLC; Eagle Rock Herbal Collective LLC; Genius Products LLC; Full Circle Labs LLC; Nature's Holiday LLC; Variant Hemp Solutions LLC; Genius Delivery LLC; Planck Properties LLC; Aristotle Equipment LLC; Genius Sales LLC; Genius Products T, Inc.; Genius Products NT, Inc.; and Genius Products, Inc.