# Exhibit 49

Exhibit 49



801 S. Figueroa Street, Suite 2000
Los Angeles, California 90017
T (213) 725-9800  F (213) 725-9808

Thomas P. O'Brien
Direct Dial: 323.918.1902
tobrien@bgrfirm.com

File No. 8001-001

April 2, 2020

**Via Electronic Mail Only**

Gary I. Shinder, President
Michelle Lynd, Chief Legal Officer
Genius Fund I, Inc.
6960 S. Centinela Avenue
Culver City, California 90230
michelle.lynd@geniusfund.com
gary.shinder@geniusfund.com

Re:  <u>Termination of Francis J. Racioppi, Jr.</u>

Dear Mr. Shinder and Ms. Lynd:

We represent Francis J. Racioppi, Jr. in connection with Genius Fund's termination of Mr. Racioppi on March 27, 2020.  Please direct all further communication regarding Mr. Racioppi's employment to me.

As you know, Mr. Racioppi was hired as Genius Fund's Chief Executive Officer on March 5, 2020.  In Mr. Racioppi's employment agreement, Genius Fund promised Mr. Racioppi the following compensation through December 31, 2021:

- $300,000 signing bonus, relocation expenses, and the security deposit and first month's rent for a new home;

- Guaranteed base salary of $700,000 per annum through December 31, 2021;

- Guaranteed annual bonus of no less than 50% of base salary through December 31, 2021;

- Participation in Genius Profit Participation Plan; and

- Participation in Genius Fund's employee benefits programs, including medical, dental, and vision benefits.

**Browne George Ross LLP**
Gary I. Shinder
Michelle Lynd
April 2, 2020
Page 2

      The employment agreement specified that if Mr. Racioppi's employment is "terminated for any reason prior to December 31, 2020, other than For Cause (as defined below), Genius shall pay you severance pay ("Severance Pay") equal to a) your guaranteed minimum $700,000 Base Salary prorated for the period commencing on your termination date through December 31, 2021 plus b) any and all accrued sick and vacation days." The agreement defines "For Cause" termination as "a determination in good faith by the Genius Directors that you (i) have been grossly negligent or engaged in willfully fraudulent or dishonest acts materially injurious to Genius; (ii) have materially breached Genius' policies and procedures and have failed to cure such breach within 30 days after receipt of Genius' notice of breach; or (iii) without due cause fail within 30 days after receipt of notice to follow any lawful order given by or under direction of Genius' Directors." Similarly, California law prohibits early discharge of an employee under an employment contract unless for "willful breach of duty by the employee in the course of his employment, or [for] habitual neglect of his duty or continued incapacity to perform it." Lab. Code § 2924.

      On March 27, 2020, Genius Fund's Board of Directors elected to terminate all of its employees—including Mr. Racioppi—due to the ongoing COVID-19 crisis in the United States, a decision with which Mr. Racioppi strenuously disagreed. Moreover, even though Ms. Lynd inexplicably continues to copy Mr. Racioppi on e-mails about certain company business, Mr. Shinder has long been making substantial, executive-level decisions without consulting Mr. Racioppi, and in fact has, at the apparent direction of a Board member, wholly refused to communicate at all with Mr. Racioppi, all of which would also amount to a constructive termination of Mr. Racioppi's employment. But regardless whether his termination was express or constructive, it is crystal clear that the termination was not in any way a "for cause" termination or one based on willful breach of duty, habitual neglect of duty, or continued incapacity to perform his duty. Genius Fund's decision to terminate him was therefore unquestionably a breach of his employment contract.

      As you know, the damages for the breach of an employment contract include "the compensation to which the employee would have been entitled for the unexpired period of the contract." *Stanchfield v. Hamer Toyota, Inc.*, 37 Cal. App. 4th 1495, 1502 (1995). Mr. Racioppi is therefore entitled to at least the minimum pay he would have received under the contract through to December 31, 2021—including, at minimum, his base salary (severance pay), the relocation expenses that he incurred, his as yet-unpaid signing bonus, and his promised bonus pay. Those sums are as follows:

**Browne George Ross LLP**

Gary I. Shinder
Michelle Lynd
April 2, 2020
Page 3

- <u>Base Salary (Severance Pay)</u>

  | | |
  |---|---|
  | Mar. 28, 2020 to Dec. 31, 2020 | $533,150.68 |
  | Jan. 1, 2021 to Dec. 31, 2021 | $700,000.00 |

- <u>Relocation Expenses</u> — $12,463.00 (continuing to accrue)

- <u>Signing Bonus</u> — $300,000.00

- <u>End-of-Year Bonus</u>

  | | |
  |---|---|
  | Year Ending Dec. 31, 2020 | $350,000.00 |
  | Year Ending Dec. 31, 2021 | $350,000.00 |

**TOTAL**  <u>**$2,245,613.68**</u>

Please confirm that you intend to pay the above sum, including any additional relocation expenses that may be incurred, to Mr. Racioppi within **14 days** of the date of this letter. If Mr. Racioppi is required to file an action to recover these sums, he intends to seek any and all additional remedies available to him, including the recovery of his costs and attorneys' fees. *See* Lab. Code § 218.5(a) ("In any action brought for the nonpayment of wages . . . the court shall award reasonable attorney's fees and costs to the prevailing party if any party to the action requests attorney's fees and costs upon the initiation of the action.").

Please further note that, because it appears that Genius Fund was merely a conduit for the business activities of other related persons and companies, any such action will name as defendants all related entities and persons that may have directly or indirectly controlled or funded Genius Fund's operations, including (but not limited to) Goldhawk Investment, Ltd., Alltech Group, and Dmitry Bosov. *See, e.g.*, *Toho-Towa Co. v. Morgan Creek Prods., Inc.*, 217 Cal. App. 4th 1096, 1107 (2013) (courts will "disregard the corporate form in order to hold one corporation liable for the debts of another affiliated corporation when the latter is so organized and controlled, and its affairs are so conducted, as to make it merely an instrumentality, agency, conduit, or adjunct of another corporation") (internal quotation marks omitted).

Please do not hesitate to contact me if you would like to discuss this further. Thank you.

Very truly yours,

Thomas P. O'Brien