BROWNE GEORGE ROSS LLP
Thomas P. O'Brien (State Bar No. 166369)
  tobrien@bgrfirm.com
Jennie Wang VonCannon (State Bar No. 233392)
  jvoncannon@bgrfirm.com
David J. Carroll (State Bar No. 291665)
  dcarroll@bgrfirm.com
Nathan F. Brown (State Bar No. 317300)
  nbrown@bgrfirm.com
801 S. Figueroa Street, Suite 2000
Los Angeles, California 90017
Telephone: (213) 725-9800
Facsimile: (213) 725-9808

Attorneys for Plaintiff
Francis J. Racioppi, Jr.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS J. RACIOPPI, JR., <br><br> Plaintiff, <br><br> vs. <br><br> DMITRY BORISOVICH BOSOV, *et al.*, <br><br> Defendants. | Case No. 2:20-cv-03797-FMO (JCx) <br><br> **REPLY IN SUPPORT OF *EX PARTE* APPLICATION FOR RIGHT TO ATTACH ORDER AND ISSUANCE OF WRIT OF ATTACHMENT OR, ALTERNATIVELY, A TEMPORARY PROTECTIVE ORDER** <br><br> Judge:  Hon. Jacqueline Chooljian <br><br> Trial Date:  None Set |

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

Nothing in Defendants' opposition to Plaintiff's *ex parte* application shows that Plaintiff is not entitled to the relief he requests. The Court should issue a right to attach order and a writ of attachment. In the alternative, if the Court desires further briefing and/or argument, the Court should issue a temporary protective order to prevent Defendants from disposing of their assets in the interim.

In their opposition, Defendants suggest that Plaintiff was not terminated but instead resigned, yet they do not attach *any* written confirmation from the Genius Fund Group's ("GFG's") Board of Directors (or even Defendant Shinder) that Plaintiff would retain his position despite the Board's issuance of Executive Order No. 021-059, which terminated "[a]ll existing staff, including employees and management," as of March 27, 2020 "***completely and with no exception***." Racioppi Decl. ¶ 36, Ex. 24 (emphasis added). Nor do any of the heavily-redacted e-mails Defendants attach show that either; all they demonstrate is that Plaintiff sent some unknown e-mail messages to GFG employees and accepted invitations to conference calls that Defendants acknowledge he never actually attended. None of that is necessarily inconsistent with his termination—constructive or otherwise. In short, there is no evidence (beyond Defendant Shinder's self-serving declaration) that GFG did or intended to continue Plaintiff's employment. And the reason for that is simple: GFG did in fact terminate Plaintiff.

Defendants' contention that the various GFG entities are not alter egos of each other fares no better. Defendants do not submit any evidence rebutting Plaintiff's evidence that GFG commingled funds and utterly failed to observe corporate formalities. Instead, they try to attack Plaintiff's purported lack of personal knowledge of such conduct (despite the fact that Plaintiff was both the COO and CEO of the company) and suggest that, in any event, such conduct is simply the "American" way of doing business. Opp. 3. Nothing could be further

from the truth both as a matter of fact and law.

Finally, Defendants misunderstand the requirements for obtaining the relief that Plaintiff seeks. Local Rule 7-19 specifically provides for *ex parte* relief without notice to the opposing party where, as here, "the interest of justice" so requires. Defendants' reliance on the procedures under Federal Rule of Civil Procedure 65 is also misplaced; Rule 65 applies only to temporary restraining orders, which Plaintiff does not seek. Rather, Plaintiff seeks a writ of attachment (or, alternatively, a temporary protective order) under Rule 64 and state law. No such attorney certification is required under the latter.

For these reasons, the Court should grant Plaintiff's *ex parte* application.[1]

## II. ARGUMENT

### A. Plaintiff Need Not Conclusively Prove His Claims to Obtain a Writ of Attachment

Much of Defendants' opposition is simply aimed at casting metaphysical doubt on Plaintiff's claims. But Plaintiff need not show with absolute certainty that he will prevail in order to obtain a writ of attachment. Instead, at this nascent stage in the suit, Plaintiff need only show that it is "more likely than not" that he could prove his claims to a jury by a preponderance of the evidence. *See Santa Clara Waste Water Co. v. Allied World Nat'l Assurance Co.*, 18 Cal. App. 5th 881, 885 (2017). "The purpose of a writ of attachment is to ensure payment will be recovered if judgment is entered. [Plaintiff] is only required to establish the 'probable validity' of its claims. Whether [Plaintiff's] claims are 'actually valid' is determined in a subsequent proceeding and not affected by the court's order on the applications for prejudgment attachment. An attachment remedy would be useless if it required the

---

[1] Various media outlets have reported that Defendant Bosov passed away in during the previous 24 hours. Plaintiff does not believe that this affects the legal basis for his claims against Defendant Bosov, and in any event Defendants Bosov, Alltech Group, and Goldhawk Investment Ltd. have not appeared in this action.

court to first decide the merits and issue a judgment." *Id.* at 889. Nothing in Defendants' opposition shows that Plaintiff has not met that standard.

