1  BROWNE GEORGE ROSS LLP
2  Thomas P. O'Brien (State Bar No. 166369)
     tobrien@bgrfirm.com
3  Jennie Wang VonCannon (State Bar No. 233392)
     jvoncannon@bgrfirm.com
4  David J. Carroll (State Bar No. 291665)
     dcarroll@bgrfirm.com
5
6  Matthew O. Kussman (State Bar No. 313669)
     mkussman@bgrfirm.com
7  801 S. Figueroa Street, Suite 2000
   Los Angeles, California 90017
8  Telephone: (213) 725-9800
9  Facsimile: (213) 725-9808

10
   Attorneys for Plaintiff
11 Francis J. Racioppi, Jr.

12              UNITED STATES DISTRICT COURT

13            CENTRAL DISTRICT OF CALIFORNIA

14

15 | FRANCIS J. RACIOPPI, JR.,          | Case No. 2:20-cv-03797-FMO (JCx)

16 |              Plaintiff,            | **PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION;**

17 |         vs.                        | **DECLARATION OF FRANCIS J.**

18 |                                    | **RACIOPPI, JR.**

19 | DMITRY BORISOVICH BOSOV *et al.*,  |

20 |                                    | Judge:  Hon. Fernando M. Olguin

21 |              Defendants.           | Date:   August 6, 2020

22 |                                    | Time:   10:00 a.m.

23 |                                    | Crtrm.: 6D

24

25

26

27

28

1622095                                    Case No. 2:20-cv-03797-FMO (JCx)

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ............................................................................. 1

II.   FACTUAL BACKGROUND ............................................................ 2

III.  ARGUMENT .................................................................................. 4

    A.   Mr. Racioppi Never Agreed to Arbitrate Claims Arising Out of His 2020 Employment Agreement............................................. 4

        1.   The 2020 Employment Agreement Requires a Signed, Written Arbitration Agreement ......................................... 5

        2.   The Parties Did Not Agree to Specific Arbitration Terms........... 7

    B.   The 2019 Arbitration Agreement Does Not Apply to the Claims in This Case............................................................................. 8

        1.   The Defendants Are Not Parties to the 2019 Arbitration Agreement........................................................................ 9

        2.   The 2019 Arbitration Agreement Does Not Encompass the Claims in this Case ....................................................... 10

            a.   It Was Superseded When Mr. Racioppi Became CEO ...................................................................... 10

            b.   Mr. Racioppi's Instant Claims Are Outside the Scope of the 2019 Arbitration Agreement ...................... 11

        3.   The Purported Arbitration Agreement is Unconscionable ........ 12

            a.   The Purported Arbitration Agreement is Procedurally Unconscionable............................................. 13

            b.   The Purported Arbitration Agreement is Substantively Unconscionable .......................................... 14

        4.   California Labor Code Section 432.6 Prohibits Arbitration of Mr. Racioppi's Labor Code Claims ............................. 16

IV.   CONCLUSION ............................................................................. 18

## <u>TABLE OF AUTHORITIES</u>

<u>Page(s)</u>

**Cases**

*Armendariz v. Found. Health Psychcare Servs.*,
   24 Cal. 4th 83 (2000) ................................................................ 12, 13, 15

*AT&T Mobility LLC v. Concepcion*,
   563 U.S. (2011) ................................................................................... 17

*AT&T Tech., Inc. v. Commc'ns Workers of Am.*,
   475 U.S. 643 (1986) ............................................................................... 4

*Avery v. Integrated Healthcare Holdings, Inc.*,
   218 Cal. App. 4th 50 (2013) ............................................................... 7, 8

*Banner Ent., Inc. v. Super. Ct. (Alchemy Filmworks, Inc.)*,
   62 Cal. App. 4th 348 (1998) .................................................................. 4

*Bayer v. Neiman Marcus Holdings, Inc.*,
   582 F. App'x 711 (9th Cir. 2014) ....................................................... 5, 7

*Buckeye Check Cashing, Inc. v. Cardegna*,
   546 U.S. 440 (2006) ............................................................................. 17

*Chamber of Commerce of United States v. Becerra*,
   2020 WL 605877 (E.D. Cal. Feb. 7, 2020) .......................................... 17

*Cohen v. TNP 2008 Participating Notes Program, LLC*,
   31 Cal. App. 5th 840 (2019) .................................................................. 9

*Craig v. Brown & Root, Inc.*,
   84 Cal. App. 4th 416 (2000) .................................................................. 7

*Fardig v. Hobby Lobby Stores Inc.*,
   2014 WL 2810025 (C.D. Cal. Jun. 13, 2014) (Selna, J.) ..................... 13

*Flores v. Nature's Best Dist. LLC*,
   7 Cal. App. 5th 1 (2016) ........................................................................ 9

*Gatton v. T-Mobile USA, Inc.*,
   152 Cal. App. 4th 571 (2007) .............................................................. 14

# TABLE OF AUTHORITIES
## (Continued)

**Page(s)**

*Gentry v. Super. Ct.*,
  42 Cal. 4th 443 (2007) ................................................................. 13

*Gorlach v. Sports Club Co.*,
  209 Cal. App. 4th 1497 (2012) ................................................ 5, 6, 7

*Grey v. Am. Mgmt. Serv.*,
  204 Cal. App. 4th 803 (2012) ................................................. 10, 11

*Kessinger v. Organic Fertilizers, Inc.*,
  151 Cal. App. 2d 741 (1957) ......................................................... 5

