BROWNE GEORGE ROSS
O'BRIEN ANNAGUEY & ELLIS LLP
Thomas P. O'Brien (State Bar No. 166369)
 tobrien@bgrfirm.com
Jennie Wang VonCannon (State Bar No. 233392)
 jvoncannon@bgrfirm.com
David J. Carroll (State Bar No. 291665)
 dcarroll@bgrfirm.com
Matthew O. Kussman (State Bar No. 313669)
 mkussman@bgrfirm.com
801 S. Figueroa Street, Suite 2000
Los Angeles, California 90017
Telephone: (213) 725-9800
Facsimile: (213) 725-9808

Attorneys for Plaintiff
Francis J. Racioppi, Jr.

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| FRANCIS J. RACIOPPI, JR., | Case No. 2:20-cv-03797-FMO (JCx) |
| Plaintiff, | **PLAINTIFF'S OPPOSITION TO DEFENDANTS KATERINA BOSOV'S, ALLTECH INVESTMENT LTD.'S, AND GOLDHAWK INVESTMENT LTD.'S MOTION TO JOIN AND TO COMPEL ARBITRATION** |
| vs. | |
| DMITRY BORISOVICH BOSOV *et al.*, | |
| Defendants. | Judge: Hon. Fernando M. Olguin<br>Date: November 19, 2020<br>Time: 10:00 a.m.<br>Crtrm.: 6D |
| | Trial Date: October 5, 2021 |

1686790

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ...................................................................................... 1

II.   RELEVANT BACKGROUND ................................................................ 2

III.   ARGUMENT ........................................................................................... 3

    A.   The 2020 Employment Contract Did Not Incorporate the MAAERD ........................................................................................ 3

    B.   Defendants Do Not Have Standing to Compel Arbitration ..................... 9

    C.   The Purported Arbitration Agreement Would Be Unconscionable ......... 10

        1.   The Alleged Arbitration Agreement Would Be Procedurally Unconscionable .................................................................. 10

        2.   The Alleged Arbitration Agreement Would Be Substantively Unconscionable ..................................................... 13

    D.   Dismissal Is Inappropriate Even if Arbitration Is Compelled ................ 15

IV.   CONCLUSION ..................................................................................... 17

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

**Cases**

4

*Aral v. Earthlink, Inc.*,

5
    134 Cal. App. 4th 544 (2005) ...................................................................12

6

*Armendariz v. Found. Health Psychare Servs.*,

7
    24 Cal. 4th 83 (2000) ................................................ 10, 11, 12, 13

8

*Barnes v. Jewels*,
    2016 WL 7238832 (C.D. Cal. Mar. 3, 2016) ........................................16

9

*Brandwein v. Butler*,

10
    218 Cal. App. 4th 1485 (2013) ................................................................8

11

*Bustamante v. Intuit, Inc.*,

12
    141 Cal. App. 4th 199 (2006) ..................................................................5

13

*Dotson v. Amgen, Inc.*,

14
    181 Cal. App. 4th 975 (2010) ................................................................12

15

*DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*,

16
    176 Cal. App. 4th 697 (2009) ..................................................................3

17

*Felisilda v. FCA US LLC*,

18
    54 Cal. App. 4th 486 (2020) ....................................................................9

19

*Flores v. Nature's Best Distribution, LLC*,

20
    7 Cal. App. 5th 1 (2016) ...........................................................................7

21

*Flores v. Transamerica HomeFirst, Inc.*,
    93 Cal. App. 4th 846 (2001) ..................................................................12

22

*Gatton v. T-Mobile USA, Inc.*,

23
    152 Cal. App. 4th 571 (2007) ...........................................................11, 12

24

*Gentry v. Super. Ct.*,

25
    42 Cal. 4th 443 (2007) ...........................................................................11

26

*Harper v. Ultimo*,

27
    111 Cal. App. 4th 1402 (2003) ..............................................................12

28

1

**TABLE OF AUTHORITIES**
(Continued)

2                                                                                                                       **Page**

3   *Johnmohammadi v. Bloomingdale's Inc.,*
4       755 F.3d 1072 (9th Cir. 2014) ................................................................. 15

5   *Kessinger v. Organic Fertilizers, Inc.,*
6       151 Cal. App. 2d 741 (1957) ...................................................................... 4

7   *Kleveland v. Chicago Title Ins. Co.,*
8       141 Cal. App. 4th 761 (2006) ..................................................................... 7

9   *Kramer v. Toyota Motor Corp.,*
        705 F. 3d 1122 (9th Cir. 2013) ................................................................... 9

10  *Masonite Corp. v. Pac. Gas & Elec. Co.,*
11      65 Cal. App. 3d 1 (1976) ............................................................................ 9

12  *Melex v. Kaiser Fdn. Hosps., Inc.*
13      2015 WL 898455 (C.D. Cal. Mar. 2, 2015) .............................................. 12

14  *Mercuro v. Super. Ct.,*
15      96 Cal. App. 4th 167 (2002) ............................................................... 13, 14

16  *Mitri v. Arnel Mgmt. Co.,*
17      157 Cal. App. 4th 1164 (2007) ........................................................... 4, 5, 6

18  *PMS Distrib. Co. v. Huber & Suhner, A.G.,*
19      863 F.2d 639 (9th Cir. 1988) .................................................................... 16

