JASON D. RUSSELL (SBN 169219)
jason.russell@skadden.com
MATTHEW E. SLOAN (SBN 1651650)
matthew.sloan@skadden.com
RAZA RASHEED (SBN 306722)
raza.rasheed@skadden.com
SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
300 South Grand Avenue, Suite 3400
Los Angeles, California 90071-3144
Telephone:   (213) 687-5000
Facsimile:    (213) 687-5600

*Attorneys for Defendants*
*Katerina Bosov,*
*Alltech Investments Ltd., and*
*Goldhawk Investments Ltd.*

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

WESTERN DIVISION

| | |
|---|---|
| FRANCIS J. RACIOPPI, JR., | CASE NO.: 2:20-CV-03797-FMO-JC |
| Plaintiff, | **DEFENDANTS KATERINA BOSOV'S, ALLTECH INVESTMENTS LTD.'S, AND GOLDHAWK INVESTMENTS LTD.'S NOTICE OF MOTION AND MOTION TO:** |
| v. | |
| DMITRY BORISOVICH BOSOV, et al., | |
| Defendants. | **(1) JOIN THE GENIUS FUND DEFENDANTS' MOTION TO COMPEL ARBITRATION; and** |
| | **(2) DISMISS PLAINTIFF'S ACTION IN FAVOR OF ARBITRATION.** |
| | Complaint Filed:  April 24, 2020 |
| | First Am. Compl. Filed:  May 21, 2020 |
| | Judge: Hon. Fernando M. Olguin |
| | Courtroom:  6D |
| | Date: December 10, 2020 |
| | Time: 10:00 a.m. |

## NOTICE OF MOTION AND MOTION

### TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

**PLEASE TAKE NOTICE** that on December 10, 2020 at 10:00 a.m., or as soon thereafter as the matter may be heard, in Courtroom 6D located at 350 West 1st Street, 6th Floor, Los Angeles, California 90012, Defendants Katerina Bosov, representative of the Estate of Dmitry Borisovich Bosov, Alltech Investments Ltd.,[1] and Goldhawk Investments Ltd. ("Defendants") will, and hereby do, present for hearing by the Court this Motion to Join the Genius Fund Defendants'[2] Motion to Compel Arbitration (ECF 53) and to Dismiss This Action in Favor of Arbitration ("Motion").

This Motion is made pursuant to Section 4 of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 3, 4, as well as Federal Rules of Civil Procedure 12(b)(3) and 12(b)(6). The Motion is based on this notice, the memorandum of points and authorities that follows, the files and records in this action, the arguments of counsel, and any such matters the Court may consider.

Pursuant to Civil Local Rule 7-3, counsel for Defendants met and conferred with Plaintiff Francis J. Racioppi, Jr.'s ("Plaintiff") counsel on October 20, 2020 in order to potentially resolve this dispute without Court intervention. (Declaration of Matthew E. Sloan ("Sloan Decl.") ¶ 4.) The parties were unable to reach a resolution. (*Id.*)

Defendants were served with process in this lawsuit on October 16, 2020. (*See* ECF 115-117.) By that time, the Genius Fund Defendants' Motion to Compel Arbitration (ECF 53), which Defendants now join, had been under submission since

---

[1] The Complaint names, and Plaintiff purports to have served, an entity called "Alltech Group." To Defendants' knowledge, no such entity exists or has ever existed. Plaintiff's attempted service was forwarded to Alltech Investments Ltd., which assumes that it was the entity Plaintiff intended to name.

[2] The Genius Fund Defendants include: Gary I. Shinder, Genius Fund I, Inc., Genius Fund I, LLC, ESSMW – Earth Solar System Milky Way, LLC, Heli Biotech LLC; Dr. Kush World Collective LLC, Eagle Rock Herbal Collective LLC, Genius Products LLC, Full Circle Labs LLC, Nature's Holiday LLC, Variant Hemp Solutions LLC, Genius Delivery LLC, Planck Properties LLC, Aristotle Equipment LLC, Genius Sales LLC, Genius Products T, Inc., Genius Products NT, Inc., and Genius Products, Inc.

1  July 31, 2020 (ECF 73), and Defendants did not know whether resolution of that

2  motion was imminent. (Sloan Decl. ¶ 3.) Defendants thus asked Plaintiff if he had any

3  objection to Defendants filing the Motion on October 20, 2020, before the seven-day

4  waiting period mandated by Civil Local Rule 7-3 had expired. (*Id.* ¶ 5.) Counsel for

5  Plaintiff asked Defendants to wait to file until October 21, 2020, but otherwise did not

6  object to Defendants' proposal. (*Id.*) Defendants thus filed the Motion on October 21,

7  2020, and asked the Court for relief from Civil Local Rule 7-3 in the Notice of Motion.

8  (ECF 123 at PageID 1828-29; Sloan Decl. ¶ 6.)

9       On November 6, 2020, the Court struck the Motion for failure to comply with

10  Civil Local Rule 7-3. (ECF 135.) Defendants now refile the Motion. Since Defendants

11  met and conferred with Plaintiff on October 20, 2020, the Motion complies with Civil

12  Local Rule 7-3.

13

14  DATED: November 6, 2020

15                          SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP

16

17            By:  _____*/s/ Jason D. Russell*_____
                              JASON D. RUSSELL
18                          Attorneys for Defendants
                            KATERINA BOSOV
19                      ALLTECH INVESTMENTS LTD.
                        GOLDHAWK INVESTMENTS LTD.

20

21

22

23

24

25

26

27

28

MOTION TO DISMISS IN FAVOR OF ARBITRATION

1

# <u>TABLE OF CONTENTS</u>

2

3

NOTICE OF MOTION AND MOTION ........................................................................i

MEMORANDUM OF POINTS AND AUTHORITIES ...........................................1

PRELIMINARY STATEMENT ...............................................................................1

ARGUMENT .............................................................................................................5

    I.      PLAINTIFF MUST ARBITRATE THIS DISPUTE..............................5

          A.    The Court Should Permit Defendants to Join the Genius Fund Defendants' Motion to Compel Arbitration .........................6

          B.    The Employment Agreement Incorporated the MAAERD...........7

          C.    Defendants Have Standing to Enforce the Arbitration Agreement............................................................................... 11

    II.     PLAINTIFF'S ATTACKS ON THE MAAERD LACK MERIT ......... 14

          A.    The MAAERD Is Not Unconscionable ...................................... 14

               1.    The MAAERD Is Not Procedurally Unconscionable ....... 15

               2.    The MAAERD Is Not Substantively Unconscionable...... 16

          B.    Labor Code Section 432.6 Is Preempted by the FAA ................. 17

CONCLUSION ......................................................................................................... 18

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# <u>TABLE OF AUTHORITIES</u>

