1  BROWNE GEORGE ROSS
2  O'BRIEN ANNAGUEY & ELLIS LLP
   Thomas P. O'Brien (State Bar No. 166369)
3    tobrien@bgrfirm.com
   Jennie Wang VonCannon (State Bar No. 233392)
4    jvoncannon@bgrfirm.com
5  David J. Carroll (State Bar No. 291665)
     dcarroll@bgrfirm.com
6  Nathan F. Brown (State Bar No. 317300)
7    nbrown@bgrfirm.com
   801 S. Figueroa Street, Suite 2000
8  Los Angeles, California 90017
9  Telephone: (213) 725-9800
   Facsimile: (213) 725-9808
10
11 Attorneys for Plaintiff
   Francis J. Racioppi, Jr.
12
13               UNITED STATES DISTRICT COURT
14             CENTRAL DISTRICT OF CALIFORNIA
15
16 | FRANCIS J. RACIOPPI, JR.,          | Case No. 2:20-cv-03797-FMO (JCx)
17 |              Plaintiff,             | **PLAINTIFF'S NOTICE OF**
                                          **MOTION AND MOTION FOR**
18 |     vs.                            | **ORDER VOIDING TRANSFER OF**
                                          **ASSETS MADE IN VIOLATION OF**
19 | DMITRY BORISOVICH BOSOV *et*       | **THE RIGHT TO ATTACH ORDER**
20 | *al.*,                             | **AND OTHER RELIEF**
21 |              Defendants.           |
22 |                                    | Judge:  Hon. Jacqueline Chooljian
   |                                    | Date:   January 6, 2021
23 |                                    | Time:   1:30 p.m.
   |                                    | Crtrm:  750 (Telephonic)
24 |                                    |
25 |                                    | Trial Date:  October 5, 2021
26
27
28

**TO THE HONORABLE COURT AND ALL PARTIES:**

**PLEASE TAKE NOTICE** that on January 6, 2021, at 1:30 p.m., or as soon thereafter as this matter may be heard, in Courtroom 750 of the Roybal Federal Building and United States Courthouse, 255 East Temple Street, Los Angeles, CA, 90012, before the Honorable Jacqueline Chooljian, Plaintiff Francis J. Racioppi, Jr. will and hereby does move for an order: (1) declaring that the purported July 21, 2020 contract between Third Parties Heli Holdings LLC and Joseph Ohayon, on the one hand, and Defendants Genius Fund I LLC, Goldhawk Investments Ltd., Dr. Kush World Collective LLC, Eagle Rock Herbal Collective LLC, Planck Properties LLC, Aristotle Equipment LLC, and Genius Fund I, Inc., on the other hand ("Ohayon-Shinder Agreement"), is illegal, void, and in violation of the Right to Attach Order and *Nunc Pro Tunc* Right to Attach Order; and (2) ordering Third Parties Heli Holdings LLC and Joseph Ohayon to return any assets transferred to them under the Ohayon-Shinder Agreement back to Defendants Genius Fund I LLC, Goldhawk Investments Ltd., Dr. Kush World Collective LLC, Eagle Rock Herbal Collective LLC, Planck Properties LLC, Aristotle Equipment LLC, and Genius Fund I, Inc.

Mr. Racioppi further requests that: (1) after seven days of noncompliance with any order that this Court issues, the Court impose a coercive sanction on Heli Holdings and Joseph Ohayon $10,000 per day, jointly and severally, until they so comply; and (2) after twenty-one days of noncompliance, this Court issue a warrant for the arrest of Mr. Ohayon and order his incarceration until he so complies.

Finally, in light of the settlement agreement between Mr. Racioppi and certain defendants discussed in more detail in the Memorandum of Points and Authorities, Mr. Racioppi further requests that this Court vacate the freeze order (ECF No. 122) and any contempt proceedings as to the parties to the settlement agreement.

This application is made pursuant to 28 U.S.C. § 636, this Court's inherent sanction authority, and the District Judge's order referring these matters to the

Magistrate Judge, and is based on the attached memorandum of points and authorities, the declaration of David J. Carroll and its attached exhibits, all other documents and records on file in this action, and any other evidence or argument that the Court may accept at any hearing on this application.  This motion is made following the conference of counsel pursuant to Local Rule 7-3, which took place on November 27, 2020, and at numerous other times before that date.

DATED:  December 4, 2020                    Respectfully submitted,

                                            BROWNE GEORGE ROSS
                                            O'BRIEN ANNAGUEY & ELLIS LLP
                                               Thomas P. O'Brien
                                               Jennie Wang VonCannon
                                               David J. Carroll
                                               Nathan F. Brown


                                            By:      /s/ Thomas P. O'Brien
                                                      Thomas P. O'Brien
                                            Attorneys for Plaintiff Francis J. Racioppi, Jr.

# <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ..........................................................................................1

II.  STATEMENT OF FACTS...........................................................................3

    A.   Right to Attach Order.........................................................................3

    B.   Ohayon-Shinder Agreement ..............................................................5

    C.   Contempt Proceedings .......................................................................6

    D.   Mr. Racioppi's Assignment of Claims..............................................8

III. LEGAL STANDARD ..................................................................................9

IV.  ARGUMENT ............................................................................................10

    A.   The Ohayon-Shinder Agreement Violated the Right to Attach
        Order ................................................................................................10

    B.   The Court Should Void the Ohayon-Shinder Agreement.................13

    C.   The Court Should Impose Civil Contempt Sanctions to Coerce
        Heli Holdings and Mr. Ohayon's Compliance With Any Order
        Issued...............................................................................................16

V.   CONCLUSION ..........................................................................................17

1

**<u>TABLE OF AUTHORITIES</u>**

2

<u>Page</u>

3

**<u>CASES</u>**

4

5 *AngioDynamics, Inc. v. Biolitec AG*,
   780 F.3d 420 (1st Cir. 2015) ...........................................................14, 15

6

*Chambers v. NASCO, Inc.*,
7   501 U.S. 32 (1991) .........................................................................10