### B. GFG Entities Are Liquidating Assets to Evade Creditors

The evidence clearly suggests that GFG entities are liquidating and/or reorganizing their business for the purpose of evading their creditors. This is perhaps most clearly demonstrated in the declaration of Michael O'Dowd, in which Mr. O'Dowd declares that a GFG representative expressly confirmed as much to him. ECF No. 10-4. Moreover, the fact that GFG sent backdated WARN Act notices to their employees further demonstrates Defendants' desire to use fraudulent and unlawful means to evade their debts. *Id.* Defendants have not challenged that declaration; instead, they simply submit the conclusory and self-serving declaration of Defendant Shinder stating that he is not in fact evading his debts. Put simply, the facts show otherwise.

Defendants have also failed to rebut Plaintiff's showing that they are almost certainly insolvent and have failed to pay their debts as they become due. As Plaintiff himself declared, with personal knowledge gained from his position as COO and CEO of the company, the GFG entities have long been operating with *zero* profit and little revenue. Moreover, they have defaulted on a $1.5 million settlement that they promised to pay after having defaulted on payments under a prior agreement. The fact that Plaintiff is unable to offer GFG's latest balance sheets to the Court does not mean that Plaintiff's application should be denied, as Defendants suggest. Opp. 5. Indeed, it means that there is much to unearth during discovery—all of which will be for naught if Defendants are allowed to render themselves judgment-proof.

### C. GFG Terminated Plaintiff

On March 26, 2020, Defendant Shinder sent Plaintiff the four Executive Orders issued by GFG's newly-formed Board of Directors that are attached as Exhibits 21 to 25 of Plaintiff's declaration. Executive Order No. 021-059, signed by

Board Chairman and President Gary I. Shinder, is clear and unambiguous:

> Due to the COVID – 19 developing crisis & California State of Emergency Crisis it is not feasible to prolong and continue any Genius Fund (GF) activities as it is right now.
> **All existing staff, including employees and management will be laid off and let go on the date of March 27th 2020 <u>completely and with no exception.</u>**

Racioppi Decl. ¶ 36, Ex. 24 (emphases added).

Defendants do not submit any subsequent directives issued by the GFG Board of Directors that exempted Plaintiff from this absolute and all-encompassing termination order, which is the only possible document that could legally supersede that order. In fact, Defendants do not submit *any* written confirmation whatsoever that Plaintiff was in reality immune from the Board's unambiguous termination order.

Instead, Defendants rely on a self-serving declaration and heavily redacted e-mails to suggest that GFG had nonetheless decided not to terminate Plaintiff. Defendant Shinder declares that, despite the executive order the Board issued, GFG actually determined "not to lay off Plaintiff since Plaintiff was supposed to be part of the restructuring group." Shinder Decl. ¶ 8. Tellingly, nowhere was this decision memorialized, despite what he concedes was Plaintiff's angst about his continued employment with the company. On top of this, Defendant Shinder expressly stated to other company employees that Plaintiff was terminated. It is also telling that after Plaintiff's counsel sent the April 2, 2020 demand letter in connection with Plaintiff's termination, Defendant Shinder never confirmed to Plaintiff or his counsel that he still considered Plaintiff an active employee. If Defendant Shinder truly felt blindsided by what he believed to be the wholly-unexpected resignation of his CEO, it is beyond cavil that he would have made the personal effort to reach out to Plaintiff (or his counsel) to discuss the issue. In short, Defendant Shinder's declaration, executed only after he learned of this suit and the potential for attachment of GFG's assets, does not show that Plaintiff was not in fact terminated.

The e-mails that Defendant Shinder attaches are even more puzzling. Defendants proclaim that these e-mails demonstrate that Plaintiff was actively employed by GFG until April 2, 2020, yet they completely redact the substance of *every single* post-termination email that they attach. Exs. 44, 47, 48. It is therefore impossible to determine whether those communications actually show that Plaintiff is an active employee. Simply communicating with company employees does not alone prove that Plaintiff was also himself a company employee.

It is undisputed that there is a directive signed by all GFG Board members terminating *all* GFG employees and management *without* exception. Neither Defendant Shinder's suspect claims of oral promises of continued employment to Plaintiff, nor the heavily-redacted communications that Defendants proffer, overcomes that.