*Kleveland v. Chicago Title Ins. Co.*,
  141 Cal. App. 4th 761 (2006) ........................................................ 8

*Krasley v. Super. Ct.*,
  101 Cal. App. 3d 425 (1980) ......................................................... 4

*Lamps Plus Inc. v. Varela*,
  --- U.S. ---, 139 S. Ct. 1407 (Apr. 24, 2019) ............................ 17

*Little v. Auto Stiegler, Inc.*,
  29 Cal. 4th 1064 (2003) .............................................................. 13

*Mercuro v. Super. Ct.*,
  96 Cal. App. 4th 167 (2002) .................................................. 15, 16

*Mitri v. Arnel Mgmt. Co.*,
  157 Cal. App. 4th 1164 (2007) ............................................... 5, 6, 7

*Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*,
  55 Cal. 4th 223 (2012) .................................................................. 6

*R.E. v. Pac. Fertility Ctr.*,
  2019 WL 1221044 (N.D. Cal. Mar. 25, 2019) ............................. 9

*Romo v. Y-3 Holdings, Inc.*,
  87 Cal. App. 4th 1153 (2001) ........................................................ 6

*Socoloff v. LRN Corp.*,
  646 F. App'x 538 (9th Cir. 2016) .................................................. 6

# <u>TABLE OF AUTHORITIES</u>
### (Continued)

<u>Page(s)</u>

*Sonic-Calabasas A, Inc. v. Moreno*,
   57 Cal. 4th 1109 (2013).............................................................. 14

*Steven v. Fid. & Cas. Co. of New York*,
   58 Cal.2d 862 (1962)................................................................... 9

*Szetela v. Discover Bank*,
   97 Cal. App. 4th 1094 (2002)..................................................... 13

## <u>STATUTES</u>

Cal. Civ. Code § 1582................................................................... 5

Cal. Civ. Code § 1654................................................................. 10

Cal. Lab. Code § 432.6(a)........................................................... 16

Cal. Lab. Code § 432.6(d) .......................................................... 16

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

# I.     __INTRODUCTION__

In their attempt to force arbitration in this case, the Defendants have taken the nonsensical position that Plaintiff Francis J. Racioppi, Jr. is bound by an arbitration agreement they never provided to him, which the parties never signed, and the terms of which the parties never agreed on.  Knowing that this position is untenable, they alternatively argue that Mr. Racioppi must arbitrate his employment claims because he signed a prior arbitration agreement that was expressly superseded when Mr. Racioppi became the Chief Executive Officer ("CEO").  For the reasons discussed below, neither argument has any merit.

Plaintiffs' attempt to enforce a nonexistent arbitration agreement turns on a series of illogical inferences: that because Mr. Racioppi was copied on a few emails discussing *other employees'* arbitration agreements, he must have known generally about the Defendants' arbitration policy and therefore implicitly agreed to the terms of a so-called "form" arbitration agreement.  Not only is it unreasonable to assume that a high-level C-suite executive's terms of employment would be identical to that of other employees, California law is clear that an implied-in-fact agreement to arbitrate cannot not arise where, as here, an employment contract specifically contemplates a signed, written arbitration agreement.  Nor can the Defendants rely on the assertion that Mr. Racioppi merely agreed in concept to arbitration, because the Court cannot enforce a nonspecific agreement to arbitrate—it can only enforce specific and definite terms of arbitration, which Mr. Racioppi did not agree to here.

In the alternative, the Defendants contend that Mr. Racioppi must arbitrate his present claims under a superseded 2019 arbitration agreement (the "2019 Arbitration Agreement") that he signed in connection with a previous employment agreement (the "2019 Employment Agreement").  As an initial matter, the Defendants are not parties to the 2019 Arbitration Agreement and therefore have no standing to enforce it.  Perhaps more importantly, the claims in this case do not fall within the scope of the 2019 Arbitration Agreement.  By its own terms, the 2019 Arbitration Agreement

only applies to claims arising out of the 2019 Employment Agreement governing Mr. Racioppi's employment as Chief Security Office ("CSO")—not to the instant claims, which arise out of the later-executed 2020 Employment Agreement governing his employment as CEO.  Indeed, to erase any doubt as to the scope and applicability of the 2019 Arbitration Agreement, the 2020 Employment Agreement expressly superseded it.

Because Mr. Racioppi never agreed to arbitrate claims arising out of his 2020 Employment Agreement, he cannot now be compelled to do so.  For this reason alone, this Court should deny the Defendants' motion to compel arbitration.  In addition, the terms of the 2019 Arbitration Agreement and the arbitration agreements that the Defendants executed with other employees are unconscionable and prohibited by California Labor Code section 432.6 such that they cannot now be used to compel Mr. Racioppi to arbitrate the instant claims.

## II.   FACTUAL BACKGROUND

After serving his country for almost thirteen years, on four different continents and in some of the most elite units in the United States Army, Mr. Racioppi returned to civilian life in the United States with the intent to fulfill the American dream by transitioning his military skills into success in the business arena.  First Am. Compl. ¶¶ 25–28, ECF No. 36.  Shortly after graduating with a Master of Business Administration from New York University's Stern School of Business, Mr. Racioppi was hired by Spotlight Operations and its affiliates ("Genius") as its Chief Security Officer.  *Id.* ¶¶ 29, 38.  Genius was and is involved in the cultivation, processing, and sale of commercial cannabis and hemp in California.  *Id.* ¶ 31.  In October 2019, Mr. Racioppi was promoted to Genius's Chief Operating Officer ("COO").  *Id.* ¶ 38.  In approximately mid-December 2019, he began serving informally as Genius's "co-Chief Executive Officer."  *See id.* ¶ 6.