20  *Rennick v. O.P.T.I.O.N. Care, Inc.,*
        77 F.3d 309 (9th Cir. 1996) ........................................................................ 5

21  *Romo v. Y-3 Holdings, Inc.,*
22      87 Cal. App. 4th 1153 (2001) ..................................................................... 6

23  *Socoloff v. LRN Corp.,*
24      646 F. App'x 538 (9th Cir. 2016) ................................................... 1, 3, 4, 5

25  *Sonic-Calabasas A, Inc. v. Moreno,*
26      57 Cal. 4th 1109 (2013) ........................................................................... 13

27  *Steven v. Fid. & Cas. Co. of N.Y.,*
        58 Cal. 2d 862 (1962) ................................................................................ 8

28

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO JOIN AND TO COMPEL ARBITRATION

1
2

# TABLE OF AUTHORITIES
## (Continued)

**Page**

3
4

*Szetela v. Discover Bank,*
   97 Cal. App. 4th 1094 (2002) ........................................................ 11, 12

5
6

*Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc.,*
   609 F.3d 975 (9th Cir. 2010) ............................................................. 16

7
8

*Zalkind v. Ceradyne, Inc.,*
   194 Cal. App. 4th 1010 (2011) ............................................................. 8

9

## STATUTES

10

9 U.S.C. § 3 ........................................................................................... 15

11

Cal. Civ. Code § 1582 ............................................................................. 5

12

Cal. Civ. Code § 1641 ............................................................................. 8

13

Cal. Civ. Code § 1642 ........................................................................... 14

14

Cal. Civ. Code § 1654 ............................................................................. 9

15

Cal. Civ. Proc. Code § 1281.8(a)(1) ..................................................... 16

16

## OTHER AUTHORITIES

17

Fed. R. Civ. P. 64(a) ........................................................................ 16, 17

18
19
20
21
22
23
24
25
26
27
28

## I.      **INTRODUCTION**

On July 2, 2020, many of the defendants in this case ("Genius Defendants") moved to compel arbitration of the claims in Plaintiff Francis Racioppi's ("Mr. Racioppi's") Complaint, which Mr. Racioppi opposed ("First Opposition").  *See* ECF Nos. 53, 61.  Now, Defendants Katerina Bosov, Alltech Investments Ltd., and Goldhawk Investments Ltd. ("Defendants") seek to join the Genius Defendants' motion and also make four additional arguments as to why Mr. Racioppi should be compelled to arbitrate.  *See* Defendants' Motion to Join and Dismiss Case ("Mtn."), ECF No. 123.  All are without merit.

First, Defendants contend that a non-existent 2020 arbitration agreement (which they call the "MAAERD") was binding on Mr. Racioppi because it was incorporated by reference into his 2020 employment contract ("2020 Employment Contract").  Mtn. at 7.  This contention is contrary to established law and was squarely rejected by the Ninth Circuit in *Socoloff v. LRN Corp.*, 646 F. App'x 538 (9th Cir. 2016) (arbitration agreement not incorporated by reference where signed employment offer letter required separate signature on arbitration agreement).  The alleged MAAERD could not have been incorporated by reference because the 2020 Employment Contract specifically required that any arbitration agreement be separately executed to be effective.

Second, Defendants contend that they have standing to compel arbitration under the doctrine of equitable estoppel because Mr. Racioppi's claims are inextricably intertwined with a contract that is subject to arbitration.  Mtn. at 11.  However, as explained above, there is no applicable arbitration agreement here.  The alleged 2020 arbitration agreement does not exist—indeed, the only arbitration agreement Defendants have produced from 2020 is for another employee.  And none of Mr. Racioppi's claims are covered by the 2019 arbitration agreement he signed in connection with his 2019 employment contract ("2019 Employment Contract") with non-party Spotlight Operations LLC for the position of Chief Security Officer

1  ("CSO").  Thus, Defendants cannot avail themselves of the equitable estoppel

2  doctrine.

3       Third, Defendants argue that any purported arbitration agreement is not

4  unconscionable because the unconscionable terms were contained in a separate

5  confidentiality agreement ("Confidentiality Agreement") rather than the arbitration

6  agreement itself—an ironic position given that Defendants are the ones attempting to

7  incorporate an unsigned arbitration agreement for another person into the 2020

8  Employment Contract.  In any event, this argument fails too because the

9  Confidentiality Agreement—unlike the arbitration agreement—was, in fact,

10  incorporated by reference into the 2020 Employment Contract, and because related

11  contracts covering the same subject matter must be construed together under basic

12  tenets of contractual interpretation.

13       Finally, Defendants contend that, if this Court compels arbitration, this case

14  should be dismissed rather than stayed.  But they fail to recognize that even if the

15  underlying claims are subject to arbitration (which they are not), the provisional relief

16  that Mr. Racioppi has sought and obtained—and which is the subject of ongoing

17  contempt proceedings before the Magistrate Judge, (*see* ECF Nos. 47, 74, 122)—is

18  *not* subject to arbitration and, as such, this Court retains jurisdiction.  Thus, even if

19  Defendants' motion were granted, this Court must stay, rather than dismiss, this case.

20  **II.**    **RELEVANT BACKGROUND**

21       Because this Court is familiar with the underlying facts of this case from the

22  First Opposition, Mr. Racioppi does not repeat them here.  On July 2, 2020, the

23  Genius Defendants brought a motion to compel arbitration in this case, ECF No. 53,

24  which Mr. Racioppi opposed on July 16, 2020, ECF No. 61.  The Genius Defendants

25  filed a reply brief on July 23, 2020.  ECF No. 69.  On July 31, 2020 this Court took

26  the motion under submission.  ECF No. 73.