## CASES

*Alliance Bank of Arizona v. Patel*,
    No. CV 13–736 CAS (JCx),
    2013 WL 2432313 (C.D. Cal. June 3, 2013) ....................................... 5

*Allied-Bruce Terminix Cos. v. Dobson*,
    513 U.S. 265 (1995) ............................................................................. 5

*Arthur Andersen LLP v. Carlisle*,
    556 U.S. 624 (2009) ........................................................................... 12

*AT&T Mobility LLC v. Concepcion*,
    563 U.S. 333 (2011) ............................................................................. 6

*Baker v. Aubry*,
    216 Cal. App. 3d 1259 (1989) ....................................................... 7, 10

*Bayer v. Neiman Marcus Holdings, Inc.*,
    582 F. App'x 711 (9th Cir. 2014) ................................................. 10, 11

*Boucher v. Alliance Title Co.*,
    127 Cal. App. 4th 262 (2005) .................................................. 3, 12, 13

*Chamber of Commerce of the United States v. Becerra*,
    438 F. Supp. 3d 1078 (E.D. Cal. 2020), *appeal filed*,
    No. 20-15291 (9th Cir. 2020) .............................................. 4, 17, 18

*Chin v. Advanced Fresh Concepts Franchise Corp.*,
    194 Cal. App. 4th 704 (2011) ...................................................... 14, 15

*Chiron Corp. v. Ortho Diagnostic Systems, Inc.*,
    207 F.3d 1126 (9th Cir. 2000) ............................................................ 6

*Circuit City Stores, Inc. v. Adams*,
    532 U.S. 105 (2001) ............................................................................. 5

*Dean Witter Reynolds, Inc. v. Byrd*,
    470 U.S. 213 (1985) ............................................................................. 6

*Dotson v. Amgen, Inc.*,
    181 Cal. App. 4th 975 (2010) ......................................... 4, 15, 16, 17

*Felisilda v. FCA US LLC*,
    53 Cal. App. 5th 486 (2020) ............................................................. 12

*Giuliano v. Inland Empire Personnel, Inc.*,
    149 Cal. App. 4th 1276 (2007) .................................................... 14, 15

*Gonzalez v. Mason*,
    No. C 07-180 SI (pr), 2008 WL 2079195 (N.D. Cal. May 15, 2008),
    *aff'd*, 357 F. App'x 835 (9th Cir. 2009) .......................................... 7

*Gorlach v. Sports Club Co.,*
209 Cal. App. 4th 1497 (2012) ................................................................... 10, 11

*IMEG Corp. v. Astourian,*
Case No. 2:19-cv-02560-R-AFM,
2019 WL 6486041 (C.D. Cal. July 30, 2019) ..................................................... 5

*JSM Tuscany, LLC v. Superior Court,*
193 Cal. App. 4th 1222 (2011) ......................................................................... 12

*King v. Larsen Realty, Inc.,*
121 Cal. App. 3d 349 (1981) .................................................................. 7, 8, 10

*Koffler Electrical Mechanical Apparatus Repair, Inc. v.*
*Wartsila North America, Inc.,*
No. C–11–0052 EMC,
2011 WL 1086035 (N.D. Cal. Mar. 24, 2011) ................................................... 9

*KWB & Associates, Inc. v. Marvin,*
Case No. ED CV 18-289-DMG (KKx),
2018 WL 5094927 (C.D. Cal. Apr. 18, 2018) ................................................... 5

*Lemberg v. LuLaRoe, LLC,*
Case No.: ED CV 17-02102-AB (SHKx),
2018 WL 6927836 (C.D. Cal. Mar. 1, 2018) ................................................... 5

*Malone v. Superior Court,*
226 Cal. App. 4th 1551 (2014) ................................................................... 4, 17

*Melez v. Kaiser Foundation Hospitals, Inc.,*
No. 2:14–cv–08772–CAS (VBKx),
2015 WL 898455 (C.D. Cal. Mar. 2, 2015) ..................................................... 15

*Mercuro v. Superior Court,*
96 Cal. App. 4th 167 (2002) ........................................................................... 16

*Mitri v. Arnel Management Co.,*
157 Cal. App. 4th 1164 (2007) ................................................................... 10, 11

*Roman v. Superior Court,*
172 Cal. App. 4th 1462 (2009) ................................................................... 15, 16

*Romo v. Y-3 Holdings, Inc.,*
87 Cal. App. 4th 1153 (2001) ................................................................... 10, 11

*Rosenthal v. Great Western Financial Securities Corp.,*
14 Cal. 4th 394 (1996) ..................................................................................... 11

*Rowe v. Exline,*
153 Cal. App. 4th 1276 (2007) ......................................................... 3, 12, 13, 14

*Shaw v. Regents of the University of California,*
58 Cal. App. 4th 44 (1997) ............................................................................... 8

*Socoloff v. LRN Corp.,*
646 F. App'x 538 (9th Cir. 2016) ..................................................................... 11

*Spencer v. Lunada Bay Boys,*
    Case No. CV 16–02129 SJO (RAOx),
    2016 WL 6818757 (C.D. Cal. July 22, 2016) ................................................... 6

*Turtle Ridge Media Group, Inc. v. Pacific Bell Directory,*
    140 Cal. App. 4th 828 (2006) ........................................................... 12, 13

*Vazquez v. Central States Jt. Board,*
    547 F. Supp. 2d 833 (N.D. Ill. 2008) .................................................... 6

*Wolschlager v. Fidelity National Title Insurance Co.,*
    111 Cal. App. 4th 784 (2003) ................................................ 3, 7, 8, 9, 10, 11

*Yahoo! Inc. v. Iversen,*
    836 F. Supp. 2d 1007 (N.D. Cal. 2011) ................................................. 5

**STATUTES**

9 U.S.C. § 2 .............................................................................................. 6

Cal. Lab. Code § 432.6(f) .................................................................... 4, 18

Cal. Lab. Code § 432.6(a) ........................................................................ 17

MOTION TO DISMISS IN FAVOR OF ARBITRATION

## MEMORANDUM OF POINTS AND AUTHORITIES[3]
## PRELIMINARY STATEMENT

On March 5, 2020, Plaintiff Francis J. Racioppi executed an offer letter ("Employment Agreement") to become the CEO of Genius Fund I Inc. ("Genius Fund I") and its affiliates (the "Genius Fund Group"). The Employment Agreement was generous to Plaintiff, giving him the opportunity to earn seven-figure compensation in the form of salary and bonuses, on top of benefits and profit-sharing incentives. (ECF 53-3, Employment Agreement, at PageID 1020-21.) These opportunities were expressly given "[f]or and inconsideration of the mutual promises and covenants set forth" in the Employment Agreement, including Plaintiff's "agree[ment] to [his] employment" on a series of "terms and conditions and . . . subject to all of [the Genius Fund Group's] policies and procedures regarding its employees." (*Id.*)