8 *Goya Foods, Inc. v. Wallack Mgmt. Co.*,
   290 F.3d 63 (1st Cir. 2002) .............................................................14
9

10 *Hicks on Behalf of Feiock v. Feiock*,
   485 U.S. 624 (1988) ........................................................................17
11

12 *In re Count Liberty, LLC*,
   370 B.R. 259 (Bankr. C.D. Cal. 2007) ............................................17
13

14 *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*,
   10 F.3d 693 (9th Cir. 1993) .......................................................10, 13
15

16 *Kelly v. U.S. Bank*,
   No. CIV. 08-1421-AC, 2010 WL 2817292 (D. Or. June 25, 2010) .......10
17

18 *McGraw-Edison Co. v. Preformed Line Prod. Co.*,
   362 F.2d 339 (9th Cir. 1966) ...........................................................12
19

20 *Roadway Exp., Inc. v. Piper*,
   447 U.S. 752 (1980) ........................................................................14
21

22 *Shell Offshore Inc. v. Greenpeace, Inc.*,
   815 F.3d 623 (9th Cir. 2016) ...........................................................17
23

24 *Shuffler v. Heritage Bank*,
   720 F.2d 1141 (9th Cir. 1983) .........................................................10
25

26 *Yan Sui v. Marshack*,
   No. 15-cv-00059, 2015 WL 13546439 (C.D. Cal. July 2, 2015)
   (Kronstadt, J.) .................................................................................10

27

28

# TABLE OF AUTHORITIES
### (Continued)

**Page**

## STATUTES

28 U.S.C. § 636(b)(1) ................................................................................9

28 U.S.C. § 636(e)(6)(B)(ii), (iii) ..............................................................9

Code Civ. Proc. § 481.010 *et seq.* .........................................................3, 9

## <u>MEMORANDUM OF POINTS AND AUTHORITIES</u>

## I.   INTRODUCTION

In July 2020, Third Parties Heli Holdings LLC and Joseph Ohayon conspired with Defendant Gary Shinder to engage in a massive transfer of assets in blatant violation of the Right to Attach Order issued in this action.  Under the auspices of an agreement to settle unspecified "disputed claims," Defendant Shinder effectively bankrupted the Genius Fund Group by purporting to give virtually all of their assets to Heli Holdings and Mr. Ohayon.[1]  Heli Holdings and Mr. Ohayon have since acknowledged that, at the time of this agreement, they was aware of the Right to Attach Order and that the transferred assets were subject to that order.  Defendant Shinder, in turn, was also undoubtedly aware of the Right to Attach Order at that time, and the Genius Fund Group has since emphatically asserted that Defendant Shinder lacked authority to completely gut the company's financial holdings in this manner.  Defendant Shinder has since been terminated from his employment with Genius Fund Group and has now absconded with these contempt proceedings pending against him.  Contempt of a federal court order does not get more brazen than this.

This transfer of assets effectively left Mr. Racioppi's claims wholly unsecured. While Heli Holdings and Mr. Ohayon have variously contended that they were and are holding these assets "in trust" for Mr. Racioppi and that in principle they intended to pay Mr. Racioppi from the transferred assets, that has not happened and there has never been any realistic chance of that happening.  No funds or assets were ever deposited into an escrow account to secure Mr. Racioppi's claim, as required by the Right to Attach Order, and Mr. Racioppi could not risk accepting any unsanctioned payments from Heli Holdings or Mr. Ohayon derived from assets that Mr. Racioppi knew may have been fraudulently transferred to it.  Thus, through no fault of his own,

---

[1] This agreement shall be hereinafter referred to as the "Ohayon-Shinder Agreement."

1  Mr. Racioppi was forced into a completely untenable position: to litigate the merits of

2  his claims while not knowing, perhaps for years, whether any assets would be left to

3  secure those claims.

4      Given the situation, Mr. Racioppi entered into a settlement with the Genius

5  Fund Group and other defendants that would provide him a workable measure of

6  relief.  Under that settlement, Mr. Racioppi agreed to first request that this Court reset

7  the parties to the *status quo ante—i.e.*, when Mr. Racioppi's claims were still secured

8  by the assets that Defendant Shinder unlawfully transferred to Heli Holdings and Mr.

9  Ohayon in violation of the Right to Attach Order—by unwinding those transfers.

10 Thereafter, Mr. Racioppi would fully assign his claims to another party to pursue as

11 that party sees fit.  In exchange, Mr. Racioppi will receive one guaranteed payment

12 from the settling defendants, and one further payment if this Court orders the return of

13 assets from Heli Holdings and Mr. Ohayon to the Genius Fund Group to secure the

14 claims for the assignee.  Proceeding in this manner fulfills the original purpose of the

15 Right to Attach Order by providing a recovery for Mr. Racioppi on his underlying

16 claims and continuing to secure the claims of the assignee that will subsequently take

17 over this action.[2]

18     For these reasons, Mr. Racioppi respectfully requests that this Court:

19 1.     Reset the parties to the *status quo ante* by ordering that the Ohayon-

20     Shinder Agreement entered into in violation of this Court's Right to Attach

21     Order be voided, and all assets, properties, and interests contemplated by it be

22     returned to their original owners;

23 2.     After seven days of noncompliance with any such order, impose a daily

24     fine of $10,000 jointly and severally against Heli Holdings and Mr. Ohayon to

25 _____

26     [2] In response to the Court's November 30, 2020 Order (ECF No. 148), no offset
   of the amount subject to the Right to Attach Order is appropriate based on the
27 settlement paid to Mr. Racioppi because Mr. Racioppi is not being paid to dismiss or
   settle the substantive claim, but rather to simply transfer it to another entity to pursue.
28

coerce their compliance; and

3.      After twenty-one days of noncompliance with any such order, issue a warrant for the arrest and incarceration of Mr. Ohayon to coerce his compliance with such order.