**D.    GFG Entities Are Liable as Parties to the Contract and Alter Egos**

Defendants first argue that because Plaintiff's contract identifies only "Genius Fund I Inc. and its affiliates" as the employer, Plaintiff can have a claim only against Genius Fund I Inc.—but *not* the affiliates. Opp. 6–8. According to Defendants, because the term "affiliates" is not specifically defined, it therefore refers to nothing and no one. *Id.* That is an irrational interpretation. As Defendants more or less concede in their opposition, GFG is comprised of dozens of related entities that are owned and controlled by Defendants Shinder and Bosov—indeed, Defendants spend much time arguing that there is nothing wrong with having such a structure. Yet, in the same breath, Defendants argue that none of them are "affiliates" of GFG under this contract. Defendants cannot have it both ways. It is also worth noting that Plaintiff's employment agreement is signed by Goldhawk Investments Ltd.— another clear indication that Genius Fund I Inc. is not the sole contracting entity here.[2]

---

[2] Defendants contend that it is unclear how Defendant ESSMW is liable, yet

   Moreover, as Plaintiff's application and supporting declarations amply demonstrate, the GFG entities were and are simply alter egos that exist for the purpose of evading debts—which is a separate and independent basis for liability. At one point, GFG consisted of over 60 different sub-entities, 38 of which are specifically identified in Plaintiff's declaration. Racioppi Decl. ¶ 15. Defendants give no legitimate explanation for the need to create so many different GFG entities; the only plausible inference is that this structure was created for the purpose of hiding assets and evading liability.  Moreover, Defendant Shinder now appears to contend that he had authority to make oral side-deals regarding Plaintiff's continued employment with GFG, in direct contravention of the executive order signed by all three of GFG's Board of Directors stating that all employees were to be terminated without exception.  This makes it clear that, for all intents and purposes, GFG *is* Defendant Shinder.

   Defendants next run through the list of factors that courts use to discern whether to apply alter ego liability, barely disputing them and simply claiming that there is nothing wrong with any of that conduct.  Defendants claim that inadequate capitalization is not a relevant consideration; that "[b]usinesses often commingle funds"; that "[b]usinesses are often owned by the same person, entity, or group thereof"; and that none of these considerations really matter. Opp. 7.  The case law disagrees.  To the extent that the "restructuring" and liquidation of assets that Defendants are undertaking are calculated to deprive Plaintiff of any recovery for the contract that Defendants breached—which, as demonstrated above, is absolutely the case here—that is clearly an inequitable result that requires application of the alter ego theory. *See Sonora Diamond Corp. v. Superior Court*, 83 Cal. App. 4th 523, 539 (2000) (noting that although "[t]he alter ego doctrine does not guard every

---

Executive Order No. 021-059 (Exhibit 21) expressly transfers management of the GFG entities to ESSMW.

unsatisfied creditor of a corporation[, it] affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form"). If alter ego liability did not apply in such a situation, as Defendants appear to contend, it is unclear when such liability *would* apply.[3]

### E.   Plaintiff's *Ex Parte* Application Complied with All Relevant Procedural Rules

Defendants argue that Plaintiff's application should be denied for failure to comply with Local Rule 7-19 and Federal Rule of Civil Procedure 65(b). However, Local Rule 7-19, to the extent it even applies to applications for interim relief under Federal Rule of Civil Procedure 64, does not bar consideration of this application. Local Rule 7-19 expressly provides that notice of an *ex parte* application may be waived simply where "the interest of justice requires." C.D. Cal. L.R. 7-19.2. As Plaintiff made clear both above and in his original application, Defendants are liquidating their assets for the purpose of evading creditors. That statutory basis for granting an *ex parte* right to attach order surely satisfies Local Rule 7-19.2.

Defendants further contend that Plaintiff failed to include an attorney certification under Federal Rule of Civil Procedure 65(b). Rule 65, and particularly subdivision (b), applies only where a party is seeking a "temporary restraining order." Fed. R. Civ. P. 65(b). Plaintiff does not seek a temporary restraining order under Rule 65; instead, he seeks a prejudgment writ of attachment (or, alternatively, a temporary protective order) under Rule 64 and state law, neither of which contain any attorney certification requirement.

///

---

[3] Defendants' claim that Plaintiff is simply without "personal knowledge of all the pertinent facts" regarding GFG's corporate structure, Opp. 8, is belied not only by Plaintiff's position as COO and CEO of the company, but by Plaintiff's declaration stating that he "painstakingly reviewed and analyzed all of GFG's financial information, including all company debts, liabilities, expenditures, revenue, and sources of income, from GFG's inception." Racioppi Decl. ¶ 8.

## III. CONCLUSION

For these reasons, the Court should issue a right to attach order and a writ of attachment. In the alternative, if the Court believes further briefing and/or argument is necessary, the Court should issue a temporary protective order prevent Defendants from continuing to dispose of their assets in the interim.

DATED:  May 6, 2020          Respectfully submitted,

BROWNE GEORGE ROSS LLP
  Thomas P. O'Brien
  Jennie Wang VonCannon
  David J. Carroll
  Nathan F. Brown


By:   /s/ Thomas P. O'Brien
         Thomas P. O'Brien
Attorneys for Plaintiff Francis J. Racioppi, Jr.