After Mr. Racioppis's promotion to COO, he discovered that Genius had been and was being substantially mismanaged by other executives and that Genius was in

a dire financial position, and he attempted to bring this to the attention of other Genius executives and directors. *Id.* ¶¶ 39–40.  In December 2019 and February 2020, Mr. Racioppi informed the owner, Defendant Bosov, of Genius's financial mismanagement, and he presented Defendant Bosov with a plan to turn the company profitable with a minimal additional cash infusion. *Id.*  Defendant Bosov accepted Mr. Racioppi's plan, requested that he implement the plan, and appointed Defendant Shinder to oversee this implementation. *Id.*

On March 5, 2020, Mr. Racioppi was promoted to Genius's CEO. *Id.* ¶ 41. Under the terms of his written employment agreement, Genius agreed to pay Mr. Racioppi: (1) a $300,000 signing bonus, relocation expenses from New York to California, and the security deposit and first month's rent for a new home in California; (2) guaranteed base salary of $700,000 per annum through December 31, 2021; and (3) guaranteed annual bonus of no less than 50 percent of his base salary through December 31, 2021. *Id.*  Mr. Racioppi's employment agreement further guaranteed that, should he be terminated for any reason other than for cause, he would be entitled to (at minimum) his guaranteed base salary through December 31, 2021. *Id.* ¶ 54.

Almost immediately, Mr. Racioppi's reorganization efforts were undermined by Defendant Shinder. *Id.* ¶ 43.  Defendant Shinder began instituting his reorganization plan, wherein he would amass all control of Genius and related entities so that he could liquidate its assets. *Id.*  This included transferring ownership of all Genius entities to himself and an LLC, of which he is the sole member. *Id.*

On March 23, 2020, Defendant Shinder, as the self-appointed President and Chairman of Genius's Board of Directors, issued a directive terminating the employment of all Genius employees and management, including Mr. Racioppi, effective March 27, 2020. *Id.* ¶ 44.  Mr. Racioppi was informed that the reason for his termination was the myriad business restrictions and regulations put in place as a

1   result of the global COVID-19 pandemic.  *Id.*  This explanation was contrived and

2   belied by the fact that the COVID-19 pandemic actually caused a boom in the

3   commercial cannabis industry in California; but in any event, it was clear that his

4   termination was not for cause.  *Id.*

5        After Mr. Racioppi demanded payment of the sums he was owed under his

6   contract, it became clear that the Defendants did not intend to honor their

7   obligations and Mr. Racioppi filed the instant action.  On May 28, 2020, Magistrate

8   Judge Chooljian found that Mr. Racioppi was likely to succeed on his claims and

9   issued a right to attach order against the great majority of the Defendants.  ECF No.

10  47.  The Defendants now seek to compel arbitration of this case.  ECF No. 53.

11  **III.   ARGUMENT**

12       **A.   Mr. Racioppi Never Agreed to Arbitrate Claims Arising Out of His**

13            **2020 Employment Agreement**

14       It is axiomatic that "[a]rbitration is a matter of contract and a party cannot be

15  required to submit to arbitration any dispute which he has not agreed so to submit."

16  *AT&T Tech., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 648 (1986).  Thus, as

17  with all contracts, no binding obligation to arbitrate is formed unless the parties

18  mutually "assent to the same thing, in the same sense."  *Banner Ent., Inc. v. Super.*

19  *Ct. (Alchemy Filmworks, Inc.)*, 62 Cal. App. 4th 348, 358–59 (1998); *see also*

20  *Krasley v. Super. Ct.*, 101 Cal. App. 3d 425, 431–32 (1980) (no enforceable contract

21  in California without a "meeting of the minds" on all material terms).

22       After months of insisting that Mr. Racioppi had signed an arbitration

23  agreement in 2020, the Defendants now finally concede that they never included it

24  in his employment packet for him to sign.  Declaration of Gary Shinder in Support

25  of Defendants' Motion to Compel Arbitration ("Shinder Decl.") ¶ 17, ECF No. 53-

26  2; *see also* Declaration of Francis J. Racioppi, Jr. in Support of Plaintiff's

27  Opposition to Defendants' Motion to Compel Arbitration ("Racioppi Decl.") ¶ 4.

28  But the Defendants now nonetheless claim that Mr. Racioppi is bound by an

                              -4-

1  agreement that he was never given and never signed, arguing that he created an

2  implied-in-fact agreement to arbitrate by accepting employment with Genius.

3  Defendants' Motion to Compel Arbitration ("Mot.") at 6, ECF No. 53-1.  The

4  Defendants' argument is foreclosed by black-letter contract law and should be

5  rejected.