27       On October 13, 2020, this Court granted Mr. Racioppi's motion to substitute

28  Defendant Katerina Bosov for Dmitry Bosov and to effect service by alternate means

1    on Defendants Bosov, Alltech Group, and Goldhawk Investments Ltd.  ECF No. 105.

2    On October 16, 2020, Mr. Racioppi served Defendants.  ECF Nos. 115, 116, 117.  On

3    October 21, 2020, Defendants sought to join the Genius Defendants' motion and

4    made four additional arguments as to why arbitration should be compelled.  ECF No.

5    123.  All of the additional arguments are without merit and are addressed in turn.[1]

6    **III.   ARGUMENT**

7         **A.   The 2020 Employment Contract Did Not Incorporate the MAAERD**

8              The plain language of the 2020 Employment Contract makes clear that not only

9    was the MAAERD <u>not</u> incorporated by reference, it was expressly superseded and

10   was not intended to be binding on the parties.  A document may be incorporated by

11   reference only if "(1) the reference is clear and unequivocal, (2) the reference is called

12   to the attention of the other party and he consents thereto, and (3) the terms of the

13   incorporated document are known or easily available to the contracting parties."

14   *DVD Copy Control Ass'n, Inc. v. Kaleidescape, Inc.*, 176 Cal. App. 4th 697, 713-14

15   (2009).  The purpose of the rule is to "ascertain[] the mutual intent of the parties—in

16   cases where the parties <u>intended to be bound</u> by specific terms that were not

17   mentioned in the contract."  *Id.* (emphasis added).  Defendants have failed to show

18   that the MAAERD was incorporated by reference for three reasons.

19        **First**, where, as here, a contract refers to another document, but also expressly

20   requires that the other document be separately signed, the parties do not manifest an

21   intent to be bound by the separate document without the separate signature.  Thus, the

22   first two elements of *Kaleidescape* are not met because Mr. Racioppi and Defendants

23   have not "clear[ly] and unequivocal[ly]" incorporated the document nor have they

24   "consent[ed] thereto."  *See id.*

25        *Socoloff* is instructive.  There, an employee signed an offer letter which stated:

26   _____

27        [1] To the extent Defendants join the Genius Defendants' motion, Mr. Racioppi incorporates by reference, as if fully set forth herein, his First Opposition.  *See* ECF

28   No. 61.

1    "By signing this letter below, you also agree to abide by all [employer] policies,

2    procedures, rules and regulations currently in effect or that may be adopted by time to

3    time." 646 F. App'x. at 539.  The offer letter further provided: "You will also be

4    required to sign a mutual agreement to arbitrate claims." *Id.* at 539.  In moving to

5    compel arbitration, the employer contended that the offer letter incorporated the

6    arbitration agreement by reference and therefore the signed offer letter bound the

7    employee to arbitration. *Id.*  Applying California law, the Ninth Circuit rejected the

8    argument and found that the motion to compel was properly denied, holding that

9    "[b]ecause the offer letter contemplated the future signing of a separate arbitration

10   agreement, there was no clear and unequivocal incorporation by reference." *Id.*

11   (citing *Mitri v. Arnel Mgmt. Co.*, 157 Cal. App. 4th 1164, 1170 (2007)).

12        This case is on all fours with *Socoloff*.  The 2020 Employment Contract

13   provided: "As a condition of this offer, you agree to execute Genius's (a) Mutual

14   Agreement to Arbitrate Employment-Related Disputes; and (b) Confidentiality and

15   Proprietary Rights Agreement continue to apply." *See* Shinder Decl., ¶ 4 Ex. 1, ECF

16   No. 53-3 (emphasis added).  Thus, although the 2020 Employment Contract

17   referenced the MAAERD, it also made clear that signing the 2020 Employment

18   Contract alone would not constitute a binding agreement to arbitrate.  Rather, Mr.

19   Racioppi was required to separately sign the MAAERD in order for it to be effective.[2]

20   Because no such agreement was ever executed—or even provided to Mr. Racioppi—

21   the parties did not enter into a contract to arbitrate.  *See Kessinger v. Organic*

22   *Fertilizers, Inc.*, 151 Cal. App. 2d 741, 750 (1957) ("[W]hen the parties to a proposed

23   contract have themselves fixed the manner in which their assent is to be manifested,

24   an assent thereto, in any other or different mode, will not be presumed."); *see also*

25

26        [2] In contrast, where the parties did intend for an outside agreement to bind
     them, they expressly said so by contracting that the "Confidentiality and Proprietary
27   Rights Agreement continue[s] to apply."  Shinder Decl., ¶ 4 Ex. 1, ECF No. 53-3
     (emphasis added).
28

1   Cal. Civ. Code § 1582 ("If a proposal prescribes any conditions concerning the

2   communication of its acceptance, the proposer is not bound unless they are conformed

3   to. . . .").[3]

4        Defendants do not and cannot cite a single case holding that a mere reference to

5   a separate contract is sufficient to incorporate it by reference and make it binding on

6   the parties where the language of the agreement also makes clear that the separate

7   contract must be independently executed.  Moreover, their attempts to distinguish the

8   cases cited by Mr. Racioppi on this point ring hollow.[4]

9        For example, Defendants quibble over the fact that in *Socoloff* the employee

10  signed an offer letter in which he agreed to be "required to sign" a separate arbitration

11  agreement—whereas in this case, Mr. Racioppi signed an offer letter in which he

12  "agree[d] to execute" a separate arbitration agreement.  This semantic distinction is

13  nonsense.  Agreeing to be required to sign an arbitration agreement is no different

14  than agreeing to sign an arbitration agreement, particularly in the employment

15  context.