One of the covenants Plaintiff agreed to as a condition of his employment was Plaintiff's promise to arbitrate employment-related disputes with the Genius Fund Group. Plaintiff expressly "agree[d] to execute" Genius Fund I's "Mutual Agreement to Arbitrate Employment-Related Disputes" (the "Mutual Arbitration Agreement" or "MAAERD") (*see id.* at PageID 1021), an agreement to arbitrate, among other things, "all grievances, disputes, claims, or causes of action . . . arising out of [Plaintiff's] employment . . . and the termination thereof." (ECF 53-7, Redline of 2019 and 2020 MAAERDs, at PageID 1064.) The Mutual Arbitration Agreement was not new to Plaintiff; he signed a substantively identical prior version of the arbitration agreement in 2019, when he served as the Genius Fund Group's Chief Security Officer and Chief Operating Officer, respectively, and had been involved in requiring other employees to execute the MAAERD. (*See id.* (redline showing minimal differences between 2019 and 2020 versions of the MAAERD); ECF 61-1, Racioppi Decl. ¶ 3, at PageID 1224 (admitting that Plaintiff signed 2019 version of the MAAERD); ECF 53-6, Shinder

---

[3]     Unless otherwise noted, all emphases are added, and all original citations, brackets, ellipses, footnotes, and internal quotation marks are omitted from all quoted material in this Memorandum of Points and Authorities for ease of reading.

1   Decl. Ex. 4, at PageID 1060-62 (copy of the MAAERD attached to email Plaintiff was
2   copied on).)

3   Despite his express agreement to be bound by the MAAERD and arbitrate
4   employment-related claims, Plaintiff initiated this lawsuit after he resigned from his
5   position as CEO, asserting various claims stemming from the Employment
6   Agreement. On July 2, 2020, the Genius Fund Defendants Moved to Compel
7   Arbitration under the MAAERD (ECF 53), and the Court took that motion under
8   submission on July 31, 2020. (ECF 73.) Defendants Katerina Bosov, representative of
9   the Estate of Dmitry Borisovich Bosov, Alltech Investments Ltd.,[4] and Goldhawk
10  Investments Ltd. ("Defendants") were subsequently served on October 16, 2020. (ECF
11  115-17.)  Defendants have moved promptly upon receiving service to join the Genius
12  Fund Defendants' Motion to Compel Arbitration pursuant to the Mutual Arbitration
13  Agreement.

14  The Genius Fund Defendants are correct that this dispute belongs in arbitration,
15  and Defendants request leave to join their motion. As the Genius Fund Defendants
16  rightly explain, Plaintiff's conduct in signing the Employment Agreement, with its
17  acknowledgement that Plaintiff "agree[d] to execute" the MAAERD, and thereafter
18  working for the Genius Fund Group, is consistent with only one conclusion: Plaintiff
19  intended to arbitrate employment-related claims. (ECF 53-1, Mot. to Compel Arb., at
20  PageID 1009-10.) Moreover, even if Plaintiff had not agreed to the 2020 version of
21  the MAAERD when he signed the Employment Agreement, the 2019 version of the
22  MAAERD Plaintiff indisputably signed is still in effect and encompasses each of the
23  claims he asserts in this lawsuit. (*Id.* at PageID 1010-12.)

24  In addition to the Genius Fund Defendants' arguments, several other arguments
25  merit the Court's attention. ***First***, because the Employment Agreement incorporated
26  the MAAERD by reference, and Plaintiff signed the Employment Agreement, it is

27
28  ---
[4]   As set forth above (*supra*, note 1), Plaintiff purported to have served a non-existent entity called "Alltech Group." Alltech Investments Ltd. assumes that Plaintiff intended to serve it instead.

irrelevant that Plaintiff did not also sign the 2020 version of the MAAERD. Under California law, an arbitration agreement can be incorporated by reference into another contract and become binding on the parties, even though they have not read or acknowledged it, if it is "easily available" to the parties and the incorporated agreement is "identified . . . by name." *See Wolschlager v. Fidelity Nat'l Title Ins. Co.*, 111 Cal. App. 4th 784, 791 (2003). Both conditions are satisfied here. As the Genius Fund Group's CEO, Plaintiff had ready access to the MAAERD, and in fact was already familiar with its contents, having signed an earlier version and supervised dissemination of the MAAERD to other employees. Moreover, the Employment Agreement called out the MAAERD by name in capital letters, and specified "*as a condition of* [the Employment Agreement]" that Plaintiff "agree[d] to execute" it. Because the MAAERD was thus incorporated into the Employment Agreement, the Court can compel arbitration based on Plaintiff's execution of the Employment Agreement alone. *See id.* ("Nothing further [is] needed to bind the plaintiff.").

**Second**, Defendants have standing to invoke the MAAERD even though they are not signatories to that agreement. Because Plaintiff's claims against Defendants are predicated on the Employment Agreement, which incorporates the MAAERD by reference, the equitable estoppel doctrine permits Defendants to require Plaintiff to arbitrate. *See Boucher v. Alliance Title Co.*, 127 Cal. App. 4th 262, 272-73 (2005) (permitting nonsignatories to arbitrate with plaintiff whose contract, tort, and statutory claims "presume[d] the existence of" an "employment agreement" with an arbitration clause). Moreover, Plaintiff contends that Defendants are the "alter egos" of Genius Fund I, the entity that signed the Employment Agreement, a fact that also prevents Plaintiff from arguing that Defendants lack standing to enforce the MAAERD. *See Rowe v. Exline*, 153 Cal. App. 4th 1276, 1285 (2007) ("By suing [nonsignatory defendants] for breach of the Agreement on the ground that they are [signatory's] alter egos . . . [defendants] are entitled to the benefit of the arbitration provisions.").

**Third**, the MAAERD is not unconscionable despite Plaintiff's protestations to

3

the contrary. The agreement is not procedurally unconscionable, even though it was presented as a condition of employment, because Plaintiff is a highly sophisticated executive who was not coerced into agreeing to arbitrate. *See Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 981 (2010) (rejecting argument that arbitration agreement presented to educated lawyer "as a condition of employment without negotiation regarding its terms" in "exchange for a generous compensation and benefits package" was unconscionable). And the agreement is not substantively unconscionable because its arbitration obligations are fully mutual. *See Malone v. Superior Court*, 226 Cal. App. 4th 1551, 1570 (2014) (clause delegating arbitrability question to arbitrator was "not inherently unfair" and "not unilateral," and was therefore not unconscionable).