## II.   STATEMENT OF FACTS

### A.   Right to Attach Order

On May 28, 2020, after substantial briefing and two extended hearings, this Court entered a Right to Attach Order in Mr. Racioppi's favor pursuant to California Code of Civil Procedure sections 481.010 *et seq.*  ECF No. 47.[3]  That Order is prefaced with the following unequivocal warning in bold and all capital letters: "**NOTICE TO DEFENDANTS: FAILURE TO COMPLY WITH THIS ORDER MAY SUBJECT YOU TO ARREST AND PUNISHMENT FOR CONTEMPT OF COURT.**"  ECF No. 47 at 1.

The Right to Attach Order provides in relevant part as follows:

THE COURT ORDERS that each of the following Defendants, including their agents, assigns, alter-egos, subsidiaries, employees, and all persons or entities acting at their direction or on their behalf—including, but not limited to, Defendant Gary Shinder . . . —shall not transfer, directly or indirectly, any interest in the property described below:

. . .

Genius Fund I, Inc. – monies in the amount of $3,745,613.68;

Genius Fund I, LLC – monies in the amount of $3,745,613.68;

Restructure Trust LLC – monies in the amount of $3,745,613.68;

Goldhawk Investments Ltd. – monies in the amount of $3,745,613.68;

Heli Biotech LLC – monies in the amount of $3,745,613.68;

Eagle Rock Herbal Collective LLC – monies in the amount of $3,745,613.68;

---

[3] On August 6, 2020, this Court entered a *Nunc Pro Tunc* Right to Attach Order, ECF No. 74, which made certain changes to the order not relevant to this application.

Genius Products LLC – monies in the amount of $3,745,613.68;

Full Circle Labs LLC – monies in the amount of $3,745,613.68;

Nature's Holiday LLC – monies in the amount of $3,745,613.68;

Variant Hemp Solutions LLC – monies in the amount of $3,745,613.68;

Genius Delivery LLC – monies in the amount of $3,745,613.68;

Planck Properties LLC – monies in the amount of $3,745,613.68;

Aristotle Equipment LLC – monies in the amount of $3,745,613.68;

Genius Sales LLC – monies in the amount of $3,745,613.68;

Genius Products T, Inc. – monies in the amount of $3,745,613.68;

Genius Products NT, Inc. – monies in the amount of $3,745,613.68;

Full Circle Industries – monies in the amount of $3,745,613.68;

9928 and 9932 Rancho Road, Adelanto, CA 92301 [the Adelanto Property] (owner: Planck Properties LLC) . . . ;

7569 Melrose Avenue, Los Angeles, CA 90046 [the Melrose Property] (owner: Planck Properties LLC) . . . ; [and]

0 Bolsa Road, Hollister, CA 95023 (owner: Planck Properties LLC) . . . .

*Id.* at 4. The Order further provides as follows:

THE COURT FURTHER ORDERS that the Genius Defendants shall be authorized to sell, transfer, convey or otherwise dispose of their assets outside the ordinary course of business provided that (1) notice of the transaction(s) and terms thereof are provided to counsel for the Plaintiff, on a confidential basis for counsel's eyes only, seven days prior to the transaction and (2) the first $3,745,613.68 of the proceeds are set aside in a segregated escrow or trust account to which this Right to Attach Order shall immediately attach, at which time, the remaining assets of the respective Genius Entities that fund the foregoing amount shall be released from this Right to Attach Order.

*Id.* at 5-6.

The Right to Attach Order was served on Defendant Shinder[4] through the CM/ECF system upon its issuance on May 28, 2020. ECF No. 47. Heli Holdings and

---

[4] Defendant Shinder's counsel at that time have indicated that they no longer represent Defendant Shinder, although they are currently still counsel of record for him in this action. *See* ECF No. 16.

1  Mr. Ohayon have also acknowledged that they received and knew the contents of the

2  Right to Attach Order while they negotiated the Ohayon-Shinder Agreement; indeed,

3  the Ohayon-Shinder Agreement specifically references this action and the writs of

4  attachment issued by this Court.  *See* Declaration of Joseph Ohayon in Support of

5  Third Parties Joseph Ohayon and Heli Holdings, LLC's Opposition to Plaintiff's

6  Application to Certify Facts Constituting Contempt Etc. ("Ohayon Decl.") ¶ 5, ECF

7  No. 102-1.

8      **B.**    **Ohayon-Shinder Agreement**

9      In May 2020, Heli Holdings attempted to intervene in this action to assert

10  claims related to a joint venture that Heli Holdings undertook with a Genius Fund

11  Group entity.  ECF No. 31.  On June 18, 2020, Heli Holdings withdrew its motion to

12  intervene, ECF No. 51, stating that it was opting instead to arbitrate its claims with

13  the Genius Fund Group.  *See* ECF No. 102 at 2.  At the same time, it appears that Heli

14  Holdings and the Genius Fund Group were negotiating a deal for Heli Holdings to

15  operate the Adelanto facility.  *See* Declaration of David B. Golubchik in Support of

16  Defendants Gary I Shinder and ESSMW – Earth Solar System Milky Way, LLC's

17  Response to Plaintiff's *Ex Parte* Application to Certify Facts Constituting Contempt

18  Etc. ("Golubchik Decl.") ¶ 6, Ex. A, ECF No. 106.  Defendant Shinder, who was the

19  Genius Fund Group's Chief Executive Officer ("CEO") at the time, apparently took

20  the lead in negotiating the terms of the deal.  ECF No. 102 at 3.

21      On July 21, 2020, however, Heli Holdings, Mr. Ohayon, and certain Genius

22  Fund-related entities executed an agreement that was enormously broader in scope

23  than their negotiations—and, on its face, grossly one-sided.  Declaration of David J.