6          **1.**      <u>**The 2020 Employment Agreement Requires a Signed,**</u>

7                                <u>**Written Arbitration Agreement**</u>

8          Although there exists a general legal framework to construe an implied-in-

9  fact contract in California, "when the parties to a proposed contract have themselves

10  fixed the manner in which their assent is to be manifested, an assent thereto, in any

11  other or different mode, will not be presumed."  *Kessinger v. Organic Fertilizers,*

12  *Inc.*, 151 Cal. App. 2d 741, 750 (1957); *see also* Cal. Civ. Code § 1582 ("If a

13  proposal prescribes any conditions concerning the communication of its acceptance,

14  the proposer is not bound unless they are conformed to . . . .").  Thus, "California

15  courts have not found implied consent [to arbitrate] when the employer has required

16  the employee to sign or acknowledge an arbitration agreement."  *Bayer v. Neiman*

17  *Marcus Holdings, Inc.*, 582 F. App'x 711, 713–14 (9th Cir. 2014).

18          For example, in *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497 (2012),

19  an employer argued that an employee created an implied-in-fact agreement to

20  arbitrate by accepting employment after receiving the employer's arbitration policy.

21  *Id.* at 1509.  The court rejected the employer's argument, pointing to a clause in the

22  employee handbook stating: "As a condition to employment, all team Members

23  must *sign* the Mutual Agreement to Arbitrate Claims."  *Id*. (emphasis in original).

24  The court explained that "the handbook told employees that they must sign the

25  arbitration agreement, implying that it was not effective until (and unless) they did

26  so."  *Id.*  "Because [the employee] never signed the arbitration agreement, we cannot

27  imply the existence of such an agreement between the parties."  *Id.*

28          Similarly, in *Mitri v. Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164 (2007), the

employer argued that even though the employee never executed an arbitration agreement, he implicitly agreed to arbitrate his claims by accepting employment while knowing that arbitration was a condition of employment. *Id.* at 1167.  Again, the court rejected the argument because the employee handbook stated: "As a condition of employment, all employees are required to sign an arbitration agreement." *Id.* at 1167.  The court explained that the employer's claim of an implied-in-fact arbitration agreement contradicted an "*express* term requiring a signed agreement." *Id.* at 1172 (emphasis in original).  The handbook's requirement of a signed writing "completely undermin[ed] any argument by the [employer] the provision in the handbook itself was intended to constitute an arbitration agreement." *Id.* at 1167; *see also Socoloff v. LRN Corp.*, 646 F. App'x 538, 539 (9th Cir. 2016) (holding that, "[b]ecause the offer letter contemplated the future signing of a separate arbitration agreement," the offer letter was not itself an agreement to arbitrate); *Romo v. Y-3 Holdings, Inc.*, 87 Cal. App. 4th 1153, 1160 (2001) (mere receipt of arbitration provision irrelevant where employee did not sign the required arbitration agreement).

Here, the 2020 Employment Agreement expressly provides: "As a condition of this offer, you agree to execute Genius's (a) Mutual Agreement to Arbitrate Employment-Related Disputes; and (b) Confidentiality and Proprietary Rights Agreement [(the "Confidentiality Agreement")] continue to apply."  Shinder Decl. ¶ 4, Ex. 1, ECF No. 53-3.  It is undisputed that the Mutual Agreement to Arbitrate Employment-Related Disputes contemplated by the 2020 Employment Agreement was neither executed nor even provided to Mr. Racioppi. *See id.* ¶ 17.  As in *Gorlach* and *Mitri*, this alone defeats the Defendants' argument that there was an implied-in-fact agreement to arbitrate.

The cases cited by the Defendants do not change this.  In *Pinnacle Museum Tower Ass'n v. Pinnacle Mkt. Dev. (US), LLC*, 55 Cal. 4th 223, 236 (2012), the court merely stated the general proposition that consent to an arbitration agreement

can be implied in some circumstances, but did not address what those circumstances
were.  And *Craig v. Brown & Root, Inc.*, 84 Cal. App. 4th 416, 420 (2000), is
inapposite.  The *Craig* court concluded that there was an implied agreement to
arbitrate, but—unlike in *Mitri*, *Gorlach*, *Bayer*, and this case—the document at issue
in *Craig* "did *not* include an express requirement that its employees sign an
arbitration agreement." *Mitri*, 157 Cal. App. 4th at 1172 (emphasis added).  Rather,
the employer unilaterally imposed the arbitration agreement on the employee by
sending him notice of an arbitration provision that stated: "IT APPLIES TO YOU"
and "[i]t will govern all future legal disputes between you and the company. *Id.* at
419.  This critical distinction was specifically noted by the courts in *Bayer*, *Mitri*,
and *Gorlach*.

### 2. The Parties Did Not Agree to Specific Arbitration Terms

Unable to produce the terms of the arbitration agreement that allegedly
govern this action, the Defendants instead assert that the terms of a subordinate's
February 2020 arbitration agreement compel Mr. Racioppi to arbitrate this action in
accordance with *those* terms simply because Mr. Racioppi received a draft of that
agreement.  Mot. at 3–4.  Without addressing how receiving an arbitration
agreement *for someone else* legally binds Mr. Racioppi to its terms, the Defendants'
argument fails because Mr. Racioppi never agreed to specific arbitration terms when
he signed the 2020 Employment Agreement.  "A petition to compel arbitration 'is in
essence a suit in equity to compel specific performance of a contract.'" *Avery v.
Integrated Healthcare Holdings, Inc.*, 218 Cal. App. 4th 50, 71 (2013) (internal
quotations omitted).  "As with any other specific performance claim, a party seeking
to enforce an arbitration agreement must show the agreement's terms 'are
sufficiently definite to enable the court to know what it is to enforce.'" *Id.* (citations
omitted).  "Only the valid and binding agreement of the parties, including all
material terms well-defined and clearly expressed, may be ordered specifically
performed." *Id.*  Thus, "it is not sufficient for the party seeking to compel

1   arbitration to show the parties generally agreed to arbitrate their disputes by

2   incorporating some arbitration provision into their contract." *Id.* at 68.  Rather, the

3   Defendants "must establish the precise arbitration provision the parties incorporated

4   into their agreement to govern their disputes." *Id.* (refusing to compel arbitration

5   because the employee must be provided with the specific arbitration agreement to be

6   enforced, not just "*a[n]*" arbitration agreement).