16       In addition, Defendants mischaracterize the holding in *Mitri*.  They contend

17  that in *Mitri*, the employer merely "attempted to infer the plaintiff's consent to

---

18      [3] Indeed, at best, the provision in the 2020 Employment Contract regarding
19  arbitration constituted "an agreement to agree," "which is unenforceable under
20  California law."  *Bustamante v. Intuit, Inc.*, 141 Cal. App. 4th 199, 213 (2006)
    ("[T]here is no contract where the objective manifestations of intent demonstrate that
21  the parties chose not to bind themselves until a subsequent agreement [was] made.")
22  (quoting *Rennick v. O.P.T.I.O.N. Care, Inc.*, 77 F.3d 309, 316 (9th Cir. 1996)).

23      [4] Defendants state that "Plaintiff cannot seriously argue any other interpretation
24  of the contract.  If Plaintiff signed the Employment Agreement without any intent to
    execute [an arbitration agreement], then he fraudulently induced Genius Fund I to
25  enter the agreement and his agreement is thereby voidable."  Mtn. at 11.  However,
26  Defendants' implication of fraud is baseless and absurd.  The mere fact that Mr.
    Racioppi did not end up signing an arbitration agreement that the company had the
27  responsibility to furnish which was never even provided to him does not in any way
28  suggest that he never had the intent to sign it or that he committed fraud.

1   arbitrate from his or her continued employment after receiving (but not signing) the

2   arbitration agreement." Mtn. at 11.  Not so.  In *Mitri*, the employees signed an

3   acknowledgment of receipt of an employee handbook that contained an arbitration

4   provision.  157 Cal. App. 4th at 1168.  However, they did not sign the arbitration

5   provision itself.  *Id.*  The employer argued that the fact that employees signed the

6   acknowledgment of the handbook, which referenced and included the arbitration

7   provision, "established the existence of a binding arbitration agreement."  *Id.* at 1169.

8   The court rejected this argument because the arbitration provision stated that, "[a]s a

9   condition of employment, all employees are required to sign an arbitration

10  agreement."  *Id.*  The court found that "[t]his provision completely undermines any

11  argument by defendants that the provision in the handbook itself was intended to

12  constitute an arbitration agreement between [the employer] and its employees."  *Id.* at

13  1171; *see also Romo v. Y-3 Holdings, Inc.*, 87 Cal. App. 4th 1153, 1158-60 (2001)

14  (because arbitration provision of employee handbook required a separate signature,

15  signed acknowledgment of handbook referencing arbitration did not create binding

16  arbitration agreement).

17        ***Second***, the terms of the document to be incorporated by reference were not

18  known or reasonably available to Mr. Racioppi.  In fact, none of the defendants in this

19  case have been able to produce the specific arbitration agreement that was purportedly

20  incorporated by reference.  Instead, they contend that Mr. Racioppi was generally

21  aware of <u>other</u> employees' arbitration agreements because he was copied on some

22  emails and knew generally what sort of terms were in these agreements because he

23  previously signed an arbitration agreement ("2019 Arbitration Agreement") in

24  connection with his 2019 Employment Contract when he became CSO.[5]  However,

25  _____

26        [5] Defendants rely on Defendant Shinder's Declaration for this point.  Mtn. at

27  17.  However, Defendant Shinder's credibility is questionable at best, as the Genius
    Defendants have already admitted that Defendant Shinder violated the Court's Right

28  to Attach Order and should be held in contempt of court for "enter[ing] into sham

1   the fact is that those are <u>different</u> contracts.  Mr. Racioppi is not a mind-reader; he

2   would have no way of inferring that he, as Chief Executive Officer ("CEO"), would

3   be asked to agree to the exact same arbitration agreement as those given to lower-

4   level employees.  And it would have defied logic for him to assume that the terms of

5   the 2019 Arbitration Agreement he signed in connection with his CSO employment

6   agreement would apply to his employment as CEO, particularly where the company

7   took pains to expressly supersede that arbitration agreement.

8       Moreover, the 2019 Arbitration Agreement is, in fact, different from the one

9   the Defendants seek to enforce now, as the only parties to that agreement were Mr.