*Fourth*, the MAAERD is not invalidated by Section 432.6 of the California Labor Code, as Plaintiff incorrectly contends. To start with, that statute does not, on its face, permit the Court to invalidate any private arbitration agreement that is otherwise enforceable under the FAA. *See* Cal. Lab. Code § 432.6(f) ("Nothing in this section is intended to invalidate a written arbitration agreement that is otherwise enforceable under the Federal Arbitration Act."). Even if that were not the case, Section 432.6 is preempted by the FAA, as the Eastern District of California recently found in enjoining the State of California from enforcing the law. *See Chamber of Commerce of the U.S. v. Becerra*, 438 F. Supp. 3d 1078 (E.D. Cal. 2020), *appeal filed*, No. 20-15291 (9th Cir. 2020).

At bottom, Plaintiff should not be permitted to claim all of the compensation theoretically available under the Employment Agreement while simultaneously disclaiming his acknowledgement that he "agree[d]" to arbitrate employment-related claims pursuant to the MAAERD. In opposing the Genius Fund Defendants' Motion to Compel Arbitration, Plaintiff took great pains to paint himself as a naïve employee who was tricked into relinquishing his right to litigate in court by a sophisticated employer. But Plaintiff is not fooling anyone. He is a sophisticated executive who agreed to re-commit to an arbitration agreement he had previously signed in exchange

1  for a chance to earn a seven-figure compensation package. The Court should require

2  Plaintiff to live up to the bargain he struck and grant this Motion.

3  <u>**ARGUMENT**</u>

4  **I.    <u>PLAINTIFF MUST ARBITRATE THIS DISPUTE</u>**

5        Although not listed among the bases for dismissal specified in Rule 12, it is well

6  settled in this District that a court may dismiss claims subject to arbitration pursuant

7  to Rule 12(b). *See, e.g.*, *IMEG Corp. v. Astourian*, 2019 WL 6486041, at *3 (C.D. Cal.

8  July 30, 2019) ("dismissal under FRCP 12(b)(3) is appropriate where a party moves

9  to compel arbitration"); *Alliance Bank of Ariz. v. Patel*, 2013 WL 2432313, at *3 n.1

10 (C.D. Cal. June 3, 2013) ("Although arbitration agreements are typically enforced

11 through a motion to compel arbitration and a request to stay the proceedings pursuant

12 to 9 U.S.C. § 3, not through a motion to dismiss for lack of venue pursuant to Federal

13 Rule of Civil Procedure 12(b)(3), both procedures are proper."); *KWB & Assocs., Inc.*

14 *v. Marvin*, 2018 WL 5094927, at *9 (C.D. Cal. Apr. 18, 2018) ("Courts in this Circuit,

15 including this one, commonly treat motions to compel arbitration as preliminary

16 motions under Federal Rule of Civil Procedure 12."); *Lemberg v. LuLaRoe, LLC*, 2018

17 WL 6927836, at *3 (C.D. Cal. Mar. 1, 2018) (collecting cases where courts permitted

18 litigants to enforce arbitration agreements pursuant to Rules 12(b)(1), 12(b)(3), and

19 12(b)(6)).

20      The FAA provides that "a contract evidencing a transaction involving

21 commerce  to settle by arbitration a controversy thereafter arising out of such contract

22 or transaction"—like the MAAERD[5]—"shall be valid, irrevocable, and enforceable,

23 save upon such grounds as exist at law or in equity for the revocation of any contract."

24 _____

[5]     Plaintiff does not contest that the MAAERD is subject to the FAA, nor could

25 he. The FAA reaches all contracts that are subject to Congress's authority to regulate
   interstate commerce. *See Allied-Bruce Terminix Cos. v. Dobson*, 513 U.S. 265, 278

26 (1995) (so holding). The FAA thus encompasses most employment-related arbitration
   clauses, because employment contracts almost always affect interstate commerce. *See,*

27 *e.g.*, *Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 119 (2001) (holding that FAA
   applied to non-transportation worker's employment-related arbitration agreement);

28 *Yahoo! Inc. v. Iversen*, 836 F. Supp. 2d 1007, 1009 (N.D. Cal. 2011) ("The FAA
   applies to any contract affecting interstate commerce, including employment
   agreements.").

5

9 U.S.C. § 2. This provision reflects "a liberal federal policy favoring arbitration." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011). By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) (emphasis in original). "The court's role under the [FAA] is therefore limited to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000). "If the response is affirmative on both counts, then the [FAA] requires the court to enforce the arbitration agreement in accordance with its terms." *Id.*

Here, Plaintiff does not contest that his claims are encompassed by the 2020 version of the MAAERD, and therefore the second question is irrelevant.[6] Instead, the sole remaining inquiry is whether there is a valid agreement to arbitrate. As explained below, by signing his Employment Agreement, Plaintiff expressly and unequivocally agreed to arbitrate his dispute with Defendants.

## A.  The Court Should Permit Defendants to Join the Genius Fund Defendants' Motion to Compel Arbitration

Although the Federal Rules of Civil Procedure do not specifically address a litigant's ability to join motions or arguments made by another litigant, courts have concluded that it "is permissible for a party to adopt the motion of another party when the facts between the parties are essentially the same and the adoption would promote judicial efficiency." *Vazquez v. Cent. States Jt. Bd.*, 547 F. Supp. 2d 833, 867 (N.D. Ill. 2008); *see also Spencer v. Lunada Bay Boys*, 2016 WL 6818757, at *3 (C.D. Cal. July 22, 2016) (permitting defendants to join in motions and arguments made by

---

[6] Plaintiff could not argue that his claims are outside the scope of the MAAERD even if he wanted to. The "Agreement to arbitrate covers all grievances, disputes, claims, or causes of action . . . arising out of [Plaintiff's] employment . . . and the termination thereof." (ECF 53-7, Redline of 2019 and 2020 MAAERDs, at PageID 1064.) Here, each of Plaintiff's claims indisputably arises out of the alleged termination of his employment.

1  similarly situated defendants); *Gonzalez v. Mason*, 2008 WL 2079195, at *2 n.1 (N.D.

2  Cal. May 15, 2008) (granting defendant's motion to join other defendant's motion to

3  dismiss where joining defendant "was served with process later and then moved to

4  join in the motion to dismiss"), *aff'd*, 357 F. App'x 835 (9th Cir. 2009).