24  Carroll in Support of Plaintiff's Motion for Order Voiding Transfer of Real Property

25  ("Carroll Transfer Decl.") ¶ 2, Ex. A.  That is, in exchange for the dismissal of Heli

26  Holdings' claims relating to a joint venture with a single Genius Fund Group entity,

27  seven Genius Fund-related entities—including Defendants Planck Properties,

28  Goldhawk Investments Ltd., Dr. Kush World Collective LLC, Eagle Rock Herbal

Collective LLC, Aristotle Equipment LLC, and Genius Fund I, Inc.—agreed to transfer millions of dollars'-worth of real property, movable assets, inventory, equity interests in several limited liability companies, and cannabis retail licenses to Heli Holdings. *Id.*  The agreement even purported to require that these entities designate Heli Holdings as the assignee in the event that the Genius Fund-related entities undertook an assignment for the benefit of creditors—a clear conflict of interest given that the assignee acts as a fiduciary for the creditors. *Id.* at 2.  The agreement was executed by Defendant Shinder on behalf of the Genius Fund-related entities, and was executed by Mr. Ohayon on behalf of himself and Heli Holdings. *Id.* at 6.  Defendant Shinder also executed grant deeds transferring title to both the Adelanto Property and the Melrose Property from Planck Properties to Heli Holdings.  Carroll Transfer Decl. ¶¶ 3–4, Exs. B, C.

As Defendant Shinder undoubtedly knew, and as Mr. Ohayon likely knew as well, these assets comprised a substantial portion—if not all—of the Genius Fund Group's assets.  ECF No. 100, at 2–3.  Moreover, those assets included several which were specifically barred from being transferred under the Right to Attach Order, including the Melrose Property and the Adelanto Property, and involved six Genius Fund Group entities that were subject to the Right to Attach Order.  No notice whatsoever was provided to Mr. Racioppi's counsel of these transfers, nor does it appear that any of these parties created and funded any escrow accounts as required by the Right to Attach Order.  Carroll Transfer Decl. ¶ 2.  On September 18, 2020, Mr. Ohayon recorded the grant deed for the Adelanto Property. *Id.* ¶ 3, Ex. B.  On October 6, 2020, Mr. Ohayon recorded the grant deed for the Melrose Property. *Id.* ¶ 4, Ex. C.

### C.    Contempt Proceedings

In October 2, 2020, Mr. Racioppi's counsel was informed by counsel for the Genius Fund Group that Defendant Shinder may have transferred the company's assets in violation of the Right to Attach Order.  Carroll Transfer Decl. ¶ 2.  Soon

1  thereafter, counsel also learned of the existence of the Ohayon-Shinder Agreement.

2  *Id.*  Mr. Racioppi's counsel was later informed that Defendant Shinder lacked

3  authority to execute the agreement on behalf of any of the Genius Fund Group

4  entities; that he had since been terminated as CEO of the Genius Fund Group; and that

5  the Genius Fund Group had otherwise lost contact with him.  ECF No. 100 at 1, 3.

6        Mr. Racioppi's counsel immediately contacted counsel for the defendants as

7  well as Heli Holdings and Mr. Ohayon regarding the violation.  Declaration of David

8  J. Carroll in Support of *Ex Parte* Application to Certify Facts Constituting Contempt

9  ("Carroll Contempt Decl.") ¶ 5, Ex. D, ECF No. 90-2; Declaration of Thomas P.

10  O'Brien in Support of *Ex Parte* Application to Certify Facts Constituting Contempt

11  ("O'Brien Decl.") ¶ 3, ECF No. 90-1.  On October 8, 2020, after substantial

12  discussions between counsel for the Genius Fund Group, Heli Holdings, and Mr.

13  Ohayon failed to resolve the issue, Mr. Racioppi filed an *ex parte* application

14  ("Contempt Application") with this Court seeking to hold all parties involved in the

15  transfer of assets in contempt of the Right to Attach Order.  ECF No. 90.  Several

16  Genius Fund Group entities filed a partial opposition to the application, noting that

17  while Defendant Shinder and Mr. Ohayon clearly and knowingly violated the Right to

18  Attach order, they did so without the knowledge, consent, or authority of the Genius

19  Fund Group Board of Directors.  *See* ECF No. 100.  Third parties Heli Holdings and

20  Mr. Ohayon also filed an opposition, arguing variously that they believed that the

21  Genius Fund Group would take care of compliance with the Right to Attach Order;

22  that the asset transfer was a *de minimis* violation that was made in good faith based on

23  a reasonable interpretation of the Right to Attach Order; and that they reasonably

24  believed that Defendant Shinder had the authority to execute the Ohayon-Shinder

25  Agreement on the Genius Fund Group's behalf.  ECF No. 102.

26        On October 14, 2020, this Court held a telephonic hearing on Mr. Racioppi's

27  Contempt Application.  *See* ECF No. 114.  After tentatively concluding that there was

28  a clear violation of the Right to Attach Order, this Court ordered: (1) the immediate

freeze of all assets that were subject to the Right to Attach Order, with the exception of certain inventory currently in possession of Heli Holdings and Mr. Ohayon; (2) the immediate freeze of the proceeds of any asset subject to the Right to Attach Order, including certain inventory currently in possession of Heli Holdings and Mr. Ohayon; and (3) all parties, including Heli Holdings and Mr. Ohayon, to provide an accounting of the assets/proceeds in their possession that were subject to the Right to Attach Order.  *Id.*  This Court deferred ruling on any other relief requested in the Contempt Application pending the parties' agreement to further meet and confer.  *Id.*  On October 20, 2020, this Court issued a further order outlining the contours of the asset freeze ordered at the recent hearing.  ECF No. 122.

### D.     Mr. Racioppi's Assignment of Claims

Throughout and following the contempt proceedings, Mr. Racioppi discussed this matter extensively with counsel for Heli Holdings, Mr. Ohayon, the Genius Fund Group, and the foreign defendants—Alltech Investments Ltd., Goldhawk Investments Ltd., and Katerina Bosov—which had recently been served with the complaint. During that time, the major obstacle to any informal resolution of the contempt issues was that both Heli Holdings and the Genius Fund Group claimed to be the rightful owners of the transferred assets, and there appeared to be no prospect of a resolution between these two sides on this dispute.  This, of course, left Mr. Racioppi in a completely untenable position: Mr. Racioppi needed to briskly prosecute his employment claims in accordance with the District Judge's scheduling order, yet— through no fault of his own—he may not know for *years* whether or not there would be any assets left to secure any judgment he may obtain.