7          Here, Mr. Racioppi was never presented with an arbitration agreement at all,

8   much less agreed to the specific terms that would apply to him.  Shinder Decl. ¶ 17.

9   It defies logic that his mere receipt of non-C-suite employees' arbitration

10  agreements created an enforceable contract between him and Defendants.  That Mr.

11  Racioppi might have been aware of the Defendants' arbitration agreements with

12  other lower-level employees does not change this result—even if the Defendants

13  now claim after the fact that the agreements are practically identical to what Mr.

14  Racioppi *should have* received and *should have* been asked to sign.  Mot. at 4;

15  *Kleveland v. Chicago Title Ins. Co.*, 141 Cal. App. 4th 761, 765 (2006) (defendant

16  could not enforce a different, but "virtually identical," arbitration agreement that the

17  parties did not specifically agree to).  The fact remains that Mr. Racioppi is not a

18  party to those other arbitration contracts.  The Defendants cannot, in effect, enforce

19  the terms of a different employee's arbitration agreement against Mr. Racioppi

20  simply because he was copied on an email containing them several weeks before he

21  was provided and signed the 2020 Employment Agreement.  It is both factually and

22  legally impossible that the parties could have even implicitly agreed to definite and

23  specific terms that would permit this Court to compel arbitration.  There is therefore

24  no agreement—and there are no terms—for this Court to enforce.

25      **B.   The 2019 Arbitration Agreement Does Not Apply to the Claims in**

26             **This Case**

27         Defendants' attempt to compel arbitration through the 2019 Arbitration

28  Agreement fares no better.  First, none of the Defendants were parties to the 2019

Arbitration Agreement and therefore do not have standing to enforce it.  Second, the scope of the 2019 Arbitration Agreement does not encompass the claims in this case.  Third, the arbitration provision is unconscionable.  And fourth, the 2019 Arbitration Agreement is illegal and unenforceable under California Labor Code section 432.6.

## 1.  The Defendants Are Not Parties to the 2019 Arbitration Agreement

"The contractual right to arbitration 'may not be invoked by one who is not a party to the agreement and does not otherwise possess the right to compel arbitration.'"  *R.E. v. Pac. Fertility Ctr.*, 2019 WL 1221044, at *4–5 (N.D. Cal. Mar. 25, 2019) (quoting *Britton v. Co-op Banking Grp.*, 4 F.3d 742, 744 (9th Cir. 1993)).  Thus, "[s]omeone who is not a party to a contractual arbitration provision generally lacks standing to enforce it."  *Cohen v. TNP 2008 Participating Notes Program, LLC*, 31 Cal. App. 5th 840, 856 (2019); *see also Flores v. Nature's Best Dist. LLC*, 7 Cal. App. 5th 1, 10 (2016) (employer and affiliated entities could not compel arbitration based on arbitration agreement that they did not sign).

Here, none of the Defendants in this case are parties to the 2019 Arbitration Agreement between Mr. Racioppi and Spotlight Operations LLC ("Spotlight").  *See* Shinder Decl. ¶ 5, Ex. 2, ECF No. 53-4.  Moreover, limiting the parties to the agreement appears to have been no accident.  The Defendants knew full well how to draft a contract that would include Spotlight's affiliates.  They did so in both the 2020 Employment Agreement, which states that it applies to "affiliates," and the 2019 Confidentiality Agreement, which states it applies to "parent companies, subsidiaries and other corporate affiliates."  *Id.* ¶ 4, Ex. 1 at 2, ECF No. 53-3; *id.* ¶ 5, Ex. 2 at 4, ECF No. 53-4.  Yet the 2019 Arbitration Agreement was entered into only "by and between Spotlight Operations LLC . . . and Francis J. Racioppi Jr."  *Id.* at 10.  Having drafted the 2019 Arbitration Agreement to carve out Spotlight's affiliates, the Defendants cannot now backtrack and seek to enforce it.  *See Steven v.*

1    *Fid. & Cas. Co. of New York*, 58 Cal.2d 862, 871 (1962) ("[T]he rule of

2    construction *expressio unius est exclusio alterius*; i.e. that mention of one matter

3    implies the exclusion of all others" is "an aid to resolve ambiguities of a contract.");

4    *see also* Cal. Civ. Code § 1654 (any ambiguity in a contract is to be construed

5    against the drafter).

6             **2.      The 2019 Arbitration Agreement Does Not Encompass the**

7                      **Claims in this Case**

8                      **a.      It Was Superseded When Mr. Racioppi Became CEO**

9             Even if the Defendants did have standing to enforce the 2019 Arbitration

10   Agreement (which they do not), that agreement does not require arbitration of the

11   claims in this case.  The 2020 Employment Agreement, which was executed well

12   after the 2019 Arbitration Agreement, expressly states that it "supersedes any prior

13   employment-related agreement or agreements."  Shinder Decl. ¶ 4, Ex. 2 at 2, ECF

14   No. 53-3.  The 2019 Arbitration Agreement, which is plainly a prior employment-

15   related agreement, therefore ceased having any effect when Mr. Racioppi signed the

16   2020 Employment Agreement.[1]

17            *Grey v. Am. Mgmt. Serv.*, 204 Cal. App. 4th 803 (2012), is illustrative.  There,

18   an employee signed an arbitration agreement as part of his employment application.