10  Racioppi and Spotlight Operations LLC—whereas Defendants now apparently seek to

11  enforce an arbitration agreement between another employee and Genius Management

12  LLC, an entity which was not even a named party to the 2020 Employment Contract.

13  *Compare* Shinder Decl., ¶ 5, Ex. 2, ECF No. 53-4 (containing 2019 Arbitration

14  Agreement naming only Spotlight Operations LLC as a party) *with id.* ¶ 10, Ex. 5,

15  ECF No. 53-7 (containing non-C-Suite employee's arbitration agreement naming only

16  Genius Management LLC as a party).  These terms—particularly the identification of

17  the parties against whom the employee must arbitrate—matter.  *Flores v. Nature's*

18  *Best Distribution, LLC,* 7 Cal. App. 5th 1, 9 (2016) (arbitration agreement was not

19  enforceable because the signature block for the employer was not filled in and

20  "[t]herefore, the agreement does not identify with which entity or entities plaintiff had

21  agreed to" arbitrate).  An employer cannot simply enforce a different employee's

22  arbitration agreement by arguing after the fact that it was going to be substantially

23  similar to what an employee would have been required to sign.  *Kleveland v. Chicago*

24  *Title Ins. Co.*, 141 Cal. App. 4th 761, 765 (2006) (defendant could not enforce a

25  different, but "virtually identical," arbitration agreement that the parties did not

26  _____

27  transactions for his own personal gain."  ECF No. 100 at 1.  Further, the Genius
    Defendants also informed the Court that Defendant Shinder was fired several months

28  ago, and they are currently unable to locate him.  *See* ECF No. 100-1.

1   specifically agree to).

2       In short, Defendants attempt to enforce an arbitration agreement that apparently

3   never actually existed and thus never specifically laid out the terms for arbitration—

4   including the parties thereto.  As such, it is impossible that the terms could have been

5   known or reasonably available to Mr. Racioppi and it is impossible that the parties

6   could have come to a meeting of the minds.

7       ***Third***, Defendants' argument that the parties intended to create a binding

8   agreement to arbitrate in the 2020 Employment Contract is contradicted by numerous

9   canons of contractual interpretation.  For example, under California law, "the

10  meaning of a contract must be derived from reading the whole of the contract, with

11  individual provisions interpreted today, in order to give effect to all provisions and to

12  avoid rendering some meaningless." *Zalkind v. Ceradyne, Inc.*, 194 Cal. App. 4th

13  1010, 1027 (2011); Cal. Civ. Code § 1641 ("The whole of a contract is to be taken

14  together, so as to give effect to every part, if reasonably practicable, each clause

15  helping to interpret the other.").  Thus, "when interpreting a contract, [courts] strive to

16  interpret the parties' agreement to give effect to all of the contract's terms, and to

17  avoid interpretations that render any portion superfluous, void or inexplicable."

18  *Brandwein v. Butler*, 218 Cal. App. 4th 1485, 1507 (2013).  Here, the 2020

19  Employment Contract plainly required Plaintiff to separately execute an arbitration

20  agreement.  Interpreting the 2020 Employment Contract as already binding Mr.

21  Racioppi to arbitration via incorporation by reference, as Defendants would have this

22  Court do, would render the execution requirement superfluous and inexplicable.

23      In addition, "the rule of construction *expressio unius est alterius*; i.e., that

24  mention of one matter implies the exclusion of all others" is "an aid to resolve the

25  ambiguities of a contract."  *Steven v. Fid. & Cas. Co. of N.Y.*, 58 Cal. 2d 862, 871

26  (1962).  Here, the 2020 Employment Contract clearly provides that the

27  Confidentiality Agreement *was* incorporated by reference by providing that it

28  "continue[d] to apply."  *See* Shinder Decl., ¶ 4 Ex. 1, ECF No. 53-3.  By contrast, the

1   2020 Employment Contract specifically required the MAAERD to be separately

2   executed. *Id.* Thus, the express incorporation of the Confidentiality Agreement

3   implies the exclusion of the MAAERD.

4   Finally, "ambiguities in the contract . . . must be construed most strongly

5   against the one who caused the ambiguity to exist, i.e. the drafter." *Masonite Corp. v.*

6   *Pac. Gas & Elec. Co.*, 65 Cal. App. 3d 1, 8 (1976); Cal. Civ. Code § 1654 ("[T]he

7   language of a contract should be interpreted most strongly against the party who

8   caused the uncertainty to exist."). To the extent there is any ambiguity as to whether

9   the 2020 Employment Contract incorporated the MAAERD, this ambiguity must be

10  construed against Defendants, who drafted the agreements. In this case, this demands

11  that the 2020 Employment Contract be interpreted as not incorporating the MAAERD.

12      **B.**    <u>**Defendants Do Not Have Standing to Compel Arbitration**</u>

13  Defendants contend that they have standing to compel arbitration under the

14  doctrine of equitable estoppel. "Under [this doctrine], as applied in both federal and

15  California decisional authority, a nonsignatory defendant may invoke an arbitration

16  clause to compel a signatory plaintiff to arbitrate its claims when the causes of action

17  against the nonsignatory are intimately founded in and intertwined with the

18  underlying contract obligations." *Felisilda v. FCA US LLC*, 54 Cal. App. 4th 486,

19  495 (2020). However,

> California state contract law does not allow a nonsignatory to enforce an
> arbitration agreement based upon a mere allegation of collusion or
> interdependent misconduct between a signatory and a nonsignatory. In
> <u>any</u> case applying equitable estoppel to compel arbitration despite the
> lack of an agreement to arbitrate, a nonsignatory may compel arbitration
> only when the claims against the nonsignatory are founded in and
> inextricably bound up with <u>the obligations imposed by the agreement
> containing the arbitration clause.</u>

25  *Kramer v. Toyota Motor Corp.*, 705 F. 3d 1122, 1132 (9th Cir. 2013) (emphases in

26  original). "California courts have explicitly noted that parties should only be

27  estopped if their 'own conduct renders assertion of those rights contrary to equity.'"