5      Here, judicial efficiency would be served by permitting Defendants to join the

6  arguments made by the Genius Fund Defendants in their Motion to Compel

7  Arbitration. The core issue addressed by this Motion and the Genius Fund Defendants'

8  Motion to Compel Arbitration is whether Plaintiff consented to arbitration—a question

9  that does not turn on any facts specific to the various defendants named in this action.

10  Moreover, it would be a waste of the Court's time and the parties' resources for

11  Defendants to submit a brief repeating arguments that are already before the Court.

12      Accordingly, Defendants request leave to join the arguments made by the

13  Genius Fund Defendants that: (i) Plaintiff's conduct—signing the Employment

14  Agreement and acting as the Genius Fund Group's CEO despite knowing that by

15  signing the Employment Agreement, he had agreed to execute the MAAERD—shows

16  that he agreed to arbitrate (ECF 53-1, Mot. to Compel Arb., at PageID 1009-10); (ii)

17  Plaintiff's 2019 arbitration agreement is still in force and requires him to arbitrate his

18  claims (*id.* at PageID 1010-11); and (iii) Plaintiff's claims fall within the scope of both

19  the 2019 and 2020 versions of the MAAERD. (*Id.* at PageID 1011-12.)

20      In addition to these arguments, Defendants submit that arbitration should also

21  be compelled on the bases set forth below.

22      **B.    The Employment Agreement Incorporated the MAAERD**

23      Plaintiff concedes that California law governs the issue of whether he entered

24  into an agreement to arbitrate. (*See* ECF 61, Pl.'s Opp'n Br., at PageID 1209.) Under

25  California law, it is well settled that an arbitration provision may be incorporated by

26  reference into a contract and bind the parties even if they have not separately signed

27  or acknowledged it. *See, e.g.*, *Wolschlager*, 111 Cal. App. 4th at 790 (enforcing

28  arbitration agreement incorporated by reference into contract); *Baker v. Aubry*, 216

7

1  Cal. App. 3d 1259, 1264-65 (1989) (same); *King v. Larsen Realty, Inc.*, 121 Cal. App.
2  3d 349, 358 (1981) (same).

3  "For the terms of another document to be incorporated into the document
4  executed by the parties the reference must be clear and unequivocal, the reference must
5  be called to the attention of the other party and he must consent thereto, and the terms
6  of the incorporated document must be known or easily available to the contracting
7  parties." *Wolschlager*, 111 Cal. App. 4th at 790. However, the "contract need not recite
8  that it 'incorporates' another document, so long as it guides the reader to the
9  incorporated document." *Shaw v. Regents of the Univ. of Cal.*, 58 Cal. App. 4th 44, 54
10  (1997).

11  Determining whether the parties consented to incorporated terms is an
12  "objective" inquiry that turns on "the words of the instrument, not a party's subjective
13  intent." *Id.* at 55. Thus, it is not necessary or critical that a party has seen and
14  subjectively appreciated the incorporated terms, as long as the contract clearly
15  specifies the document being incorporated and both parties *could* have reviewed that
16  document if they had wanted to. *See, e.g.*, *King*, 121 Cal. App. 3d at 358 ("As a general
17  rule, a party is bound by the provisions of an agreement which he signs, even though
18  he does not read them and signs unaware of their existence.").

19  *Wolschlager* is instructive. There, the plaintiff purchased title insurance from
20  the defendant insurer. 111 Cal. App. 4th at 787-88. The insurer provided plaintiff with
21  a preliminary report that referenced a long-form insurance policy several times and
22  suggested reading it, but never explicitly stated that the policy was incorporated by
23  reference or provided a copy of the policy. *Id.* The long-form policy contained an
24  arbitration clause, but there "was no substantive dispute that plaintiff did not actually
25  know about" the arbitration language. *Id.* at 791. The court nevertheless held that the
26  arbitration clause in the long-form policy was binding on the plaintiff because: (i)
27  "even if plaintiff did not know about the arbitration clause, the Policy with the clause
28  was easily available to him"; and (ii) the preliminary report plaintiff received

8

1 "identified the Policy by name and directed the plaintiff to where he could inspect it."

2 *Id.* "Nothing further was needed to bind the plaintiff." *Id.*

3        Here, the Employment Agreement executed by Plaintiff incorporated the

4 MAAERD by reference, binding Plaintiff to the MAAERD's terms. The Employment

5 Agreement stated that as "a condition of this offer, [Plaintiff] agree[s] to execute

6 Genius's: (a) Mutual Agreement to Arbitrate Employment-Related Disputes." (ECF

7 53-3, Shinder Decl. Ex. 1, at PageID 1021; *see also id.* at PageID 1020 (stating that

8 Plaintiff's employment opportunities were given "[f]or and inconsideration of the

9 mutual promises and covenants set forth" in the Employment Agreement, including

10 Plaintiff's "agree[ment] to [his] employment" on a series of "terms and conditions

11 and . . . subject to all of [the Genius Fund Group's] policies and procedures regarding

12 its employees.").) The parties' express reference to the MAAERD using capitalized

13 letters was sufficient to show their intent to incorporate the MAAERD into their

14 agreement. *See, e.g.*, *Wolschlager*, 111 Cal. App. 4th at 791 (capitalized reference to

15 "Policy" sufficient to incorporate policy by reference); *Koffler Elec. Mech. Apparatus*

16 *Repair, Inc. v. Wartsila N. Am., Inc.*, 2011 WL 1086035, at *4 (N.D. Cal. Mar. 24,

17 2011) ("capitalized" reference to "General Terms and Conditions" showed "clear and

18 unequivocal" intent to incorporate arbitration clause in terms).

19        Moreover, Plaintiff had ready access to the MAAERD, even if he claims not to

20 have been provided an execution copy when he signed the Employment Agreement,

21 and was intimately familiar with the MAAERD. (*See* ECF 61-1, Racioppi Decl. ¶ 4,

22 at PageID 1225.) As the CEO of Genius Fund I and its affiliates, Plaintiff could have

23 directed employees to provide him with a copy of the MAAERD at any time. *See*

24 *Wolschlager*, 111 Cal. App. 4th at 791 (plaintiff had adequate opportunity to review

25 arbitration clause where it was available upon request); *Koffler*, 2011 WL 1086035, at

26 *4 (same). Additionally, Plaintiff was copied on emails where the MAAERD was

27 presented to other employees, and thus could have viewed the arbitration agreement

28 merely by searching his inbox. (*See* ECF 53-6, Shinder Decl. Ex. 4, at PageID 1060-

1  62 (copy of the MAAERD attached to email Plaintiff was copied on).)  Indeed, as the

2  CEO (and previously, the COO) of Genius Fund I, one of Plaintiff's responsibilities

3  was making sure that on-boarding employees were aware of (and signed) the

4  MAAERD. (*See id.*)

5        Finally, Plaintiff signed essentially the same arbitration agreement in

6  connection with his 2019 Employment Agreement, further showing his familiarity

7  with and access to the MAAERD. (*See* ECF 61-1, Racioppi Decl. ¶ 3, at PageID 1224

8  (admitting that Plaintiff signed 2019 version of the MAAERD); ECF 53-7 Shinder

9  Decl. Ex. 5, at PageID 1064-68 (redline of 2019 and 2020 versions of the MAAERD).)

10 *See also King*, 121 Cal. App. 3d at 353 (plaintiff bound by arbitration clause

11 incorporated into bylaws where plaintiff was familiar with arbitration manual).