Rather than take this risk, Mr. Racioppi elected to settle with the vast majority of the defendants in this action in a manner that alleviated to the greatest extent this risk, and that also alleviated Mr. Racioppi's prior concern with the assets being transferred back to the Genius Fund Group only to be immediately liquidated through an assignment for the benefit of creditors.  Under the settlement, Mr. Racioppi would

1   move this Court for an order returning the transferred assets from Heli Holdings and

2   Mr. Ohayon to the Genius Fund Group, and would thereafter assign his claims in the

3   action to Alltech Investments Ltd.  In exchange, Mr. Racioppi would receive one

4   guaranteed settlement payment, and potentially one further payment that was

5   contingent on the determination of the instant motion.  Thereafter, Mr. Racioppi

6   would move the District Judge to substitute the assignee as the plaintiff in the action,

7   who could thereafter litigate the action as it sees fit in Mr. Racioppi's shoes.  *See*

8   Carroll Transfer Decl. ¶ 5, Ex. D.  Pursuant to the settlement agreement, Mr. Racioppi

9   now moves this Court to order the return of the transferred assets.

10  **III.   LEGAL STANDARD**

11          Magistrate judges are statutorily empowered to carry out numerous judicial

12  functions, including "to hear and determine any pretrial matter pending before the

13  court" upon designation by a district judge.  28 U.S.C. § 636(b)(1).  Under Central

14  District of California General Order No. 05-07, magistrate judges are authorized to

15  adjudicate "[a]pplications for provisional remedies other than injunctive relief,

16  including writs of attachment sought pursuant to Cal. Civ. Proc. Code § 481.010 et

17  seq."  C.D. Cal. Gen. Order No. 05-07.  Where, as here, the Magistrate Judge presides

18  over such pretrial matters, she may certify facts to the district judge of an act that

19  occurs outside the magistrate judge's presence that constitutes a criminal contempt, or

20  any act that constitutes a civil contempt.  28 U.S.C. § 636(e)(6)(B)(ii), (iii).  The

21  district judge in this matter has previously referred the issues raised in this motion to

22  the magistrate judge.  ECF No. 120.  In addition, all federal courts have the inherent

23  authority to require "submission to their lawful mandates," and the power to sanction

24  those who do not so submit.  *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991); *see*

25  *also Kelly v. U.S. Bank*, No. CIV. 08-1421-AC, 2010 WL 2817292, at *6 (D. Or. June

26  25, 2010), *report and recommendation adopted*, 2010 WL 2817283 (D. Or. July 16,

27  2010) (imposing sanctions by Magistrate Judge for violation of court order).

28          "Courts may address the alleged disobedience of their orders by civil or

criminal contempt proceedings." *Yan Sui v. Marshack*, No. 15-cv-00059, 2015 WL 13546439, at *3 (C.D. Cal. July 2, 2015) (Kronstadt, J.). "A court has power to adjudge in civil contempt any person who willfully disobeys a specific and definite order requiring him to do or to refrain from doing an act." *Shuffler v. Heritage Bank*, 720 F.2d 1141, 1146 (9th Cir. 1983). "A person fails to act as ordered by the court when he fails to take 'all the reasonable steps within his power to insure compliance with the court's order.'" *Id.* (internal brackets and citations omitted). "The contempt 'need not be willful,' and there is no good faith exception to the requirement of obedience to a court order." *In re Dual-Deck Video Cassette Recorder Antitrust Litig.*, 10 F.3d 693, 695 (9th Cir. 1993).

## IV. ARGUMENT

### A. The Ohayon-Shinder Agreement Violated the Right to Attach Order

As this Court has already stated, there is little question that the Ohayon-Shinder Agreement violated an unequivocal Court order barring the transfer of assets during the pendency of this litigation. The Right to Attach Order expressly barred Defendants Planck Properties LLC, Goldhawk Investments Ltd., Eagle Rock Herbal Collective LLC, Aristotle Equipment LLC, and Genius Fund I, Inc., as well as its "agents, assigns, alter-egos, subsidiaries, employees, and all persons or entities acting at their direction or on their behalf—including, but not limited to, Defendant Gary Shinder" from "transfer[ring], directly or indirectly, any interest in the property described below," which expressly included approximately $3.7 million in assets from each entity, as well as "9928 and 9932 Rancho Road, Adelanto, CA 92301 [the Adelanto Property]" and "7569 Melrose Avenue, Los Angeles, CA 90046 [the Melrose Property]." ECF No. 74, at 4. The only exception to this prohibition was if: (1) "notice of the transaction(s) and terms thereof are provided to counsel for the Plaintiff . . . seven days prior to the transaction"; and (2) "the first $3,745,613.68 of the proceeds are set aside in a segregated escrow or trust account to which this Right to Attach Order shall immediately attach . . . ." *Id.* at 5–6.

1    Heli Holdings and Mr. Ohayon plainly violated these provisions.  On July 21,

2  2020, Heli Holdings and Mr. Ohayon entered into an agreement with seven Genius

3  Fund-related defendants (all but one of which are subject to the Right to Attach

4  Order) that purported to transfer virtually all of the Genius Fund Group's assets to

5  Heli Holdings and Mr. Ohayon.  This included title to both the Adelanto and Melrose

6  Properties, as well as millions of dollars in equipment, inventory, and myriad other

7  assets.  As Heli Holdings and Mr. Ohayon have since acknowledged, they were aware

8  of the Right to Attach Order at the time that it executed this agreement, and

9  consequently knew that this transfer of property violated that order.  Despite this, no

10  one gave Mr. Racioppi's counsel any notice of these transfers before they occurred,

11  and at this point it is clear that no one has set aside $3.7 million in an escrow account

12  for any of the defendants subject to the Right to Attach Order either—despite Mr.