19   *Id.* at 805.  However, after he was hired, he signed an employment agreement which

20   _____

21            [1] The Defendants appear to assert that because the 2019 Arbitration
     Agreement provides that it "shall survive the termination of [Mr. Racioppi's]
22   employment," it also survives the fact that the 2020 Employment Agreement
     "superseded (i.e., terminated) the April 2019 arbitration agreement." Mot. at 6-7.  It
23   appears this argument was included by mistake, since the provision simply means
     that Mr. Racioppi was required to arbitrate the claims contemplated by the 2019
24   Arbitration Agreement whether he was employed with the company or not.  It does
     not and cannot mean that the 2019 Arbitration Agreement must exist in perpetuity
25   even where, as here, the parties specifically contracted to supersede that agreement.
     Indeed, the 2019 Arbitration Agreement expressly states that it can be "revoked or
26   modified in writing signed by both Parties . . . ."  Shinder Decl. ¶ 5, Ex. 2 at 12,
27   ECF No. 53-4.

28

PLAINTIFF'S OPPOSITION TO DEFENDANT'S MOTION TO COMPEL ARBITRATION

1    stated it "supersede[d] all prior and contemporaneous discussions and

2    understandings." *Id.* The court held that the employer could not enforce the

3    previously-signed arbitration agreement because it was superseded by the

4    employment contract. *Id.* at 808.

5         *Grey* demands the same outcome in this case. The 2020 Employment

6    Agreement expressly extinguished all "prior employment-related . . . agreements,"

7    which plainly includes the 2019 Arbitration Agreement. The Defendants' intention

8    to invalidate and supersede the 2019 Arbitration Agreement is further underscored

9    by their deliberate choice to require the execution of a new arbitration agreement,

10   while at the same time (indeed, in the same sentence) specifying that execution of

11   another Confidentiality Agreement would *not* be required and instead providing that

12   the existing one would "continue to apply." Shinder Decl. ¶ 4, Ex. 1, ECF No. 53-3.

13   If the Defendants had wanted the 2019 Arbitration Agreement to continue to govern

14   Mr. Racioppi's CEO employment relationship, they could and should have stated as

15   much—just as they did with respect to the Confidentiality Agreement. There is thus

16   no doubt that the parties intended to, and did, agree to no longer be bound by the

17   2019 Arbitration Agreement.

18        **b.      Mr. Racioppi's Instant Claims Are Outside the Scope**

19             **of the 2019 Arbitration Agreement**

20        The 2019 Arbitration Agreement also does not apply here because its scope

21   was limited to disputes arising from Mr. Racioppi's previous employment

22   agreement—which this dispute does not. As the Defendants note, the 2019

23   Arbitration Agreement, which was executed concurrently with the 2019

24   Employment Agreement, states that it governs disputes "arising out of or relating to

25   the Parties' employment relationship . . . ." Mot. at 8. The 2019 Arbitration

26   Agreement expressly defines the "employment relationship" to mean that created by

27   the "employment offer letter" associated with Mr. Racioppi's position as CSO. *See*

28   Shinder Decl. ¶ 5, Ex. 2, ECF No. 53-4 at 10. In bold capital letters, the agreement

1 further specifies:

2   **THE PARTIES AGREE THAT ANY DISPUTE CONTROVERSY OR CLAIM ARISING OUT OF OR RELATED TO *THIS***
3   ***AGREEMENT* OR ANY BREACH OF *THIS AGREEMENT* SHALL BE SUBMITTED TO AND DECIDED BY BINDING**
4   **ARBITRATION IN LOS ANGELES, CALIFORNIA.**

5 *Id*. (italics added).  Thus, the 2019 Arbitration Agreement makes clear that it applies

6 to claims arising out of the employment relationship established by the 2019

7 Employment Agreement.

8      In contrast, the present dispute does *not* arise out of the relationship

9 established by the 2019 Employment Agreement.  The 2019 Employment

10 Agreement established an employment relationship in which Mr. Racioppi would be

11 employed (1) by Spotlight, (2) as CSO, and (3) for a $270,000 annual base salary.

12 *Id.* at 2.  The present dispute arises out of the entirely separate employment

13 relationship established by the 2020 Employment Agreement, which provided that

14 Mr. Racioppi would be employed (1) by new and additional entities (Genius Fund I,

15 Inc. and its affiliates), (2) in a different position (CEO), and (3) for substantially

16 increased compensation ($700,000 annual base salary plus a $300,000 signing

17 bonus, relocation expense reimbursement, and guaranteed bonus of at least half of

18 his base salary, among other things).  Shinder Decl. ¶ 4, Ex. 1 at 2, ECF No. 53-3.

19 Because the Defendants never provided him with another arbitration agreement to

20 sign in connection with this latter employment relationship, Mr. Racioppi never

21 agreed to arbitrate disputes arising out of that relationship, which was of a

22 substantially different nature, character, and value than the previous one.

23        **3.    The Purported Arbitration Agreement is Unconscionable**

24      Third, even if there was an agreement to arbitrate the claims in this case

25 (which there is not), it would still be unenforceable on unconscionability grounds.