28  *Id.* (citation omitted).

As explained, the 2020 Employment Contract, upon which Mr. Racioppi's claims rely, neither contains nor incorporates a valid arbitration agreement.  Rather, the only arbitration agreement between the parties in existence is the 2019 Arbitration Agreement, which only covers claims arising out of the 2019 Employment Contract.  *See* ECF No. 61 at 11.  Because none of the claims in this case arise out of, or are inextricably intertwined with, the 2019 Employment Contract, Defendants lack standing to attempt to enforce the 2019 Arbitration Agreement under the equitable estoppel doctrine.

**C.    The Purported Arbitration Agreement Would Be Unconscionable**

The alleged 2020 arbitration agreement between Mr. Racioppi and Defendants does not exist.  As such, there are no specific terms that this Court can analyze for unconscionability.  However, even if such an agreement did exist—and assuming it contained substantially the same terms (but not the same parties) as the 2019 Arbitration Agreement as Defendants suggest—it would be unconscionable and unenforceable for the same reasons that the 2019 Arbitration Agreement is.

Under California law, both procedural and substantive unconscionability are required to render an arbitration agreement unenforceable, but they need not be present in the same degree.  *Armendariz v. Found. Health Psychare Servs.*, 24 Cal. 4th 83, 117 (2000).  Rather, "a sliding scale is invoked . . . .  [T]he more substantively oppressive the contract term, the less evidence of procedural unconscionability is required to come to the conclusion that the term is unenforceable, and vice versa."  *Id.*  Here, the MAAERD contains a high degree of both procedural and substantive unconscionability.

**1.    The Alleged Arbitration Agreement Would Be Procedurally Unconscionable**

Procedural unconscionability "focus[es] on 'oppression' or 'surprise' due to unequal bargaining power."  *Armendariz*, 24 Cal. 4th at 114.  It is not, as Defendants imply, solely about the sophistication level of the parties.  Mtn. at 15.  Oppression,

1  and therefore procedural unconscionability, exists "[w]hen the weaker party[6] is

2  presented with the [arbitration] clause and told to 'take it or leave it' without the

3  opportunity for meaningful negotiation." *Szetela v. Discover Bank*, 97 Cal. App. 4th

4  1094, 1100 (2002). "Ordinary contracts of adhesion . . . contain a degree of

5  procedural unconscionability even without any notable surprises, and 'bear within

6  them the clear danger of oppression and overreaching.'" *Gentry v. Super. Ct.*, 42 Cal.

7  4th 443, 469 (2007). In the case of preemployment adhesion contracts, this

8  oppression "may be particularly acute, for the arbitration agreement stands between

9  the employee and necessary employment." *Armendariz*, 24 Cal. 4th at 116. In

10  addition, surprise exists when "the supposedly agreed-upon terms of the bargain are

11  hidden in the prolix printed form drafted by the party seeking to enforce the disputed

12  terms.'" *Gatton v. T-Mobile USA, Inc.*, 152 Cal. App. 4th 571, 581 (2007).

13       Here, the alleged 2020 arbitration agreement (if it existed) would be

14  procedurally unconscionable for the same reasons the 2019 Arbitration Agreement is.

15  Specifically, it would contain an inherent degree of procedural unconscionability as a

16  preemployment contract of adhesion that required Mr. Racioppi to agree to arbitrate

17  as a condition of his employment. *See* Shinder Decl., ¶ 4, Ex. 1, ECF No. 53-3. But

18  the procedural unconscionability would go far beyond just that. Had the MAAERD

19  been presented to Mr. Racioppi, it would have been on a take-it-or-leave-it basis with

20  no meaningful opportunity to negotiate as it described as a condition of employment.

21  Moreover, the element of "surprise" would be at its apex in this case. Despite the fact

22  that the 2020 Employment Contract purported to require Mr. Racioppi to execute a

23  separate agreement before being bound to arbitrate, under Defendants' argument, the

24  2020 Employment Contract itself would have secretly constituted an agreement to

25

26       [6] Here, Mr. Racioppi was the weaker party because he was being promoted
from CSO to CEO at his existing employer, which possessed all the bargaining

27  power. For him to "leave it," he would have had to search for an entirely new job, a
far weaker position than a candidate who is already engaged in a job search.

28

arbitrate unbeknownst to Mr. Racioppi.  In addition, under Defendants' new theory of incorporation by reference, the procedural unconscionability would only be heightened because the terms of the arbitration agreement would be "artfully hidden" by merely incorporating them by reference.  *Harper v. Ultimo*, 111 Cal. App. 4th 1402, 1406 (2003).

Defendants' perplexingly argue that Mr. Racioppi "is wrong" that the alleged arbitration agreement is procedurally unconscionable and that he has not provided any authority to show that employment contracts of adhesion are procedurally unconscionable.  In *Armendariz*, *Szetela*, and *Gatton*—all cited in Mr. Racioppi's First Opposition—each of the courts found that procedural unconscionability existed because the arbitration agreement was a contract of adhesion and thus the arbitration agreement was unenforceable.  The *Gatton* court specifically noted that "[t]he California Supreme Court has consistently reiterated that '[t]he procedural element of an unconscionable contract generally takes the form of a contract of adhesion.'"  152 Cal. App. 4th at 582.  Further, the court explained that courts

> have routinely found the procedural [unconscionability] element satisfied where the agreement containing the challenged provision was a contract of adhesion.  For example, in [*Flores v. Transamerica HomeFirst, Inc.*, 93 Cal. App. 4th 846, 851 (2001)], we stated that "[a] finding of a contract of adhesion is essentially a finding of procedural unconscionability" and in *Aral v. Earthlink, Inc.*, 134 Cal. App. 4th 544, 557 (2005), the court described an adhesive contract as "quintessential procedural unconscionability."