12       Because Employment Agreement clearly and unequivocally referenced the

13 MAAERD, and the arbitration agreement was "easily available" to Plaintiff any time

14 he wanted it, "nothing further was needed to bind" Plaintiff to the MAAERD's terms.

15 *Wolschlager*, 111 Cal. App. 4th at 791.

16       Plaintiff offers two arguments to rebut this conclusion. Neither has merit.

17       ***First***, Plaintiff argues that because the Employment Agreement contemplated

18 that Plaintiff would sign the MAAERD, and he did not do so, he is not bound to

19 arbitrate. (ECF 61, Opp'n Br., at PageID 1209-11.) But because the MAAERD was

20 incorporated by reference into the Employment Agreement, which Plaintiff did sign,

21 it does not matter that Plaintiff did not separately acknowledge the MAAERD. *See,*

22 *e.g.*, *Baker*, 216 Cal. App. 3d at 1264-65 (holding that plaintiff was bound to arbitrate

23 where contract referenced and thereby incorporated arbitration terms located in a

24 separate document).

25       Moreover, the cases Plaintiff relies on for his argument are inapposite. (ECF 61,

26 Opp'n Br., at PageID 1209-11.) In *Bayer v. Neiman Marcus Holdings, Inc.*, 582 F.

27 App'x 711 (9th Cir. 2014), *Gorlach v. Sports Club Co.*, 209 Cal. App. 4th 1497 (2012),

28 *Mitri v. Arnel Management Co.*, 157 Cal. App. 4th 1164 (2007), and *Romo v. Y-3*

*Holdings, Inc.*, 87 Cal. App. 4th 1153 (2001), the employer attempted to infer the plaintiff's consent to arbitrate from his or her continued employment after receiving (but not signing) the arbitration agreement (*Bayer*, *Gorlach*, and *Mitri*), or from the plaintiff's acknowledgement of other sections of an employee handbook containing an arbitration agreement (*Romo*). Here, by contrast, there is no need to infer Plaintiff's agreement to arbitrate. By signing the Employment Agreement, Plaintiff "agree[d]" as a "condition" of his employment offer "to execute" the MAAERD, thus showing his consent to arbitrate. Plaintiff cannot seriously argue any other interpretation of the contract. If Plaintiff signed the Employment Agreement without any intent to execute the MAAERD, then he fraudulently induced Genius Fund I to enter the agreement, and his agreement is thereby voidable. *See Rosenthal v. Great W. Fin. Sec. Corp.*, 14 Cal. 4th 394, 415 (1996) (contract is voidable when consent is induced by fraud).

   *Socoloff v. LRN Corp.*, 646 F. App'x 538 (9th Cir. 2016), is also off-base. There, the offer letter signed by the employee stated that he would "be required to sign a mutual agreement to arbitrate claims." *Id.* at 539. Because the employee did not later sign his arbitration agreement, and the offer letter itself did not require him to acknowledge his intent to sign the agreement, the court held that the employee was not bound to arbitrate. *See id.* Here, by contrast, the 2020 Employment Contract Plaintiff signed required him to "agree" to sign the MAAERD, showing contemporaneous intent to agree to arbitration.

   **Second**, Plaintiff argues that the parties did not agree to specific arbitration terms. (ECF 61, Opp'n Br., at PageID 1211-12.) But that is simply not true; the Employment Agreement incorporated the terms in the MAAERD. As explained above, the Employment Agreement's capitalized reference to the MAAERD was sufficient to incorporate its terms by reference even if Plaintiff never separately read or acknowledged the arbitration agreement. *See Wolschlager*, 111 Cal. App. 4th at 791.

### C.   Defendants Have Standing to Enforce the Arbitration Agreement

   The FAA permits a nonsignatory to enforce an arbitration agreement against a

signatory "if the relevant state contract law allows him to enforce the agreement." *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 632 (2009). Under California law, non-signatories have standing to enforce arbitration agreements under a variety of theories, including the equitable estoppel doctrine. *See, e.g.*, *JSM Tuscany, LLC v. Superior Court*, 193 Cal. App. 4th 1222, 1237 (2011).

"Under the doctrine of equitable estoppel, as applied in both federal and California decisional authority, a nonsignatory defendant may invoke an arbitration clause to compel a signatory plaintiff to arbitrate its claims when the causes of action against the nonsignatory are intimately founded in and intertwined with the underlying contract obligations." *Felisilda v. FCA US LLC*, 53 Cal. App. 5th 486, 495 (2020). The theory behind the doctrine is that by "relying on contract terms in a claim against a nonsignatory defendant, even if not exclusively," it would be inequitable to permit a plaintiff to "repudiat[e] the arbitration clause contained in that agreement." *Boucher*, 127 Cal. App. 4th at 272. Equitable estoppel thus "applies to prevent parties from trifling with their contractual obligations." *Turtle Ridge Media Grp., Inc. v. Pac. Bell Directory*, 140 Cal. App. 4th 828, 833 (2006); *Felisilda*, 53 Cal. App. 5th at 496 ("The fundamental point is that a party is not entitled to make use of a contract containing an arbitration clause as long as it worked to his or her advantage, then attempt to avoid its application in defining the forum in which his or her dispute should be resolved.").

The doctrine focuses on the "nature of the claims asserted by the plaintiff against the nonsignatory defendant." *Boucher*, 127 Cal. App. 4th at 272. "Claims that rely upon, make reference to, or are intertwined with claims under the subject contract are arbitrable." *Rowe*, 153 Cal. App. 4th at 1287. Thus, in determining whether to invoke equitable estoppel, the Court must "examine the facts of the operative complaint." *Felisilda*, 53 Cal. App. 5th at 496.