13  Racioppi's repeated requests that this be done.

14    Moreover, Heli Holdings and Mr. Ohayon's argument that they reasonably

15  believed themselves to be in compliance with the Right to Attach Order rings hollow.

16  *Cf.* ECF No. 102 at 5–6.  Even assuming that Heli Holdings and Mr. Ohayon believed

17  that the Genius Fund entities would take care of dissolving the Right to Attach Order,

18  as it claims, neither Heli Holdings nor Mr. Ohayon ever pointed to any time

19  subsequent to the execution of the Ohayon-Shinder Agreement when they were

20  informed, or could have reasonably believed, that the transferred assets were no

21  longer subject to the Right to Attach Order.  In fact, Heli Holdings and Mr. Ohayon

22  have acknowledged that the Ohayon-Shinder Agreement "specifically acknowledged

23  that the transfer of the assets subject to the Order required resolution of either the

24  Right to Attach [O]rder itself or the present litigation."  *Id.* at 6.  Yet Mr. Ohayon

25  recorded the grant deeds transferring the Adelanto and Melrose Properties on

26  September 18 and October 6, 2020, respectively, even though he knew full well that

27  neither the Right to Attach Order nor the ongoing litigation had been resolved.

28  Neither Mr. Ohayon nor Heli Holdings provided notice to Mr. Racioppi of this, nor

1  did either create and fund the escrow account required by the Order.  That in and of

2  itself is a knowing and continuing violation of the Right to Attach Order.

3       Heli Holdings and Mr. Ohayon have also argued that Mr. Racioppi has

4  presented no facts to assert that Heli Holdings or Mr. Ohayon were prohibited from

5  any action they took under the Right to Attach Order.  ECF No. 102 at 5.  Heli

6  Holdings and Mr. Ohayon are mistaken.  Mr. Racioppi has already shown that

7  "[n]onparties may be found in contempt of an injunction provided they have actual

8  notice of the injunction and aid or abet in its violation." *McGraw-Edison Co. v.*

9  *Preformed Line Prod. Co.*, 362 F.2d 339, 344 (9th Cir. 1966).  Since both Heli

10  Holdings and Mr. Ohayon were aware of the restrictions set forth in the Right to

11  Attach Order, yet still elected to conspire to violate and aid and abet the violation of

12  that very order, they may be held in contempt just as any party to this litigation.  *See*

13  ECF No. 90 at 10–11.

14       Heli Holdings and Mr. Ohayon have also argued that if they did violate the

15  Right to Attach Order, the violation was *de minimis*, based only on the failure to

16  provide notice.  ECF No. 102 at 6.  First, this failure is far from *de minimis*.  The

17  purpose of requiring advance notice was to enable Mr. Racioppi to challenge the

18  transaction if necessary *before it occurred* (to avoid the very predicament the parties

19  find themselves in now).  Because Heli Holdings and Mr. Ohayon flouted the Right to

20  Attach Order issued to protect Mr. Racioppi, he had to request that this Court issue a

21  freeze order, and is now having to request that the Court unwind the unlawful

22  transaction.  Second, the failure to provide notice is obviously not the only violation.

23  Heli Holdings and Mr. Ohayon acknowledge that Mr. Racioppi's security in the assets

24  subject to the Right to Attach Order remains intact because Heli Holdings "continues

25  to acknowledge that should it sell any of the assets in the Right to Attach Order, the

26  first $3,745,613.68, must be kept in a dedicated escrow account until such time as the

27  Order is lifted or the matter is settled." *Id.*  However, Heli Holdings and Mr. Ohayon

28  are entirely different entities than the Genius Fund Defendants subject to the Right to

1  Attach Order.  If money were to be placed into escrow under the Right to Attach

2  Order, it was already supposed to have occurred at the time the assets were transferred

3  from the Genius Fund Group to Heli Holdings and Mr. Ohayon.  Heli Holdings and

4  Mr. Ohayon were aware of this requirement, and did not do so despite the transfer

5  occurring outside the course of normal business.  To claim that the assets are just as

6  secure in the hands of a party not explicitly named in the Right to Attach Order is

7  simply incorrect, as with no funds in escrow, Mr. Racioppi does not have a direct path

8  to recover his potential judgment from nonparties Heli Holdings or Mr. Ohayon.

9       Finally, Heli Holdings and Mr. Ohayon have also argued that they should not

10  be held in contempt because their actions were allegedly made in good faith with a

11  reasonable interpretation of the Right to Attach Order.  ECF No. 102 at 6–7.  But, as

12  Mr. Racioppi has already shown, "contempt 'need not be willful,' and there is no

13  good faith exception to the requirement of obedience to a court order."  *Dual-Deck*,

14  10 F.3d at 695.  The Right to Attach Order was not complicated.  If the defendants

15  subject to that order planned to sell or transfer any assets outside the course of normal

16  business, they were required to provide notice and place $3.7 million per defendant

17  into an escrow account.  Heli Holdings and Mr. Ohayon were both aware of these two

18  simple requirements, and yet they provided no notice and created a transfer in which

19  there would be no monetary consideration that could be placed into escrow—

20  presumably to do an end run around the Right to Attach Order.  Heli Holdings and

21  Mr. Ohayon's intent is not relevant to this court's determination of contempt: there

22  was a clear order, and they both failed to abide by it.