26 *See Armendariz v. Found. Health Psychcare Servs.*, 24 Cal. 4th 83, 117 (2000).[2]

27

28        [2] "[W]here a party specifically challenges arbitration provisions as

1  Under California law, both procedural and substantive unconscionability are

2  required to render an arbitration agreement unenforceable, but they need not be

3  present in the same degree.[3]  Rather, "a sliding scale is invoked . . . the more

4  substantively oppressive the contract term, the less evidence of procedural

5  unconscionability is required to come to the conclusion that the term is

6  unenforceable, and vice versa."  *Id.*  Here, the arbitration agreement contains a high

7  degree of both procedural and substantive unconscionability.

8              a.    **The Purported Arbitration Agreement is Procedurally**

9                    **Unconscionable**

10         Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to

11  unequal bargaining power."  *Armendariz*, 24 Cal. 4th at 114.  Oppression, and

12  therefore procedural unconscionability, exists "[w]hen the weaker party is presented

13  with the [arbitration] clause and told to 'take it or leave it' without the opportunity

14  for meaningful negotiation."  *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094, 1100

15  (2002).  "Ordinary contracts of adhesion . . . contain a degree of procedural

16  unconscionability even without any notable surprises, and 'bear within them the

17  clear danger of oppression and overreaching.'"  *Gentry v. Super. Ct.*, 42 Cal. 4th

18  443, 469 (2007).  In the case of preemployment adhesion contracts, this oppression

19  "may be particularly acute, for the arbitration agreement stands between the

20  employee and necessary employment."  *Armendariz*, 24 Cal. 4th at 116.  In addition,

21  _____

22  unconscionable and hence invalid, whether the arbitration provisions are
    unconscionable is an issue for the court to determine, applying the relevant state

23  contract law principles."  *Fardig v. Hobby Lobby Stores Inc.*, 2014 WL 2810025, at
    *3 (C.D. Cal. Jun. 13, 2014) (Selna, J.).

24

25  [3] In addition, because Mr. Racioppi has brought a wrongful termination claim,
    the arbitration agreement meet minimum "essential fairness" requirements.

26  Specifically, it must (1) not limit the damages normally available under the statute;
    (2) provide for sufficient discovery; (3) provide for sufficient judicial review;

27  (4) require the employer to pay for all arbitration costs.  *Little v. Auto Stiegler, Inc.*,
    29 Cal. 4th 1064, 1076 (2003).

28

surprise exists when "the supposedly agreed-upon terms of the bargain are hidden in the prolix printed form drafted by the party seeking to enforce the disputed terms.'" *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007).

Here, the 2019 Arbitration Agreement contains an inherent degree of procedural unconscionability because it was a preemployment contract of adhesion—Mr. Racioppi's employment was contingent on his agreement to arbitrate.  Shinder Decl. ¶ 5, Ex. 2 at 4, ECF No. 53-4.  But the procedural unconscionability goes far beyond just that.  The 2019 Arbitration Agreement was also presented to Mr. Racioppi on a take-it-or-leave-it basis, with no meaningful opportunity to negotiate.  Racioppi Decl. ¶ 3.  In fact, Mr. Racioppi was not given an opportunity to *review*—much less negotiate—the terms of the arbitration agreement before his employment began.  Instead, Genius demanded that Mr. Racioppi begin work *before* they emailed him the arbitration agreement.  *Id.* ¶¶ 2–3, Exs. 1–2.  At that point, Mr. Racioppi was in no position to negotiate the terms of the arbitration agreement.  It was presented to him as a condition of his employment, which he had already accepted by beginning work.  Further, when they finally did send him the agreement, after the fact, no Genius representative explained the meaning of the arbitration agreement nor did they explain or indicate that they interpreted it to cover any claims that might arise out of any potential future employment agreements.  *Id.* ¶ 3.  The incredibly broad interpretation of the terms of the agreement that the Defendants now assert is certainly not one that Mr. Racioppi agreed to.  As such, procedural unconscionability is at an apex in this case.

## b. <u>The Purported Arbitration Agreement is Substantively Unconscionable</u>

The 2019 Arbitration Agreement is also substantively unconscionable. "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided." *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013).  "One such form . . . is the arbitration agreement's lack of a

1   'modicum of bilaterality,' wherein the employee's claims against the employer, but
2   not the employer's claims against the employee, are subject to arbitration." *Id.* at
3   1133–34.  An arrangement, in which the employer "requires the weaker parties—its
4   employees—to arbitrate their most common claims while choosing to litigate in the
5   courts its own claims against its employees," is unenforceable.  *Mercuro v. Super.*
6   *Ct.*, 96 Cal. App. 4th 167, 175–76 (2002); *see also Armendariz*, 24 Cal. 4th at 117
7   (arbitration provision unconscionable where it imposed unilateral obligation to
8   arbitrate).

9       For example, in *Mercuro*, an employer's arbitration agreement specifically
10  covered all breach of contract, tort, discrimination, and statutory claims, which were
11  the claims the employee was most likely to bring against the employer.  96 Cal.
12  App. 4th at 175–76.  On the other hand, the arbitration agreement specifically
13  excluded "claims for injunctive and/or other equitable relief for intellectual property
14  violations, unfair competition and/or the use and/or unauthorized disclosure of trade
15  secrets or confidential information," which were the claims the employer was most
16  likely to bring against the employee.  *Id.* at 176.  Because the employee's most
17  common claims were subject to arbitration, but the employer's most common claims
18  were not, the court found the arbitration to be substantive unconscionable and
19  refused to enforce it.  *Id.* at 179.