*Id.*  Indeed, this Court need look no further than the cases cited by Defendants themselves for his proposition.  *See Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981 (2010) ("[P]rocedural unconscionability is present only because the offer was presented on a take-it or leave-it basis."); *Melex v. Kaiser Fdn. Hosps., Inc.* 2015 WL 898455, at *5 (C.D. Cal. Mar. 2, 2015) (Snyder, J.) ("[N]umerous cases . . . have held that contracts of adhesion are procedurally unconscionable.").

## 2.   The Alleged Arbitration Agreement Would Be Substantively Unconscionable

The alleged arbitration agreement (if it existed) also would be substantively unconscionable.  "Substantively unconscionable terms may take various forms, but may generally be described as unfairly one-sided."  *Sonic-Calabasas A, Inc. v. Moreno*, 57 Cal. 4th 1109, 1133 (2013).  "One such form . . . is the arbitration agreement's lack of a 'modicum of bilaterality,' wherein the employee's claims against the employer, but not the employer's claims against the employee, are subject to arbitration."  *Id.* at 1133-34.  An arrangement, in which the employer "requires the weaker parties—its employees—to arbitrate their most common claims while choosing to litigate in the courts its own claims against its employees," is unenforceable.  *Mercuro v. Super. Ct.*, 96 Cal. App. 4th 167, 175-76 (2002); *see also Armendariz*, 24 Cal. 4th at 117 (arbitration provision was unconscionable where it imposed unilateral obligation to arbitrate).

For example, in *Mercuro*, an employer's arbitration agreement specifically covered all breach of contract, tort, discrimination, and statutory claims, which were the claims the employee was most likely to bring against the employer.  *Mercuro*, 96 Cal. App. 4th at 175-76.  In contrast, the arbitration agreement specifically excluded "claims for injunctive and/or other equitable relief for intellectual property violations, unfair competition and/or the use and/or unauthorized disclosure of trade secrets or confidential information," which were the claims the employer was most likely to bring against the employee.  *Id.* at 176.  Because the employee's most likely claims were subject to arbitration, but the employer's most likely claims were not, the court found the arbitration agreement to be substantively unconscionable and refused to enforce it.  *Id.* at 179.

That is precisely what has occurred here.  In connection with his employment, Mr. Racioppi was required to agree to the Confidentiality Agreement, which prohibited him from disclosing the company's confidential information.  *See* Shinder

Decl. ¶ 5, Ex. 2 at 4, ECF No. 53-4.  This agreement continued to be in effect when Mr. Racioppi signed the 2020 Employment Contract.  *Id.* ¶ 4, Ex. 1, ECF No. 53-4. Notably, the Confidentiality Agreement provided that "[a]ny action or proceeding by either Party to enforce this Agreement shall be brought <u>only in any state or federal court</u> located in the state of California, county of Los Angeles."  *Id.* at 8 (emphasis added).  In other words, all of the claims that Defendants would likely have against Mr. Racioppi for breaching the Confidentiality Agreement are purportedly exempt from arbitration.  On the other hand, all of the claims that Mr. Racioppi would likely have against the Defendants for breach of his employment contract, torts, or statutory provisions would have remained subject to arbitration.  *See id.* at 10.  This one-sided arrangement renders the agreement substantively unconscionable and, therefore, unenforceable.  *See Mercuro*, 96 Cal. App. 4th at 175-76.

Defendants' sole retort is that the Confidentiality Agreement cannot be considered because it is a "***separate contract***" and Mr. Racioppi cannot "splice together separate contracts to manufacture unconscionability."  Mtn. at 16 (emphasis in original).  Incredibly, Defendants cry foul about the fact that the Confidentiality Agreement is located on a separate document immediately after arguing that the MAAERD—a separate contract—should be treated as part of the 2020 Employment Contract.  The contention is baseless.

Unlike the MAAERD, which was <u>not</u> incorporated by reference, and which required a separately-executed document to become effective, the 2020 Employment Contract actually did incorporate by reference the Confidentiality Agreement by stating that it would "continue to apply."  Shinder Decl. ¶ 5, Ex. 2 at 4, ECF No. 53-4. Moreover, even if that were not the case, it is hornbook law that "[s]everal contracts relating to the same matters, between the same parties, and made as parts of substantially one transaction, are to be taken together."  Cal. Civ. Code § 1642.  The fact that the Confidentiality Agreement was set forth in a separate document is immaterial, and its provisions must be read in conjunction with the other associated

1   documents, including the MAAERD.  Indeed, adopting Defendants' position would

2   produce an absurd result: according to Defendants, an employer could easily sidestep

3   all scrutiny of its arbitration agreement by merely including all of the unconscionable

4   terms in a "**separate contract**."  *See* Mtn. at 16 (emphasis in original).