Here, Defendants may invoke the arbitration agreement incorporated into the Employment Agreement for two reasons.

*First*, Plaintiff's claims against Defendants "rely upon, make reference to," and

12

1  "are intertwined with claims under the [Employment Agreement]," and are thus
2  "arbitrable" under the equitable estoppel doctrine. *Rowe*, 153 Cal. App. 4th at 1287.
3  Plaintiff asserts claims against Defendants for civil conspiracy, breach of contract,
4  breach of the implied covenant of good faith and fair dealing, intentional
5  misrepresentation, wrongful termination, and whistleblower retaliation. (*See* ECF 1,
6  Compl. ¶¶ 45-73.) Each of these claims shares a core theory: that Defendants, along
7  with others, wrongfully terminated Plaintiff to avoid paying him the benefits he claims
8  he was entitled to under the Employment Agreement. (*See id.* ¶ 46 (alleging conspiracy
9  to breach Employment Agreement); *id.* ¶¶ 48-52 (alleging breach of the Employment
10 Agreement); *id.* ¶¶ 53-59 (re-alleging breach of contract claim as an implied covenant
11 claim); *id.* ¶¶ 60-63 (alleging that Defendants used misrepresentations to induce
12 Plaintiff to sign the Employment Agreement); *id.* ¶¶ 67-68 (alleging that Plaintiff was
13 not terminated for cause and that he was terminated to avoid paying him compensation
14 owed under the Employment Agreement); *id.* ¶¶ 72-73 (alleging that Plaintiff was
15 terminated to avoid him reporting alleged violations of law in connection with the
16 Genius Fund Group's cessation of certain business activities).) Having sued
17 Defendants based on the Employment Agreement, it would be inequitable to allow
18 Plaintiff to avoid the arbitration terms incorporated into that very contract. *See, e.g.*,
19 *Boucher*, 127 Cal. App. 4th at 272-73 (permitting nonsignatories to arbitrate with
20 plaintiff whose contract, tort, and statutory claims "presume[d] the existence of" an
21 "employment agreement" with an arbitration clause); *Turtle Ridge*, 140 Cal. App. 4th
22 at 834 (requiring arbitration where plaintiff's claims against nonsignatories all
23 "presupposed the existence of the contract" containing the arbitration clause).

24      ***Second***, it would be inequitable to permit Plaintiff to avoid arbitration given that
25 he alleges that Defendants are the "alter egos" of Genius Fund I, a signatory to the
26 Employment Agreement. (*See* ECF 1, Compl. ¶¶ 9, 15-16 (alleging that each of
27 Defendants was "the Genius Fund Group's alter ego"). In *Rowe*, the California Court
28 of Appeal held a nonsignatory defendant may compel arbitration against a signatory

1  plaintiff if the defendant is sued as a signatory defendant's alter ego. 153 Cal. App.

2  4th at 1285 ("By suing [nonsignatory defendants] for breach of the Agreement on the

3  ground that they are [signatory's] alter egos . . . [defendants] are entitled to the benefit

4  of the arbitration provisions."). That is this case. Plaintiff cannot claim that there is no

5  legal distinction between Defendants and Genius Fund I, while simultaneously arguing

6  that Defendants cannot invoke an arbitration agreement to which Genius Fund I was a

7  party.

8  **II.   PLAINTIFF'S ATTACKS ON THE MAAERD LACK MERIT**

9        Unable to show that he did not agree to arbitrate, Plaintiff attempts to argue he

10  should nevertheless be released from his arbitration commitment because the

11  MAAERD is: (i) procedurally and substantively unconscionable; and (ii) invalid under

12  California Labor Code Section 432.6. Although Plaintiff styles these arguments as

13  applying to the 2019 arbitration agreement he signed, the 2019 and 2020 versions of

14  the MAAERD are substantively identical, and Plaintiff may take the position that the

15  2020 MAAERD is invalid for the same reasons. As explained below, Plaintiff's

16  arguments lack merit.

17        **A.   The MAAERD Is Not Unconscionable**

18        "The judicially created doctrine of unconscionability . . . has both a procedural

19  and a substantive element." *Chin v. Advanced Fresh Concepts Franchise Corp.*, 194

20  Cal. App. 4th 704, 709 (2011). "The procedural element focuses on the contracting

21  parties' unequal bargaining power and on the weaker party's lack of notice of hidden

22  or oppressive terms; the substantive element focuses on the actual presence of one-

23  sided or oppressive terms." *Id.* A "court may not refuse to enforce a contract clause

24  unless it determines that the clause is both procedurally and substantively

25  unconscionable." *Giuliano v. Inland Empire Pers., Inc.*, 149 Cal. App. 4th 1276, 1292

26  (2007).

27        Procedural and substantive unconscionability are evaluated on a sliding scale.

28  "The   more   procedural   unconscionability   is   present,   the   less   substantive

1 unconscionability is required to justify a determination that a contract or clause is
2 unenforceable. Conversely, the less procedural unconscionability is present, the more
3 substantive unconscionability is required to justify a determination." *Dotson*, 181 Cal.
4 App. 4th at 980. "Since unconscionability is a contract defense, the party
5 opposing arbitration bears the burden of proving that an arbitration provision is
6 unenforceable on that ground." *Chin*, 194 Cal. App. 4th at 708.

7      Plaintiff argues that the MAAERD is both procedurally and substantively
8 unconscionable. He is wrong on both counts.

9      1.   <u>The MAAERD Is Not Procedurally Unconscionable</u>

10      Plaintiff first argues that the MAAERD is procedurally unconscionable because
11 agreeing to it was a condition of Plaintiff's employment and he was not given the
12 opportunity to negotiate it. (ECF 61, Opp'n Br., at PageID 1217-18.) However,
13 Plaintiff cites no authority showing that these commonplace conditions make the
14 MAAERD unenforceable, likely because the law is squarely against him. To the
15 contrary, California courts have only found a "minimal" degree of unconscionability
16 when a "highly educated" Plaintiff has been required to sign an employment
17 arbitration agreement "in exchange for a generous compensation and benefits
18 package"—as is the case here. *See, e.g.*, *Dotson*, 181 Cal. App. 4th at 981 (rejecting
19 argument that arbitration agreement presented to educated lawyer "as a condition of
20 employment without negotiation regarding its terms" was unconscionable); *Roman v.*
21 *Superior Court*, 172 Cal. App. 4th 1462, 1471 n.2 (2009) (holding that "[w]hen
22 bargaining power is not grossly unequal and reasonable alternatives exist, oppression
23 typically inherent in adhesion contracts is minimal"); *Giuliano*, 149 Cal. App. 4th at
24 1292 ("Arbitration clauses in employment contracts have been upheld despite claims
25 that the clauses were unconscionable because they were presented as part of an
26 adhesion contract on a take-it-or-leave-it basis."); *Melez v. Kaiser Fdn. Hosps., Inc.*,
27 2015 WL 898455, at *5 (C.D. Cal. Mar. 2, 2015) ("while the fact that a plaintiff is
28 sophisticated and has access to other employment options may not

1   entirely *eliminate* the existence of procedural unconscionability, it can serve
2   to *mitigate* the degree of oppression she experienced" (emphasis in original)).