23       These facts demonstrate contempt of this Court's Right to Attach Order.  In line

24  with the District Judge's October 20, 2020 order, this Court should apply the

25  appropriate remedy, as described below, to resolve this blatant violation of this

26  Court's authority.

27  **B.      The Court Should Void the Ohayon-Shinder Agreement**

28       "The inherent powers of federal courts are those which are necessary to the

1  exercise of all others.  The most prominent of these is the contempt sanction, which a
2  judge must have and exercise in protecting the due and orderly administration of
3  justice and in maintaining the authority and dignity of the court . . . ."  *Roadway Exp.,*
4  *Inc. v. Piper*, 447 U.S. 752, 764 (1980) (internal citations omitted).  In responding to a
5  contempt of court, "[a] trial court has *wide discretion* in its choice of
6  sanctions."  *Goya Foods, Inc. v. Wallack Mgmt. Co.*, 290 F.3d 63, 77 (1st Cir. 2002)
7  (emphasis added).  While sanctions are available to preserve the dignity of the court,
8  "make-whole relief is a commonplace sanction for civil contempt."  *Id.* at 78.

9       Unwinding an unlawful transaction made in violation of a court order is an
10  appropriate remedy for that violation—even if it would be expensive and difficult to
11  achieve.  In *AngioDynamics, Inc. v. Biolitec AG*, 780 F.3d 420 (1st Cir. 2015),
12  plaintiff AngioDynamics, Inc. received a $23 million judgment against corporate
13  defendant Biolitec, Inc.  AngioDynamics thereafter attempted to enforce the judgment
14  against Biolitec, Inc.'s corporate parent, Biolitec AG.  *Id.* at 423.  Before
15  AngioDynamics could do so, however, Biolitec AG began the process of merging
16  with another corporation in an attempt make itself judgment-proof.  *Id.*  Learning of
17  this plan, AngioDynamics sought and received a temporary restraining order,
18  followed by an injunction, barring the merger.  *Id.*  While the injunction was on
19  appeal, Biolitec AG nonetheless proceeded with the merger in direct violation of the
20  injunction.  *Id.*

21       After learning of the merger, AngioDynamics filed an emergency motion for
22  contempt, which was granted by the district court.  *Id.*  The district court ordered that
23  Biolitec AG undo the merger in order to return it to the *status quo ante*, and the court
24  imposed substantial and escalating fines on Biolitec AG *and* issued a warrant for the
25  arrest of the CEO of Biolitec AG for each month it failed to undo the merger.  *Id.* at
26  423–24.  Due to Biolitec AG's refusal to undo the merger, the fines against Biolitec
27  AG eventually exceeded $160 million.  *Id.* at 427.

28       The First Circuit upheld the contempt finding, the remedy ordered by the

district court, and the coercive contempt sanctions that the district court imposed.  The court reasoned that "the district court enjoys wide latitude in its choice of sanctions," derived from "its inherent power to 'sanction . . . litigation abuses which threaten to impugn the district court's integrity or disrupt its efficient management of [case] proceedings,'" and thus its contempt order was not an abuse of discretion.  *Id.* at 426.  The court held that the mere fact that it would be costly or inconvenient for Biolitec AG to undo the merger and restore the *status quo ante* was not sufficient to show that the contempt order could not be followed.  *Id.* at 427.  And even though the ultimate fine levied against Biolitec AG dwarfed the original award, the court held that the district court did not abuse its discretion in "setting out a 'prospective, conditional fine' to achieve compliance," since the it was always in the defendant's power to end the fines by simply undoing the merger and restoring the parties to the *status quo ante*.  *Id.* at 427–28.

The relief that Mr. Racioppi is seeking—to unwind the unlawful transfer of assets—is far less excessive than that sought, ordered, and upheld in *AngioDynamics*. In light of Heli Holdings and Mr. Ohayon's egregious and intentional violations of this Court's Right to Attach Order, this Court should likewise use its "wide discretion" to reset the parties to the *status quo ante* and order that the violative Ohayon-Shinder Agreement be voided, and all assets, properties, and interests be returned to their original owners.  Heli Holdings and Mr. Ohayon's violation of the Right to Attach Order forced Mr. Racioppi into exactly the position that the Right to Attach Order was designed to prevent, and is exactly the position in which the plaintiff in *AngioDynamics* was placed: with no security whatsoever for the meritorious claims that he is asserting in this action, despite the Court having issued orders specifically to put Mr. Racioppi in a secured position.  The remedy that the Court orders for this violation must therefore restore the necessary security for Mr. Racioppi's claims.

At this point, it has become clear that the only way to effectuate that purpose is

to wholly unwind the fraudulent transfers that began on July 21, 2020.  The Right to Attach Order attached the first $3.7 million of funds or assets held by each of the entities identified in that order, which includes three of the entities that were supposedly parties to the Ohayon-Shinder Agreement—or a total of $11,236,841.04. This specifically includes Melrose and Adelanto Properties.  Yet, as Heli Holdings and Mr. Ohayon have stated, there were no "proceeds" *per se* from that transaction that could be used to set aside to secure Mr. Racioppi's claims; rather, that transfer of assets effectively cancelled a debt that the Genius Fund Group supposedly owed to Heli Holdings.  Of course, cancelled debt cannot be used to secure Mr. Racioppi's claims.  Thus, to adequately and timely secure Mr. Racioppi's claims, there is simply no other option than to unwind the transfers.

The appropriate remedy for Heli Holdings and Mr. Ohayon's contempt is not impacted by the settlement agreement between Mr. Racioppi and the defendants in this action, because the settlement agreement does not resolve Mr. Racioppi's underlying claims in this action.  Instead, Mr. Racioppi is simply assigning his employment claim to another entity to pursue in his shoes.  The assignee is just as entitled as Mr. Racioppi to have those same claims secured by the Right to Attach Order that this Court has issued.  Nor, for the same reason, is any type of offset appropriate for the settlement paid to Mr. Racioppi—Mr. Racioppi is not being paid to dismiss or settle the substantive claim, but rather to transfer it to another entity to pursue.