20      That is precisely what the Defendants would have the 2019 Arbitration
21  Agreement do here.  In connection with the 2019 Arbitration Agreement, Mr.
22  Racioppi was required to sign the Confidentiality Agreement, which prohibited him
23  from disclosing the company's confidential information.  Shinder Decl. ¶ 5, Ex. 2 at
24  4, ECF No. 53-4.  Notably, this agreement provided that "[a]ny action or proceeding
25  by either Party to enforce this Agreement shall be brought *only in any state or*
26  *federal court* located in the state of California, county of Los Angeles."  *Id.* at 8
27  (emphasis added).  In other words, all of the claims that the Defendants would likely
28  have against Mr. Racioppi for breaching the confidentiality agreement are

1    purportedly exempted from arbitration.  On the other hand, all of the claims that Mr.

2    Racioppi would likely have against the Defendants for breach of his employment

3    contract, torts, or statutory violations purportedly remain subject to arbitration.  *See*

4    *id.* at 10.  This one-sided arrangement renders the agreement substantively

5    unconscionable and, therefore, unenforceable.  *See Mercuro*, 96 Cal. App. 4th at

6    175–76.

7                    **4.    California Labor Code Section 432.6 Prohibits Arbitration of**

8                          **Mr. Racioppi's Labor Code Claims**

9           Finally, the 2019 Arbitration Agreement is unenforceable because California

10   Labor Code section 432.6 provides that an employer:

11          shall not, as a condition of employment, continued employment, or the
             receipt of any employment-related benefit, require any applicant for
12          employment or any employee to waive any right, forum, or procedure
             for a violation of any provision of the California Fair Employment and
13          Housing Act . . .  or [the Labor Code], including the right to file and
             pursue a civil action or a complaint with . . .  any court . . . .

14

15   Cal. Lab. Code § 432.6(a).  The statute applies to any "contracts for employment

16   entered into, modified, or extended on or after January 1, 2020."  *Id.* § 432.6(h).

17          Here, the Defendants would extend the 2019 Arbitration Agreement to require

18   arbitration of Mr. Racioppi's Labor Code claims (Counts Four and Six of the First

19   Amended Complaint), Mot. at 8—claims which arise out of his contract for

20   employment entered into on March 5, 2020.  As such, section 432.6 applies and the

21   2019 Arbitration Agreement is illegal and unenforceable.[4]

22          Nor is section 432.6 is preempted by the Federal Arbitration Act ("FAA").  A

23   state law may be preempted by the FAA where it (1) obstructs the FAA's purpose or

24

25          [4] Section 432.6 also provides that, "[i]n addition to injunctive relief and any
26   other remedies available, a court may award a prevailing plaintiff enforcing their
     rights under this section reasonable attorney's fees."  Cal. Lab. Code § 432.6(d).
27   Mr. Racioppi reserves the right to bring a motion for attorney's fees if he prevails in
28   enforcing his rights under section 432.6.

1    (2) treats arbitration agreements different from other contracts.  *AT&T Mobility LLC*

2    *v. Concepcion*, 563 U.S. at 345–46 (2011); *Buckeye Check Cashing, Inc. v.*

3    *Cardegna*, 546 U.S. 440, 447 (2006).

4            Here, section 432.6 does neither.  It does not conflict with the FAA's purpose,

5    which is to promote arbitration, but rather vindicates the federal policy that

6    "arbitration is strictly a matter of consent,"  *Lamps Plus Inc. v. Varela*,

7    --- U.S. ---, 139 S. Ct. 1407, 1415 (Apr. 24, 2019).  By preventing employers from

8    forcing arbitration upon job applicants in a weaker negotiating position, section

9    432.6 promotes *legitimate* arbitration agreements and ensures that arbitration is a

10   matter of consent, not imposition.  Moreover, section 432.6 does not treat arbitration

11   agreements differently than other contracts.  The requirement of consent, free from

12   duress or coercion, is applicable to all contracts.  Section 432.6 merely codifies and

13   reinforces this general rule.[5]

14   //

15   //

16   //

17   //

18   //

19   //

20   //

21   //

22   //

23   //

24

25           [5] The Eastern District of California came to a different conclusion in *Chamber*

26   *of Commerce of United States v. Becerra*, 2020 WL 605877 (E.D. Cal. Feb. 7,
     2020).  However, that court only enjoined the State of California from enforcing the

27   act and it did not preclude private litigants from raising the issue.  *Id.* at *20.

28   Further, that decision is not binding on this Court and is currently pending appeal.

## IV.    <u>CONCLUSION</u>

The Defendants cannot enforce an arbitration agreement that simply does not exist.  Nor can they enforce the 2019 Arbitration Agreement, which was expressly superseded by the 2020 Employment Agreement and which does not cover the claims in this case in any event.  As such, this Court should deny the Defendants' motion to compel arbitration.

DATED:  July 16, 2020                    Respectfully submitted,

BROWNE GEORGE ROSS LLP
Thomas P. O'Brien
Jennie Wang VonCannon
David J. Carroll
Matthew O. Kussman

By:         /s/ Thomas P. O'Brien
Thomas P. O'Brien
Attorneys for Plaintiff Francis J. Racioppi, Jr.