5   ### D.   <u>Dismissal Is Inappropriate Even if Arbitration Is Compelled</u>

6   Even if Mr. Racioppi's claims were subject to arbitration (which they are not),

7   this Court should not dismiss this case.  The Federal Arbitration Act provides:

8   > If any suit or proceeding be brought in any of the courts of the United
    > States upon any issue referable to arbitration under an agreement in
9   > writing for such arbitration, the court in which such suit is pending, upon
    > being satisfied that the issue involved in such suit or proceeding is
10  > referable to arbitration under such an agreement, <u>shall on application of
    > one of the parties stay the trial of the action until such arbitration has
11  > been had in accordance with the terms of the agreement,</u> providing the
    > applicant for the stay is not in default in proceeding with such arbitration.

12  

13  9 U.S.C. § 3 (emphasis added).  While it is true that, "notwithstanding the language of

14  § 3, a district court may either stay the action or dismiss it outright," dismissal is only

15  appropriate when "the court determines that all of the claims raised in the action are

16  subject to arbitration." *Johnmohammadi v. Bloomingdale's Inc.*, 755 F.3d 1072, 1074

17  (9th Cir. 2014).

18  Here—regardless of whether the underlying causes of action are subject to

19  arbitration—there are claims that are *not* subject to arbitration and thus the case

20  cannot be dismissed.  Specifically, because the defendants intended to dispose of their

21  assets and there would be nothing left to satisfy Mr. Racioppi's claims, the Court has

22  already taken the unusual step of granting provisional relief in the form of a Right to

23  Attach Order.  *See* ECF Nos. 47, 74.  In addition, there is a pending motion for

24  contempt against the defendants for violating this Right to Attach Order, pursuant to

25  which the Magistrate Judge has also already issued an order freezing certain of the

26  defendants' assets.  *See* ECF No. 122.  Indeed, the Magistrate Judge has indicated that

27  she "was inclined to certify facts re contempt relative to Defendant Gary Shinder,"

28  ECF No. 121, and the Genius Fund Defendants have conceded that Defendant

1    Shinder has "removed, misappropriated, and possibly sold millions of dollars of assets

2    . . . from Genius Fund properties" and his "continuing violations of the order are

3    depleting Genius Fund's assets to the detriment of Genius Fund and Racioppi."  ECF

4    No. 100 at 3.

5           Defendants cannot contend that these claims and issues are not within the

6    Court's jurisdiction.  As the Court already correctly found, the issuance of the

7    provisional relief was proper under both state and federal law even if the underlying

8    claims are subject to arbitration.  *See* Fed. R. Civ. P. 64(a) (state law generally

9    governs the issuance of provisional relief that is "intended to secure satisfaction of the

10   judgment," including attachment); Cal. Civ. Proc. Code § 1281.8(a)(1) ("[A] party to

11   an arbitration agreement may file in court . . . an application for a provisional remedy

12   in connection with an arbitrable controversy.").  Indeed, the district court's "authority

13   'to issue equitable relief in aid of arbitration' is well established; such 'judicial

14   interim relief may be necessary to preserve the meaningfulness of the arbitrable

15   process.'" *Barnes v. Jewels*, 2016 WL 7238832, at *2 (C.D. Cal. Mar. 3, 2016)

16   (Wilner, J.) (quoting *Toyo Tire Holdings of Americas Inc. v. Cont'l Tire N. Am., Inc.*,

17   609 F.3d 975, 980 (9th Cir. 2010)).  In fact, the Ninth Circuit has held that a district

18   court may issue provisional writs even *after* it has ordered a claim to be arbitrated.

19   *PMS Distrib. Co. v. Huber & Suhner, A.G.*, 863 F.2d 639, 642 (9th Cir. 1988) ("The

20   fact that a dispute is arbitrable and that the court so orders under Section 4 of the

21   Arbitration Act does not strip it of authority to grant a writ of possession pending the

22   outcome of the arbitration so long as the criteria for such a writ are met.") (citation

23   omitted).

24          It is clear that Defendants seek to dismiss, rather than stay, this case in order to

25   escape the preliminary relief and protections the Court already properly granted, as

26   well as to attempt to avoid potential findings against the defendants for contempt.

27   However, the law is clear that this Court retains jurisdiction over those issues even if

28   the underlying causes of action are subject to arbitration.  To hold to the contrary, and

1  to dismiss the entire action despite having already granted the provisional relief,

2  would eviscerate the Magistrate Judge's orders specifically put in place to protect Mr.

3  Racioppi and completely undermine and invalidate the procedures set forth in Federal

4  Rule of Civil Procedure 64(a) and California Code of Civil Procedure section 1281.8.

5  **IV.    CONCLUSION**

6          For the foregoing reasons, Defendants' Motion to (1) Join the Genius Fund

7  Defendants' Motion to Compel Arbitration and (2) Dismiss Plaintiff's Action in

8  Favor of Arbitration should be denied.

9  DATED:  October 29, 2020              Respectfully submitted,

10                                        BROWNE GEORGE ROSS

11                                        O'BRIEN ANNAGUEY & ELLIS LLP
                                              Thomas P. O'Brien
12                                            Jennie Wang VonCannon
                                              David J. Carroll
13                                            Matthew O. Kussman

14

15                                        By:      /s/ Thomas P. O'Brien
                                          _____
16                                                Thomas P. O'Brien
                                          Attorneys for Plaintiff Francis J. Racioppi, Jr.

17

18

19

20

21

22

23

24

25

26

27

28