3      Plaintiff was not an uneducated low-level employee being asked to give away
4   rights he barely understood. Quite the opposite: Plaintiff was a sophisticated executive
5   who had signed a version of the MAAERD before and agreed to be bound by it again
6   in   exchange   for   a   seven-figure   employment   contract.   The   procedural
7   unconscionability in the way the MAAERD was presented to Plaintiff was minimal,
8   at best. *See Dotson*, 181 Cal. App. 4th at 981; *Roman*, 172 Cal. App. 4th at 1471 n.2.

9                2.   <u>The MAAERD Is Not Substantively Unconscionable</u>

10      Because the procedural unconscionability associated with the MAAERD was
11   between minimal and nonexistent, "the agreement is unenforceable only if the degree
12   of substantive unconscionability is high." *Dotson*, 181 Cal. App. 4th at 982. Plaintiff
13   fails to show any substantive unconscionability in the MAAERD, much less the "high"
14   degree required.

15      Plaintiff argues that the MAAERD is substantively unconscionable because a
16   **separate contract**—Plaintiff's Confidentiality Agreement—requires claims for breach
17   of that agreement to be brought in a federal or state court located in Los Angeles
18   County, California. (ECF 61, Opp'n Br., at PageID 1218-19.) Plaintiff argues that it is
19   unconscionable for employment-related claims to be subject to arbitration, while
20   confidentiality claims (claims which are supposedly more important to the employer
21   than the employee) are brought in court. (*Id.*)

22      Plaintiff cites no authority for the idea that he can splice together separate
23   contracts to manufacture unconscionability, likely because there are no such cases.
24   Indeed, Plaintiff's only case, *Mercuro v. Superior Court*, 96 Cal. App. 4th 167, 176
25   (2002), involved an arbitration agreement that specifically exempted certain
26   employer-friendly claims from the arbitration agreement itself. In contrast, here,
27   Plaintiff fails to identify anything in the MAAERD—which applies mutually to all
28   contracting parties—that is unconscionable on its own. To the contrary, if Genius Fund

16

1  I wishes to bring employment-related counterclaims against Plaintiff, it is just as
2  bound by the MAAERD as Plaintiff is. (*See* ECF 53-7, MAAERD Redline, at PageID
3  1064 (arbitration agreement applies to both "claims Employee may have against the
4  Company . . . or that the Company may have against Employee").) Since there is
5  nothing one-sided or oppressive about the MAAERD, it is not substantively
6  unconscionable. *See Dotson*, 181 Cal. App. 4th at 983 (mutual limitation of one
7  deposition per side not substantively unconscionable even though employment
8  plaintiffs may generally prefer to depose more witnesses); *Malone*, 226 Cal. App. 4th
9  at 1570 (clause delegating arbitrability question to arbitrator was "not inherently
10 unfair" and "not unilateral," and was therefore not unconscionable).

11 **B.     Labor Code Section 432.6 Is Preempted by the FAA**

12          Plaintiff also argues that the MAAERD is invalid under Section 432.6(a) of the
13 California Labor Code, which provides in relevant part that employers "shall not, as a
14 condition of employment . . . require any . . . employee to waive . . . the right to file
15 and pursue a civil action or complaint with . . . any court." However, as Plaintiff
16 acknowledges, the Eastern District of California recently held that this statute is
17 preempted by the FAA, and enjoined the State of California from enforcing it. *See*
18 *Chamber of Commerce*, 438 F. Supp. 3d at 1078.

19          This Court should also conclude that Section 432.6 is preempted by the FAA
20 and decline to enforce it. As the Eastern District correctly held, Section 432.6's
21 legislative history shows that it was passed specifically to "target" employment-related
22 "agreements to arbitrate." *Id.* at 1097. The statute puts arbitration on an unequal
23 footing with other kinds of contracts by prohibiting a central feature of arbitration
24 agreements: the waiver of the right to initiate an action in court. *See id.* at 1098 ("It is
25 AB 51's embodiment of a legal rule hinging on the primary characteristic of an
26 arbitration agreement, and placing arbitration agreements in a class apart from any
27 contract, that is the law's fatal flaw."). Moreover, the law conflicts with the FAA's
28 purpose of promoting arbitration by subjecting employers to potential civil and

1  criminal liability for requiring employees to accept otherwise lawful arbitration
2  agreements. *Id.* at 1099-1100 ("AB 51 will likely have a deterrent effect on employers'
3  use of arbitration agreements given the civil and criminal sanctions associated with
4  violating the law.").

5  But even if the Court prefers not to invalidate Section 432.6 as the Eastern
6  District did, that provision should not prevent the Court from granting this Motion. In
7  an effort to harmonize Section 432.6 with the FAA, the law's drafters provided that
8  the law would not invalidate any otherwise-lawful arbitration agreements, but would
9  instead expose employers to civil and criminal penalties for requiring arbitration
10 agreements to begin with. *See* Cal. Lab. Code § 432.6(f) ("Nothing in this section is
11 intended to invalidate a written arbitration agreement that is otherwise enforceable
12 under the Federal Arbitration Act."); *Chamber of Commerce*, 438 F. Supp. 3d at 1100.
13 Because, the MAAERD is "otherwise enforceable under the Federal Arbitration Act,"
14 Section 432.6 does not prohibit its enforcement.

15 <u>**CONCLUSION**</u>

16 For these reasons, the Court should: enter an order: (i) permitting Defendants to
17 join the Genius Fund Defendants' Motion to Compel Arbitration; (ii) compelling
18 arbitration pursuant to Section 4 of the Federal Arbitration Act; and (iii) dismissing
19 Plaintiff's claims pursuant to Rules 12(b)(3) and 12(b)(6).

20 DATED: November 6, 2020

21                           SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP
22                           By:  _____
                                        */s/ Jason D. Russell*
23                                      JASON D. RUSSELL
                                      Attorneys for Defendants
24                                      KATERINA BOSOV
                                   ALLTECH INVESTMENTS LTD.
25                                 GOLDHAWK INVESTMENTS LTD.
26
27
28