## C.   The Court Should Impose Civil Contempt Sanctions to Coerce Heli Holdings and Mr. Ohayon's Compliance With Any Order Issued

Given Heli Holdings and Mr. Ohayon's track record of flouting this Court's orders, this Court should also impose civil contempt sanctions in order to secure compliance with any remedy that it imposes.  "Because civil compensatory sanctions are remedial, they typically take the form of unconditional monetary sanctions; whereas coercive civil sanctions, intended to deter, generally take the form of

1    conditional fines." *Shell Offshore Inc. v. Greenpeace, Inc.*, 815 F.3d 623, 629 (9th

2    Cir. 2016).  Similarly, "[i]ncarceration is an appropriate coercive sanction for civil

3    contempt so long as 'the contemnor can avoid the sentence imposed on him, or purge

4    himself of it, by complying with the terms of the original order.'" *In re Count*

5    *Liberty, LLC*, 370 B.R. 259, 274 (Bankr. C.D. Cal. 2007) (quoting *Hicks on Behalf of*

6    *Feiock v. Feiock*, 485 U.S. 624, 635 n.7 (1988)).

7          Here, it is apparent that any coercive sanction must be substantial in order to

8    secure Heli Holdings and Mr. Ohayon's compliance.  This was not a situation where

9    Heli Holdings and Mr. Ohayon inadvertently stepped over the line; rather, they

10   knowingly and willfully ignored a clear and direct order issued by this Court to

11   protect Mr. Racioppi's claims and took multiple actions to contravene that order.  It is

12   thus clear that Heli Holdings and Mr. Ohayon simply calculated that the advantage to

13   them in defying the Court's order outweighed the advantage of complying with it.

14   The coercive sanction must dispel any such notion.  Mr. Racioppi therefore

15   respectfully proposes the following coercive sanction: (1) after seven days of

16   noncompliance with any order that this Court issues, the Court impose a coercive fine

17   jointly and severally on Heli Holdings and Mr. Ohayon of $10,000 per day until they

18   so comply; and (2) after twenty-one days of noncompliance, this Court issue a

19   warrant for the arrest of Mr. Ohayon and order his incarceration until he so complies.

20   **V.    CONCLUSION**

21         Based on Heli Holdings and Mr. Ohayon's blatant disregard for this Court's

22   Right to Attach Order and its authority, Mr. Racioppi respectfully requests that this

23   Court: (1) reset the parties to the *status quo ante*, and order that the Ohayon-Shinder

24   Agreement entered into in violation of this Court's Right to Attach Order be voided,

25   and all assets, properties, and interests be returned to their original owners; and (2)

26   impose coercive sanctions as follows: (i) after seven days of noncompliance with any

27   order that this Court issues, the Court impose a coercive sanction jointly and severally

28   on Heli Holdings and Mr. Ohayon of $10,000 per day until they so comply; and (ii)

1   after twenty-one days of noncompliance, this Court issue a warrant for the arrest of

2   Mr. Ohayon and order his incarceration until he so complies.  Mr. Racioppi further

3   requests that in light of the settlement agreement between Mr. Racioppi and certain

4   defendants discussed in more detail in the Memorandum of Points and Authorities,

5   Mr. Racioppi further requests that this Court vacate the freeze order (ECF No. 122)

6   and any contempt proceedings as to the parties to the settlement agreement.

7

8   DATED:  December 4, 2020            Respectfully submitted,

9
                                        BROWNE GEORGE ROSS
10                                      O'BRIEN ANNAGUEY & ELLIS LLP
                                            Thomas P. O'Brien
11                                          Jennie Wang VonCannon
                                            David J. Carroll
12                                          Nathan F. Brown
13

14

15                                      By:       /s/ Thomas P. O'Brien
16                                                Thomas P. O'Brien
                                        Attorneys for Plaintiff Francis J. Racioppi, Jr.
17

18

19

20

21

22

23

24

25

26

27

28

## DECLARATION OF DAVID J. CARROLL

I, David J. Carroll, declare and state as follows:

1.      I am an attorney at law, duly admitted to practice before this Court and all courts of the State of California.  I am an associate with Browne George Ross O'Brien Annaguey & Ellis LLP, counsel of record for Plaintiff Francis J. Racioppi, Jr. in this matter.

2.      On or about October 2, 2020, my office learned that Defendant Gary Shinder may have transferred the vast majority of the Genius Fund Group's assets to Heli Holdings LLC and/or Joseph Ohayon in violation of the Right to Attach Order. Subsequently, my office received a copy of a "Settlement Agreement and Global Release" agreement between seven Genius Fund-related entities on the one hand, and Heli Holdings and Mr. Ohayon on the other hand ("Ohayon-Shinder Agreement").  Attached hereto as **Exhibit A** is a true and correct copy of the agreement that my office received, as well as a Bill of Sale apparently signed in connection with that agreement.  My office did not receive notice of the Agreement or the subsequent transfers of property until October 2, 2020.  In addition, my office received no notice that an escrow account had been created setting aside any proceeds from the asset transfer.

3.      Attached as **Exhibit B** is a true and correct copy of a grant deed recorded on title to the Adelanto Property on September 18, 2020, which reflected a transfer of ownership from Planck Properties LLC to Heli Holdings LLC.

4.      Attached as **Exhibit C** is a true and correct copy of a grant deed recorded on title to the Melrose Property on October 6, 2020, which reflected a transfer of ownership from Planck Properties LLC to Heli Holdings LLC.

5.      Attached as **Exhibit D** is a true and correct copy of the settlement agreement between Mr. Racioppi, all of the Defendants remaining in this action (except Defendant Shinder and Defendant ESSMW – Earth Solar System Milky Way LLC), and Genius Fund I ABC, LLC.  As explained more fully in Mr.

1   Racioppi's accompanying *ex parte* application to file under seal and *in camera*,

2   counsel for the parties to this settlement agreement, on the one hand, and counsel for

3   Heli Holdings, on the other hand, could not agree to an appropriate protective order

4   under which this agreement would be disclosed to Heli Holdings.  Therefore, Mr.

5   Racioppi is filing this agreement under seal and *in camera* with the Court until this

6   disagreement can be resolved.

7        I declare under penalty of perjury that the foregoing is true and correct.

8   Executed on December 4, 2020.

9

10                              /s/ David J. Carroll
                                David J. Carroll

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28